## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A, THE TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, THE TRUSTEES OF RETIREMENT PLAN FOR OFFICERS, BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A, THE TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN, THE TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC., and THE TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN FOR ACME EMPLOYEES, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ <br><br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| PILGRIM'S PRIDE CORPORATION, JAYSON J. PENN, WILLIAM W. LOVETTE, and FABIO SANDRI, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs United Food and Commercial Workers International Union Local 464A, the

Trustees of Welfare and Pension Funds of Local 464A – Pension Fund, the Trustees of Retirement

Plan for Officers, Business Representatives and Office Employees of Local 464A, the Trustees of

Local 464A Finast Full Time Employees Pension Plan, the Trustees of Local 464A Welfare and

Pension Building Inc., and the Trustees of New York-New Jersey Amalgamated Pension Plan for ACME Employees ("Local464A" or "Plaintiffs") allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, including the investigation of Plaintiffs' counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Pilgrim's Pride Corporation ("Pilgrim's Pride" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information, including the public record in *United States v. Penn*, No. 20-cr-00152-PAB (D. Colo.). Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

I.    **NATURE OF THE ACTION AND OVERVIEW**

1.    This is a federal class action on behalf of a class of all persons and entities who purchased or otherwise acquired Pilgrim's Pride common stock between February 9, 2017, and June 3, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Pilgrim's Pride, a Delaware corporation headquartered in Greeley, Colorado, is one of the largest chicken producers in the United States. Pilgrim's Pride's common stock trades on the NASDAQ under the ticker symbol "PPC."

3.    Throughout the Class Period, in annual reports and earnings calls, Defendants touted the Company's competitive strengths, advantages, and market positioning, which

Defendants claimed had been achieved through legitimate business strategies such as a broad product portfolio and disciplined capital allocation.

4.      On June 3, 2020, however, investors learned the truth about the source of the Company's competitive advantages when the United States Department of Justice (the "DOJ") announced criminal charges (the "Indictment") against two Pilgrim's Pride high level executives (including its current Chief Executive Officer) and two other executives in the chicken industry, alleging that they and other unnamed co-conspirators had participated in an illegal antitrust conspiracy to fix prices and rig bids from at least as early as 2012 and continuing through at least early 2017.

5.      On this news, the price of Pilgrim's Pride common stock declined $2.58 per share, or approximately 12.4%, from a close of $20.87 per share on June 2, 2020, to close at $18.29 per share on June 3, 2020.

6.      This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose that: (1) the Company and its executives had participated in an illegal antitrust conspiracy to fix prices and rig bids from at least as early as 2012 and continuing through at least early 2017; (2) the Company received competitive advantages, which persisted during the Class Period, from its anticompetitive conduct; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock, Plaintiffs and other members of the Class have suffered significant damages.

## II.      <u>**JURISDICTION AND VENUE**</u>

8.      Plaintiffs' claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Pilgrim's Pride is headquartered in this District, Defendants conduct business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District.  In addition, the DOJ's criminal case against certain of the Defendants is pending in this District.  *See United States v. Penn*, No. 20-cr-00152-PAB (D. Colo.).

11.      In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.   <u>PARTIES</u>

12.     Plaintiffs, as set forth in the accompanying certification, incorporated by reference herein, purchased Pilgrim's Pride common stock at artificially inflated prices during the Class Period and have been damaged thereby.

13.     Defendant Pilgrim's Pride is a Delaware corporation with its principal executive offices located at 1770 Promontory Circle, Greeley, Colorado 80634.

14.     Defendant Jayson J. Penn ("Penn") has been the Company's President and Chief Executive Officer since March 2019.  Penn was also President of Pilgrim's USA from October 2017 to March 2019, and an Executive Vice President at Pilgrim's Pride from January 2012 to October 2017.  As of June 14, 2020, Penn is on a paid leave of absence from the Company.

15.     Defendant William W. Lovette ("Lovette") was, from January 2011 to March 2019, the Company's President and Chief Executive Officer.  Lovette was also a Company director from February 2011 to March 2019.

16.     Defendant Fabio Sandri ("Sandri") has been the Company's Chief Financial Officer since June 2011.  Additionally, as of June 14, 2020, Sandri is the Company's interim President and Chief Executive Officer.

