**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A, et al.,

      Plaintiff,

v.

PILGRIM'S PRIDE CORPORATION, et al.,

      Defendants.

---

**MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

---

4832-8389-1657.v1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................................2

III.    ARGUMENT.......................................................................................................................7

      A.    NMSIC Satisfies the PSLRA's Requirements and Should Be Appointed
         Lead Plaintiff ..........................................................................................................7

           1.    NMSIC's Motion Is Timely..........................................................................7

           2.    NMSIC Has the Largest Financial Interest in the Relief Sought by
               the Class ......................................................................................................8

           3.    NMSIC Is Typical and Adequate of the Putative Class...............................8

      B.    The Court Should Approve Robbins Geller as Lead Counsel .................................9

IV.    CONCLUSION..................................................................................................................11

4832-8389-1657.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Assad v. DigitalGlobe, Inc.*,
2017 WL 3575229 (D. Colo. Aug. 17, 2017) ...............................................................................8

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG (C.D. Cal.) ...........................................................................................10

*In re Am. Realty Capital Props., Inc. Litig.*,
No. 1:15-mc-00040 (S.D.N.Y.) ..................................................................................................10

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575 (S.D. Ohio) .............................................................................................9, 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .......................................................................................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..........................................................................................................9

*In re Cohen*,
586 F.3d 703 (9th Cir. 2009) .......................................................................................................9

*In re Enron Corp. Sec. Litig.*,
No. 4:01-cv-03624 (S.D. Tex.) ...................................................................................................11

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.).................................................................................11

*In re Oppenheimer Fixed Income Fund Actions*,
Nos. 1:09-cv-00386-JLK-KMT (D. Colo.)..................................................................................11

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
No. 1:09-md-20063-JLK-KMT (D. Colo.) .................................................................................11

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) ...........................................................................10, 11

*In re UnitedHealth Group Inc. Sec. Litig.*,
No. 0:06-cv-01691-JMR-FLN (D. Minn.)...................................................................................11

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
No. 3:15-cv-07658-MAS-LHG (D.N.J.)......................................................................................10

4832-8389-1657.v1

**Page**

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
  No. 1:02-cv-05893 (N.D. Ill.) .......................................................................................................11

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
  No. 1:19-cv-00124-WJM-SKC (D. Colo. Aug. 7, 2019)...........................................................10

*Smilovits v. First Solar, Inc.*,
  No. 2:12-cv-00555-DGC (D. Ariz.)..............................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(1) .....................................................................................................................................7
  §78u-4(a)(3)(A)(i)............................................................................................................................7
  §78u-4(a)(3)(B)(i) ........................................................................................................................2, 7
  §78u-4(a)(3)(B)(ii) ..........................................................................................................................1
  §78u-4(a)(3)(B)(iii).....................................................................................................................2, 7
  §78u-4(a)(3)(B)(iii)(I)(cc)...............................................................................................................8
  §78u-4(a)(3)(B)(v) ..........................................................................................................................9

Federal Rules of Civil Procedure
  Rule 23.....................................................................................................................................7, 8, 9
  Rule 23(a)..........................................................................................................................................8

Code of Federal Regulations
  17 C.F.R. §240.10b-5........................................................................................................................1

District of Colorado Local Rules of Practice
  D.C. COLO.LCiv R 7.1(a) ...............................................................................................................1

4832-8389-1657.v1

**MOTION**

New Mexico State Investment Council ("NMSIC") hereby moves the Court for an order: (1)

appointing NMSIC as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of

1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B); and (2) approving the selection of Robbins Geller

Rudman & Dowd LLP as Lead Counsel.