17.     Defendants Penn, Lovette, and Sandri are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Pilgrim's Pride reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each Individual Defendant was provided with copies of the Company's reports

alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

19.    Pilgrim's Pride and the Individual Defendants are collectively referred to herein as "Defendants."

IV.    **SUBSTANTIVE ALLEGATIONS**

20.    Pilgrim's Pride is a large, vertically integrated producer of meat products.  The majority of Pilgrim's Pride's annual sales arise from chicken products, which the Company primarily sells to grocers and chain restaurants.

A.    **Defendants' False and Misleading Statements**

21.    The Class Period begins on February 9, 2017, to coincide with the filing of Pilgrim's Pride's annual report for the year ended December 31, 2016, with the SEC on Form 10-K (the "2016 Annual Report").  In the 2016 Annual Report, which was signed by, *inter alia*, Defendants Lovette and Sandri, Defendants touted the Company's "competitive strengths" and represented, in relevant part:

> ***Leading market position in the growing chicken industry.*** We are one of the largest chicken producers globally and a leading chicken producer in the U.S. with an approximate 16.6% market share, based on ready-to-cook production in 2016, according to *WATTPoultryUSA* magazine. We believe we can maintain this prominent market position as we are one of the few producers in the chicken industry that can fully satisfy the requirements of large retailers and foodservice companies due to our broad product range, national distribution, vertically integrated operations and technical capabilities. Further, our scale of operations,

balanced product portfolio and a wide range of production capabilities enable us to meet both the capacity and quality requirements of our customer base. Finally, we believe we are well positioned with our global footprint to benefit from the growth in the U.S. chicken export market.

22.     The 2016 Annual Report also listed a "broad product portfolio," a "blue chip and diverse customer base across all industry segments," a "lean and focused enterprise," "robust cash flow generation with disciplined capital allocation," an "experienced management team and results-oriented corporate culture," and a "relationship with JBS [S.A.]"—the Company's majority shareholder—as "competitive strengths" that would "enable [the Company] to maintain and grow [its] position as a leading chicken company and to capitalize on future favorable growth opportunities."

23.     The 2016 Annual Report further represented that Pilgrim's Pride's "full-line product capabilities, high-volume production capacities, research and development expertise and extensive distribution and marketing experience are competitive strengths compared to smaller and non-vertically integrated producers."

24.     As required by the Sarbanes-Oxley Act of 2002, Defendants Lovette and Sandri certified that they had reviewed the 2016 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

25.     Similarly, during a May 4, 2017 earnings call, Defendant Lovette represented to investors that "[w]e price our retail products and our food service products based on the value that we deliver to our key customers and we have various mechanisms for doing that" and "[t]hat's part of the diversity of our portfolio, which we think is a competitive advantage."

26.    In another earnings call on February 15, 2018, Defendant Lovette stated that the Company "believe[s] industry growth over the next few years will continue to be well supportive of a balanced supply and demand environment, and we're confident that our business will have the ability to outperform given our broad portfolio and presence in all bird categories as well as strong relationships with our key customers."   Defendant Lovette further claimed that the Company's "key customer approach is strategic, and it creates an opportunity to further accelerate growth in important categories by providing a more differentiated product portfolio and giving us a competitive advantage."

27.    On February 16, 2018, Pilgrim's Pride filed its annual report for the year ended December 31, 2017, with the SEC on Form 10-K (the "2017 Annual Report").  In the 2017 Annual Report, which was signed by, *inter alia*, Defendants Lovette and Sandri, Defendants again touted the Company's "competitive strengths"—including a "broad product portfolio," a "blue chip and diverse customer base across all industry segments," a "lean and focused enterprise," an "experienced management team and results-oriented corporate culture," and a "relationship with JBS [S.A.]"—which, Defendants claimed, would "enable [the Company] to maintain and grow [its] position as a leading chicken company and to capitalize on future favorable growth opportunities."

28.    Like the 2016 Annual Report, the 2017 Annual Report also stated that Pilgrim's Pride's "full-line product capabilities, high-volume production capacities, research and development expertise and extensive distribution and marketing experience are competitive strengths compared to smaller and non-vertically integrated producers."