**D.C. Colo.LCivR 7.1 CERTIFICATION**

Pursuant to D.C. COLO.LCiv R 7.1(a), undersigned counsel has conferred in good faith with

defendants' counsel who take no position on the appointment of lead plaintiff or lead counsel at this

time, but reserve all rights to respond if necessary once the motions have been filed.  Due to the

PSLRA's lead plaintiff procedure, however, NMSIC will not know which other class members, if

any, intend to move for appointment as lead plaintiff until after all motions have been filed on

September 4, 2020.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

This case is a federal securities class action on behalf of all persons other than defendants

who purchased or otherwise acquired Pilgrim's Pride Corporation ("Pilgrim's Pride" or the

"Company") common stock between February 9, 2017 and June 3, 2020 (the "Class Period"),

against Pilgrim's Pride and three of its officers for violations of §10(b) and §20(a) of the Securities

Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b-5

promulgated thereunder, 17 C.F.R. §240.10b-5.  Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(3)(B),

the Court "shall appoint the most adequate plaintiff as lead plaintiff."  *See* 15 U.S.C. §78u-

4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the

- 1 -

4832-8389-1657.v1

court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).

NMSIC should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) has a substantial financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the selection of Robbins Geller to serve as lead counsel should be approved because the Firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members. Accordingly, NMSIC's motion should be granted.

## II.      STATEMENT OF FACTS

Pilgrim's Pride (NASDAQ:PPC) produces, processes, markets and distributes fresh, frozen and value-added chicken products to retailers, distributors, and foodservice operators in the United States, Mexico and Puerto Rico. The Company sells its products to foodservice market customers, including chain restaurants, food processors, broad-line distributors and other institutions, and retail market customers comprising grocery store chains, wholesale clubs, and other retail distributors.

In September 2016, food distributor Maplevale Farms, Inc. filed an antitrust class action complaint in the U.S. District Court for the Northern District of Illinois against Pilgrim's Pride and several other poultry producers, including Tyson Foods, Inc., Perdue Farms, Inc., and Sanderson Farms, Inc., alleging that Pilgrim's Pride and the other companies named in the complaint had conspired since 2008 to manipulate the prices of broiler chickens – chickens raised specifically for meat production – by coordinating and limiting production and exchanging detailed information about prices, capacity, and sales volume, in violation of the Sherman Antitrust Act. Between September 7, 2016 and October 7, 2016, eight more class action complaints were filed against

- 2 -

4832-8389-1657.v1

Pilgrim's Pride and other poultry companies in the Northern District of Illinois on behalf of individual consumers and indirect purchasers of broiler chickens, all alleging that Pilgrim's Pride had engaged in the price-manipulation scheme.  Broiler industry leaders were aware that price is largely influenced by supply, and since most of the Broiler industry was vertically integrated, the companies had complete autonomy over the supply of Broilers, and therefore the capacity to control price. With this knowledge, Pilgrim's Pride and other Broiler companies closed down processing plants to limit production and exchanged detailed information through the data service, Agri Stats. Agri Stats' company-specific information allowed Pilgrim's Pride and other industry leaders to constantly monitor almost every aspect of one another's business and ensure that no company was "cheating" on their agreement to limit production.  As a result, industry leaders kept their supplies low and maintained their high prices.

The Class Period begins on February 9, 2017, when Pilgrim's Pride filed its annual report on Form 10-K with the SEC for the year ended December 31, 2016.  The Form 10-K touted Pilgrim's Pride's "competitive strengths" and advantages regarding its market position in the chicken industry. It further represented that Pilgrim's Pride's "full-line product capabilities, high-volume production capacities, research and development expertise and extensive distribution and marketing experience are competitive strengths compared to smaller and non-vertically integrated producers."

Similarly, during an earnings call on May 4, 2017 discussing the Company's second quarter 2017 financial results, defendant William W. Lovette (the Company's then-CEO) represented to investors that "[w]e price our retail products and our food service products based on the value that we deliver to our key customers and we have various mechanisms for doing that" and "[t]hat's part of the diversity of our portfolio, which we think is a competitive advantage."  ECF No. 1 at ¶25.