29.    As required by the Sarbanes-Oxley Act of 2002, Defendants Lovette and Sandri certified that they had reviewed the 2017 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

30.    Defendants continued to represent to investors that the Company's competitive advantages resulted from legitimate business strategies.  For example, during an earnings call on August 2, 2018, Defendant Lovette stated:

> While we're already well-balanced in terms of our bird-size exposure, we will continue to look for opportunities to shift our product mix and reduce the commodity portion of our portfolio by offering a more differentiated product to key customers while also optimizing our existing operations to pursuing our operational improvement targets. We believe our key customer approach is strategic and creates a basis to further accelerate growth in important categories by providing a more customized and innovative products [sic] to give us a clear competitive advantage.

31.    On February 14, 2019, Pilgrim's Pride filed its annual report for the year ended December 31, 2018, with the SEC on Form 10-K (the "2018 Annual Report").  In the 2018 Annual Report, Defendants again touted the Company's "competitive strengths"—including a "broad product portfolio," a "blue chip and diverse customer base across all industry segments," a "lean and focused enterprise," an "experienced management team and results-oriented corporate culture," and a "relationship with JBS [S.A.]"—which, Defendants claimed, would "enable [the Company] to maintain and grow [its] position as a leading chicken company and to capitalize on future favorable growth opportunities."

32.    Like the 2016 and 2017 Annual Reports, the 2018 Annual Report also stated that Pilgrim's Pride's "full-line product capabilities, high-volume production capacities, research and

development expertise and extensive distribution and marketing experience are competitive strengths compared to smaller and non-vertically integrated producers."

33.     As required by the Sarbanes-Oxley Act of 2002, Defendants Lovette and Sandri certified that they had reviewed the 2018 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

34.     Again, Defendants continued to tout the Company's "competitive advantages," which were purportedly obtained through legitimate means.  On a February 14, 2019 earnings call, for example, Defendant Lovette repeated his previous representations that the Company's "key customer approach is strategic and creates the basis to further accelerate growth in important categories by providing them more customized and innovative products to give us a clear competitive advantage."

35.     Similarly, during an earnings call on May 2, 2019, Defendant Penn represented to investors that the Company's "leading positions in these markets and differentiated product offerings have continued to give us competitive advantage relative to our peers with a more narrow market approach."  Penn substantially repeated this statement during earnings calls on August 1, 2019, and October 31, 2019.

36.     On February 21, 2020, Pilgrim's Pride filed its annual report for the year ended December 31, 2019, with the SEC on Form 10-K (the "2019 Annual Report").  In the 2019 Annual Report, which was signed by, *inter alia*, Defendants Penn and Sandri, Defendants stated that the Company "utilize[s] numerous advertising and marketing techniques to develop and strengthen

trade and consumer awareness and increase brand loyalty for consumer products," and "believe[s] [the Company's] efforts to achieve and maintain brand awareness and loyalty help to achieve greater price premiums than would otherwise be the case in certain markets and support and expand [the Company's] product distribution."

37.     As required by the Sarbanes-Oxley Act of 2002, Defendants Penn and Sandri certified that they had reviewed the 2019 Annual Report and that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

38.     During an earnings call that same day, Defendant Penn again stated that "[o]ur market leadership in these categories and more differentiated product portfolio have continued to support the growth of our competitive advantage versus the industry."

39.     Defendant Penn repeated this statement on April 30, 2020, representing that "[o]ur market leadership in these categories and more differentiated product portfolios have continued to strengthen the growth of our competitive advantage versus the industry."

40.     Defendants' statements about the Company's competitive advantage, strengths, and market positioning in the chicken industry were materially false and/or misleading when made because Defendants misrepresented and/or failed to disclose that: (1) the Company and its executives had participated in an illegal antitrust conspiracy to fix prices and rig bids from at least as early as 2012 and continuing through at least early 2017; (2) the Company received competitive advantages, which persisted during the Class Period, from its anticompetitive conduct; and (3) as

a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

**B.     The Truth Emerges**

41.     Plaintiffs and other investors began to learn the truth about the source of the Company's purported competitive strengths and advantages on June 3, 2020, when the DOJ announced that a federal grand jury in the District of Colorado had returned the Indictment charging four executives in the chicken industry with criminal antitrust violations: Defendant Penn; Roger Austin, a former Pilgrim's Pride Vice President; Mikell Fries, President of Claxton Poultry Farms ("Claxton"); and Scott Brady, a former Pilgrim's Pride Vice President, who became a Vice President at Claxton in 2012 (collectively, the "DOJ Defendants").