- 3 -

The complaint alleges that during the Class Period, defendants made materially false and misleading statements about the Company's competitive advantage, strengths, and market positioning in the chicken industry and concealed that:

- The Company and its executives had participated in an illegal antitrust conspiracy to fix prices and rig bids from at least as early as 2012 and continuing through at least early 2017;

- The Company received competitive advantages, which persisted during the Class Period, from its anticompetitive conduct;

- Pilgrim's Pride's revenues were the result of illegal conduct;

- Pilgrim's Pride's conduct constituted a violation of federal antitrust laws; and

- As a result, defendants positive statements during the Class Period were false and misleading and/or lacked a reasonable basis.

The U.S. Department of Justice's ("DOJ") criminal investigation was disclosed in 2019 when the DOJ intervened in a long-running civil case against various chicken producers claiming that several suppliers were engaged in a price-fixing and bid-rigging conspiracy.  The DOJ intervened last year to request stay of the discovery in the civil case, and then issued grand jury subpoenas to various chicken suppliers.

On March 22, 2019, then-CEO Lovette abruptly departed the Company, with no explanation given by Pilgrim's Pride.

On February 21, 2020, Pilgrim's Pride filed its annual report on Form 10-K with the SEC reporting its fiscal year 2019 financial results, stating that the Company "utilize[s] numerous advertising and marketing techniques to develop and strengthen trade and consumer awareness and increase brand loyalty for consumer products," and "believe[s] [the Company's] efforts to achieve and maintain brand awareness and loyalty help to achieve greater price premiums than would

- 4 -

4832-8389-1657.v1

otherwise be the case in certain markets and support and expand [the Company's] product distribution." Later that same day during an earnings call with investors, analysts and the media, defendant Jayson J. Penn (the Company's CEO) stated that "[o]ur market leadership in these categories and more differentiated product portfolio have continued to support the growth of our competitive advantage versus the industry." ECF No. 1 at ¶38. Defendant Penn repeated that statement on April 30, 2020, representing that "[o]ur market leadership in these categories and more differentiated product portfolios have continued to strengthen the growth of our competitive advantage versus the industry." *Id.* at ¶39.

Finally, on June 3, 2020, the truth about the source of Pilgrim's Pride's purported competitive strengths and advantages was revealed when the DOJ announced charges indicting four executives in the chicken industry with criminal antitrust violations, including defendant Penn (Pilgrim's Pride's President and CEO since March 2019) and Roger Austin (a former Pilgrim's Pride Vice President). The indictment alleges that these individuals, as well as other co-conspirators, including defendant Lovette (not specifically named in the indictment), who was Pilgrim's Pride's President and CEO from January 2011 to March 2019, violated the Sherman Act by "participating in a continuing network of Suppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States." ECF No. 1 at ¶42. The indictment further alleged that to further the conspiracy, the individuals utilized their network of suppliers and co-conspirators from at least as early as 2012 and continuing through at least early 2017 to: "reach agreements and understandings to submit aligned, though not necessarily identical, bids and to offer aligned, though not necessarily identical, prices, and price-related terms, including discount levels";

- 5 -

4832-8389-1657.v1

"participate in conversations and communications relating to non-public information such as bids, prices, and price-related terms, including discount levels . . . with the shared understanding that the purpose of the conversations and communications was to rig bids, and to fix, maintain, stabilize, and raise prices and other price-related terms, including discount levels"; and "monitor bids submitted by, and prices and price-related terms, including discount levels, offered by, Suppliers and co-conspirators." *Id.* at ¶43.

Using detailed information regarding phone calls, text messages, and relevant documents, the indictment sets forth specific instances in which the defendants and other co-conspirators, including defendant Lovette, illegally and improperly coordinated on the prices, including discounts, and bids that supplier companies, including Pilgrim's Pride and Claxton Farms, offered to chicken purchasers. During another 2014 instance of improper price coordination, defendant Penn exchanged text messages with an unnamed Pilgrim's Pride employee, who stated that "[t]hey are listening to my direction" regarding a negotiation with a national restaurant chain. Defendant Penn said, "Who is they?" and then, "If they is illegal don't tell me," further demonstrating that Penn was aware the Company was participating in illegal, anticompetitive conduct. *Id.* at ¶46.