42.     The Indictment alleges that the DOJ Defendants, as well as other co-conspirators—including Defendant Lovette, who is not specifically named in the Indictment but is identifiable by title—violated the Sherman Act by "participating in a continuing network of Suppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States."

43.     The Indictment additionally alleges that in order to further the conspiracy, the DOJ Defendants utilized their network of suppliers and co-conspirators from at least as early as 2012 and continuing through at least early 2017 to: "reach agreements and understandings to submit aligned, though not necessarily identical, bids and to offer aligned, though not necessarily identical, prices, and price-related terms, including discount levels"; "participate in conversations and communications relating to non-public information such as bids, prices, and price-related

terms, including discount levels, . . . with the shared understanding that the purpose of the conversations and communications was to rig bids, and to fix, maintain, stabilize, and raise prices and other price-related terms, including discount levels"; and "monitor bids submitted by, and prices and price-related terms, including discount levels, offered by, Suppliers and co-conspirators."

44.     Using detailed information regarding phone calls, text messages, and relevant documents, the Indictment sets forth seven specific instances in which the DOJ Defendants and other co-conspirators, including Defendant Lovette, illegally and improperly coordinated on the prices, including discounts, and bids that supplier companies, including Pilgrim's Pride and Claxton, offered to chicken purchasers.

45.     For example, as detailed in the Indictment, in 2014, suppliers were negotiating with a purchasing cooperative over prices that would take effect in 2015.  According to the Indictment, Pilgrim's Pride employees, including DOJ Defendant Austin, communicated with other suppliers regarding the range of margin increases the suppliers would be proposing to the purchasing cooperative, and an unnamed Pilgrim's Pride employee compiled a price proposal for Defendant Penn that included the contemplated 2015 margins for at least four competitor suppliers.  DOJ Defendants Penn, Austin, Brady, and Fries then engaged in a number of communications, via phone and text message—including between Austin, at Pilgrim's Pride, and Brady, at Claxton—regarding whether Pilgrim's Pride, Claxton, or other suppliers would lower their prices. Specifically, Brady instructed Austin "not to come down on price."

46.     According to the Indictment, during another 2014 instance of improper price coordination, Defendant Penn exchanged text messages with an unnamed Pilgrim's Pride

employee, who stated that "[t]hey are listening to my direction" regarding a negotiation with a national restaurant chain. Defendant Penn said, "Who is they?" and then, "If they is illegal don't tell me," further demonstrating that Penn was aware the Company was participating in illegal, anticompetitive conduct.

47.     The Indictment also sets forth a separate instance of "protecting the purpose and effectiveness of the conspiracy." In November 2014, a different, unnamed supplier ("Supplier-3") asked to purchase broiler chicken products from Pilgrim's Pride to cover a shortfall to an unnamed grocer for approximately $0.05/lb. more than the price Pilgrim's Pride had negotiated with the grocer. Defendant Penn sent a series of emails to other Pilgrim's Pride employees, discussing how to make the supplier "pay for poor decision making" so "they start acting appropriately." Penn then asked for Defendant Lovette's thoughts on whether to make the supplier "feel the pain across their system so they can start making decisions commensurate with a profitable venture and not a philanthropic organization." In response, Lovette said: "No question in my mind. [Supplier-3] should have to live with the decision they made. We made ours and are dealing with it. Why should it be any different for them? WE SHOULD NOT HELP THEM ONE MICRON." The following month, Penn also said to Lovette: "[Supplier-3] took this strategy of not worrying about what the competition is doing and it led to the unraveling on [sic] a competitive advantage. Have to keep our enemies close and ensure that we are not zigging when the competition is successfully zagging."