As a result of these disclosures, the price of Pilgrim's Pride shares declined more than 12%, inflicting significant harm to investors.

On June 14, 2020, Pilgrim's Pride announced that defendant Penn had begun a leave of absence "to focus on his defense of the recently disclosed indictment against him, to which he has pleaded not guilty." Despite the precipitous decline in Pilgrim's Pride's stock price following news of the indictment, defendant Penn will be paid during his leave.

- 6 -

4832-8389-1657.v1

### III.   ARGUMENT

#### A.   NMSIC Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff "in each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely-circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). NMSIC meets each of these requirements and should therefore be appointed Lead Plaintiff.

#### 1.   NMSIC's Motion Is Timely

On July 6, 2020, notice of the complaint was published on *Business Wire* and advised class members of the pendency of the action, the claims asserted, the proposed class period, and the right to move the Court to be appointed as lead plaintiff by September 4, 2020. *See* Declaration of Danielle S. Myers in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Myers Decl."), Ex. 1. Because this Motion is being filed by

- 7 -

4832-8389-1657.v1

September 4, 2020, it is timely and NMSIC is entitled to be considered for appointment as lead plaintiff.

### 2. NMSIC Has the Largest Financial Interest in the Relief Sought by the Class

As indicated in its Certification, NMSIC purchased 215,903 shares of Pilgrim's Pride stock during the Class Period and suffered more than $1.7 million in losses as a result of defendants' alleged wrongdoing. *See* Myers Decl., Exs. 2-3. To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest. Therefore, NMSIC satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. NMSIC Is Typical and Adequate of the Putative Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "'As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a) – typicality and adequacy – impact the analysis of the lead plaintiff issue.'" *Assad v. DigitalGlobe, Inc*., 2017 WL 3575229, at \*3 (D. Colo. Aug. 17, 2017) (citation omitted). "'Typicality exists where the injury and the conduct are sufficiently similar,' and the PSLRA 'directs courts to limit their inquiry regarding adequacy to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class.'" *Id.* (citation omitted). NMSIC satisfies these requirements.

NMSIC's claims are typical of the proposed class because they allege the same injury – loss of value in the Pilgrim's Pride stock purchased during the Class Period – and the same cause – defendants' alleged misrepresentations and omissions issued during the Class Period – as are alleged in the complaint. In addition, NMSIC is an adequate representative because there are no apparent

- 8 -

4832-8389-1657.v1

conflicts between it and other class members and its counsel will vigorously prosecute the action on behalf of the class.

Finally, NMSIC – an experienced fiduciary managing New Mexico's $26 billion permanent endowment – is precisely the type of institutional investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members." *In re Cendant Corp. Litig*., 264 F.3d 201, 273 (3d Cir. 2001). NMSIC also has prior experience serving as lead plaintiff and a class representative in securities litigation. *See generally In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575 (S.D. Ohio) (NMSIC, along with others, served as lead plaintiff and, together with Robbins Geller as lead counsel, obtained a $600 million recovery – the largest securities class action settlement in the Sixth Circuit).

As such, NMSIC satisfies the Rule 23 requirements for the purposes of this Motion.

## B.    The Court Should Approve Robbins Geller as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 732-33 (9th Cir. 2002); *In re Cohen*, 586 F.3d 703 (9th Cir. 2009).

- 9 -

Robbins Geller, a 200-attorney nationwide law firm, regularly practices complex securities litigation.[1]  The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues.  Courts throughout the country, including within this District, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.  *See, e.g.*, *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, No. 1:19-cv-00124-WJM-SKC, ECF No. 41 (D. Colo. Aug. 7, 2019) (appointing Robbins Geller lead counsel in securities case).