48.     In response to the announcement of the Indictment, the price of Pilgrim's Pride common stock declined $2.58 per share, or 12.4%, from a close of $20.87 per share on June 2, 2020, to close at $18.29 per share on June 3, 2020.

## V.    PLAINTIFFS' CLASS ACTION ALLEGATIONS

49.    Plaintiffs bring this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Pilgrim's Pride common stock during the Class Period (the "Class").  Excluded from the Class are Defendants, their agents, directors and officers of Pilgrim's Pride, and their families and affiliates.

50.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

51.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.    Whether Defendants violated the Exchange Act;

b.    Whether Defendants omitted and/or misrepresented material facts;

c.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.    Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.    Whether the price of Pilgrim's Pride common stock was artificially inflated; and

f.    The extent of damage sustained by members of the Class and the appropriate measure of damages.

52. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' wrongful conduct.

53. Plaintiffs will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions. Plaintiffs have no interests that conflict with those of the Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI.  APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

55. Plaintiffs will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. The Company's common stock traded in an efficient market;

d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e. Plaintiffs and the Class purchased Pilgrim's Pride common stock between the time Pilgrim's Pride and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

56.     At all relevant times, the market for Pilgrim's Pride common stock was efficient because: (1) as a regulated issuer, Pilgrim's Pride filed periodic public reports with the SEC; and (2) Pilgrim's Pride regularly communicated with public investors using established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.   NO SAFE HARBOR

57.     Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of Pilgrim's Pride who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.  LOSS CAUSATION/ECONOMIC LOSS

58.     Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiffs and the Class.  The price of Pilgrim's Pride common stock significantly

declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Pilgrim's Pride common stock during the Class Period, Plaintiffs and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## IX.  SCIENTER ALLEGATIONS

59.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Pilgrim's Pride common stock during the Class Period.

## X.     CLAIMS AGAINST DEFENDANTS

### COUNT I

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

60.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

61.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and the Class; and (2) cause Plaintiffs and the Class to purchase Pilgrim's Pride common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

18

62.     Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

## COUNT II

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

65.     The Individual Defendants acted as controlling persons of Pilgrim's Pride within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiffs to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular accounting practices giving rise to the securities violations as alleged herein, and exercised the same.

67.     As described above, Pilgrim's Pride and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.  As a direct and proximate result of this wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of Pilgrim's Pride common stock during the Class Period.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

a.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.     Awarding compensatory damages and equitable relief in favor of Plaintiffs and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

## XI.  **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: July 6, 2020                           Respectfully submitted,

**WHEELER TRIGG O'DONNELL LLP**

*s/ Joel S. Neckers*
Joel S. Neckers
Nora Ali
370 17th Street
Suite 4500
Denver, CO 80202
Telephone: (303) 244-1966
Facsimile: (303) 244-1879
neckers@wtotrial.com
ali@wtotrial.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
ksauder@ktmc.com

*Attorneys for Plaintiffs United Food and
Commercial Workers International Union
Local 464A, the Trustees of Welfare and
Pension Funds of Local 464A – Pension Fund,
the Trustees of Retirement Plan for Officers,
Business Representatives and Office
Employees of Local 464A, the Trustees of
Local 464A Finast Full Time Employees
Pension Plan, the Trustees of Local 464A
Welfare and Pension Building Inc., and the*

*Trustees of New York-New Jersey*
*Amalgamated Pension Plan for ACME*
*Employees*

United Food and Commercial Workers International Union Local 464A
245 Paterson Ave.
Little Falls, NJ 07424

Trustees of Welfare and Pension Funds of Local 464A – Pension Fund
245 Paterson Ave.
Little Falls, NJ 07424

Trustees of Retirement Plan for Officers, Business Representatives and Office Employees of
Local 464A
245 Paterson Ave.
Little Falls, NJ 07424

Trustees of Local 464A Finast Full Time Employees Pension Plan
245 Paterson Ave.
Little Falls, NJ 07424

Trustees of Local 464A Welfare and Pension Building Inc.
245 Paterson Ave.
Little Falls, NJ 07424

Trustees of New York-New Jersey Amalgamated Pension Plan for ACME Employees
245 Paterson Ave.
Little Falls, NJ 07424