Notably, in the first half of 2020 alone, Robbins Geller has recovered more than $2.5 billion on behalf of investors in securities class action cases, including $1.02 billion in *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) , $1.21 billion in *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.) (pending final approval), and $350 million in *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555-DGC (D. Ariz.).  Robbins Geller attorneys have also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as a 2019 PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.  *See, e.g.*, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery for the class is the largest securities recovery in

---

[1]    For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com.  A hard copy of the Firm's resume is available upon the Court's request, if preferred.

4832-8389-1657.v1

the Tenth Circuit; Robbins Geller attorneys also created a mechanism that allowed class members to share an additional $250 million recovered by the SEC).[2]

Similarly, Shuman, Glenn & Stecker ("SGS"), liaison counsel, is highly experienced in litigating securities class action lawsuits and shareholder derivative cases in this District.  For example, SGS was appointed liaison counsel in nine coordinated complex securities class actions brought against various Oppenheimer-related entities based upon alleged violations of the federal securities laws. *See In re Oppenheimer Fixed Income Fund Actions,* Nos. 1:09-cv-00386-JLK-KMT (D. Colo.); and *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-20063-JLK-KMT (D. Colo.). The two *Oppenheimer*-related actions settled for $100 million and $140 million, respectively.  SGS also served as liaison counsel (with Robbins Geller attorneys serving as lead counsel) in *Qwest*, which settled for $450 million – a record recovery for this District.

Accordingly, Robbins Geller should be appointed as Lead Counsel.

## IV.    CONCLUSION

NMISC has satisfied the PSLRA's requirements for appointment as lead plaintiff.  As such, NMSIC respectfully requests that the Court appoint it as Lead Plaintiff and approve Robbins Geller as Lead Counsel.

---

[2]    *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

4832-8389-1657.v1

DATED:  September 4, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT


                    s/ Danielle S. Myers
                 DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead
Plaintiff

SHUMAN, GLENN & STECKER
RUSTY E. GLENN
600 17th Street, Suite 2800 South
Denver, CO  80202
Telephone:  303/861-3003
303/536-7849 (fax)
rusty@shumanlawfirm.com

Liaison Counsel for [Proposed] Lead Plaintiff

OFFICE OF THE NEW MEXICO
  ATTORNEY GENERAL
HECTOR BALDERAS, ATTORNEY
GENERAL
P. Cholla Khoury, Assistant Attorney General,
  Director, Consumer and Environmental
Protection
Post Office Drawer 1508
Santa Fe, New Mexico  87504-1508
Telephone: 505/490-4052
ckhoury@nmag.gov

- 12 -

4832-8389-1657.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on September 4, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

4832-8389-1657.v1

# Mailing Information for a Case 1:20-cv-01966-RM-MEH United Food and Commercial Workers International Union Local 464A et al v. Pilgrim's Pride Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Naumon Amjed**
  namjed@ktmc.com,rdegnan@ktmc.com,ksauder@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com

- **Seth Goodchild**
  seth.goodchild@weil.com,mco.ecf@weil.com,seth-weil-4005@ecf.pacerpro.com

- **Caitlin C. McHugh**
  cmchugh@lrrc.com,lelliott@lrrc.com,caitlin.c.mchugh@gmail.com,caitlin-mchugh-3721@ecf.pacerpro.com

- **Alex C. Myers**
  amyers@lrrc.com,lelliott@lrrc.com,alex-myers-9547@ecf.pacerpro.com

- **Joel S. Neckers**
  neckers@wtotrial.com,allen@wtotrial.com,mchenry@wtotrial.com

- **Caroline J. Zalka**
  caroline.zalka@weil.com,mco.ecf@weil.com,caroline-zalka-7810@ecf.pacerpro.com,nymao@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)