**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01966-RM-MEH

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION
LOCAL 464A, THE TRUSTEES OF
WELFARE AND PENSION FUNDS OF
LOCAL 464A – PENSION FUND, THE
TRUSTEES OF RETIREMENT PLAN FOR
OFFICERS, BUSINESS REPRESENTATIVES
AND OFFICE EMPLOYEES OF LOCAL
464A, THE TRUSTEES OF LOCAL 464A
FINAST FULL TIME EMPLOYEES
PENSION PLAN, THE TRUSTEES OF
LOCAL 464A WELFARE AND PENSION
BUILDING INC., and THE TRUSTEES OF
NEW YORK-NEW JERSEY
AMALGAMATED PENSION PLAN FOR
ACME EMPLOYEES, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiffs,

    v.

PILGRIM'S PRIDE CORPORATION,
JAYSON J. PENN, WILLIAM W. LOVETTE,
and FABIO SANDRI,

                    Defendants.

---

**LOCAL 464A'S OPPOSITION TO THE COMPETING MOTION**

---

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    ARGUMENT..........................................................................................................4

    A.    NMSIC's Conflicting Representations to Federal Courts Subject
        NMSIC to Unique Defenses Regarding Its Article III Standing .............................5

    B.    NMSIC Cannot Fix its Certification after the Lead Plaintiff
        Deadline ...........................................................................................................11

    C.    Local 464A Should Be Appointed Lead Plaintiff....................................................13

III.    CONCLUSION.......................................................................................................13

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bard Assocs., Inc.*,
   2009 WL 4350780 (10th Cir. Dec. 2, 2009) ..................................................................... *passim*

*Batter v. Hecla Mining Co.*,
   2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ..........................................................................10

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017) ............................................................................................................11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .....................................................................................................1

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................................ 1-2, 4

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ............................................................................................................11

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................................ 4-5

*Faris v. Longtop Fin. Techs. Ltd.*,
   2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011)............................................................................12

*Friedman v. Quest Energy Partners LP*,
   261 F.R.D. 607 (W.D. Okla. 2009)..........................................................................................11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................................................10

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
   2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020)........................................................................10

*In re IMAX Sec. Litig.*,
   2009 WL 1905033 (S.D.N.Y. June 29, 2009) ........................................................... 5-6, 10, 12

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) .............................................................................................10

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
    2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008)..........................................................................10

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) ...........................................................................................11

*In re Snap Inc. Securities Litigation*
    2019 WL 2223800 (C.D. Cal. Apr. 1, 2019) ................................................................. *passim*

*S. Utah Wilderness Alliance v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ...............................................................................................5

*In re SLM Corp. Sec. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................6, 12

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)..................................................................................................................5

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)...............................................................................................2, 5, 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...........................................................................................1,2, 5, 13

Local 464A respectfully submits this memorandum in further support of its motion for appointment as Lead Plaintiff (ECF No. 29) and in opposition to the competing motion filed by the New Mexico State Investment Council ("NMSIC") (ECF No. 27).[1]

## I.  INTRODUCTION

Local 464A and NMSIC have filed competing motions to be appointed Lead Plaintiff in this case.  However, NMSIC's motion must be rejected because it is subject to unique defenses and, therefore, cannot be appointed under the analysis required by the PSLRA regardless of its claimed financial interest.  It is for this reason that—just last year—NMSIC's motion to be appointed lead plaintiff under the PSLRA in *In re Snap Inc. Securities Litigation* was rejected.  *See* 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019).  *Snap*'s reasoning applies with equal force here.

Under the PSLRA, the "most adequate plaintiff"—the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that ***also*** makes a threshold showing of typicality and adequacy under Rule 23 ***and*** is not subject to unique defenses.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Bard Assocs., Inc.*, 2009 WL 4350780, at *2 (10th Cir. Dec. 2, 2009) (discussing criteria for appointment).  If the movant "with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). The PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial

---

[1]    Unless otherwise noted, all capitalized terms are defined in Local 464A's opening brief, *see* ECF No. 29, all emphasis is added, and all internal quotation marks and citations are omitted.

interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).

Here, Local 464A is the ***only*** movant entitled to appointment under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). With losses of approximately $1,158,326 in connection with its Class Period transactions in Pilgrim's Pride securities, Local 464A possesses the largest financial interest of any movant that is capable of satisfying the adequacy and typicality requirements of Rule 23 and is not subject to unique defenses.

In contrast, NMSIC is subject to disqualifying unique defenses because its standing and authority to proceed is in serious doubt. At this juncture, it is unclear whether NMSIC's motion is even proper under New Mexico law.[2] NMSIC's ineligibility is of its own making and its unique issues (which require an examination of New Mexico state statutes and case law) compelled the Honorable Stephen V. Wilson to reject NMSIC's motion for appointment as lead plaintiff ***just last year*** in *Snap*. *See* 2019 WL 2223800, at *3 (explaining that questions surrounding NMSIC's standing "expose[d] a possible unique defense that Defendants would likely seek to exploit"). As NMSIC knows all too well, exposing the class to the potential ***risk*** of unique defenses is grounds for disqualification under the PSLRA regardless of the ultimate merits of the arguments. *See id*.

In *Snap*, NMSIC's lead plaintiff motion was filed by the "State of New Mexico on behalf of [the NMSIC]," and included an accompanying PSLRA certification signed by the New Mexico State Investment Officer (the "State Investment Officer") on behalf of NMSIC. 2019 WL

---

[2]    Under Article III of the United States Constitution, "*named* plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other [parties]." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (emphasis in original). NMSIC manages various funds, including the permanent endowment fund, for the state of New Mexico. *See* ECF No. 28-4.

2

2223800, at *3 (alteration in original).  When questioned why NMSIC's certification was signed by the State Investment Officer—rather than, consistent with prior practice, by the New Mexico Attorney General (the "NMAG")—NMSIC represented that an intervening New Mexico state court decision *required* the State Investment Officer to act as the signatory. *See id.* ("The NMSIC stated that it was relying on a decision of the Court of Appeals of New Mexico, which the NMSIC and the State interpreted to mean that the [State Investment Officer] (on behalf of the NMSIC) should sign.").  Now, without any explanation and in direct contradiction to the position NMSIC took barely eighteen months ago, NMSIC has reversed course *again*—filing its motion in this litigation in NMSIC's name (rather than the "State of New Mexico on behalf of [NMSIC]") and submitting a PSLRA certification signed by a New Mexico Assistant Attorney General (rather than the State Investment Officer).  *Compare* ECF No. 28-2 with *Snap*, 2019 WL 2223800, at *2.  This unexplained about-face only exacerbates the disqualifying issues that militated against appointing NMSIC as lead plaintiff in *Snap*.  NMSIC's inconsistent positions on this issue virtually guarantee that NMSIC's standing—an issue irrelevant to the prosecution of the class's claims—will become an unnecessary focal point of this litigation.

Indeed, NMSIC's shifting positions are not mere technical violations that can be remedied during litigation.  Having staked out a clear position in *Snap*, NMSIC cannot now un-ring the bell and claim that an entirely different motion signed by an entirely different agency is appropriate without running afoul of the PSLRA's prohibition on appointing movants facing unique issues. The issues surrounding NMSIC's standing, authority, and interpretation of state law are fatal because they expose the entire class to significant risk of dismissal or denial of class certification. At the very least, these unique issues threaten to siphon resources and focus away from the class's

claims while NMSIC is forced to litigate its interpretation of New Mexico law.  As recognized by Judge Wilson in *Snap*, because it was "highly likely" NMSIC's unique issues "would play a significant role at trial, and that the NMSIC would have to devote class resources to defending itself," the ***potential*** dispute rendered NMSIC inadequate and atypical, even if defendants "would not ultimately succeed" in challenging NMSIC's standing.  2019 WL 2223800, at *2.  Nothing has changed since *Snap*, and the same concerns leading to NMSIC's rejection in *Snap* require its disqualification here.

Local 464A faces none of these issues.  Accordingly, Local 464A respectfully submits that it is entitled to appointment as Lead Plaintiff under the PSLRA, and requests that the Court grant its motion and deny NMSIC's motion.

## II.    ARGUMENT

"The PSLRA instructs district courts to appoint as lead plaintiff the class member that it 'determines to be *most capable* of adequately representing the interests of class members. . . .  The 'most capable' plaintiff-and hence the lead plaintiff-is the one who has the greatest financial stake in the outcome of the case, ***so long as he meets the requirements of Rule 23***.'"  *Bard*, 2009 WL 4350780, at *2 (first emphasis in original) (quoting *Cavanaugh*, 306 F.3d at 729).  As such, a movant seeking appointment as lead plaintiff that does not satisfy Rule 23's requirements cannot be appointed—regardless of that movant's asserted losses.  *See Cendant*, 264 F.3d at 267 ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff.").  If the presumptive lead plaintiff is disqualified because that movant cannot demonstrate both its typicality and adequacy, "the candidate's position is forfeited and the court

returns to the first phase to determine a new presumptive lead plaintiff." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98 (S.D.N.Y. 2005).

Because NMSIC is subject to unique defenses—and must be disqualified—only Local 464A satisfies all the requirements of the PSLRA and can be appointed Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**A.    NMSIC's Conflicting Representations to Federal Courts Subject NMSIC to Unique Defenses Regarding Its Article III Standing**

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution.  *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Absent a plaintiff with constitutional standing, federal courts lack jurisdiction."  *Id.*  In order to establish standing, a plaintiff must show that it has suffered an "injury-in-fact," which generally "means that a plaintiff must have personally suffered an injury"—or, at minimum, "that the plaintiff ha[s] legal title to, or a proprietary interest in, the claim."  *Huff*, 549 F.3d at 107-08; *see also id.* at 106 n.5 ("*named* plaintiffs in a class action must allege and show that they personally have been injured, not that injury has been suffered by other [parties]") (emphasis in original);[3] *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) (noting that the plaintiff "bears the burden of showing that he has standing").  Because standing is a threshold jurisdictional question, a movant who lacks standing to assert the class's claims cannot be appointed lead plaintiff.  *See, e.g.*, *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *3-4 (S.D.N.Y. June 29, 2009) (rejecting lead plaintiff where questions regarding its standing "could ultimately severely prejudice the class,

---

[3]    The Tenth Circuit has recognized the applicability of *Huff* to lead plaintiff movants under the PSLRA.  *See Bard*, 2009 WL 4350780, at *2 (discussing *Huff*).

either at the class certification stage or on some subsequent appeal."); *In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112, 116 (S.D.N.Y. 2009) (finding that a plaintiff lacking standing "faces unique legal
issues" and does not "satisf[y] the adequacy or typicality requirement").

NMSIC is no stranger to cases rejecting movants with questionable standing and authority
issues given that NMSIC was disqualified for that reason in a case under the PSLRA just last year.
*See Snap,* 2019 WL 2223800, at *3 (disqualifying NMSIC due to its standing issues).  While
NMSIC manages New Mexico's permanent endowment fund (among other funds), *see* ECF No.
28-4 at ¶2, NMSIC has provided federal courts conflicting assurances about who has standing and
statutory authority to assert claims in connection with the purchases listed in its PSLRA
certification.  *See Huff*, 549 F.3d at 109 (finding that an investment manager lacked standing
because it did "not have an ownership stake in any claims its clients might pursue against
defendants," as necessary to show an injury-in-fact).

NMSIC's standing and authority was heavily litigated in the *Snap* action in 2019 where
NMSIC moved for appointment as lead plaintiff under the PSLRA.  In that case, unlike here,
NMSIC's motion was filed by the "State of New Mexico on behalf of [the NMSIC]" and included
a PSLRA-required certification signed by the State Investment Officer on behalf of the NMSIC.
2019 WL 2223800, at *3 (alteration in original).  This approach conflicted with NMSIC's prior
lead plaintiff motions (and its motion here), which were filed directly by NMSIC and included
PSLRA certifications signed by the NMAG on behalf of NMSIC.  *Compare Snap*, No. 2:17-cv-
03679 (C.D. Cal.), ECF Nos. 249-1 through 249-6 (PSLRA certifications for NMSIC in prior
actions), attached as Exhibit 1 to the Supplemental Declaration of Joel S. Neckers ("Neckers Supp.
Decl."), *with Snap*, ECF No. 217-1 (PSLRA certification for NMSIC in *Snap*), attached as Exhibit

2 to the Neckers Supp. Decl.  When questioned by the *Snap* court about the shifting structure of

its motions, NMSIC was unequivocal in assuring the court that its approach in *Snap* was

appropriate based on guidance delivered in an intervening "decision by the intermediate appellate

court in the State of New Mexico."  *Snap*, ECF No. 263 at 10:10-17 (C.D. Cal. Mar. 4, 2019)

(referencing the decision in *New Mexico State Investment Council v. Weinstein*, 382 P.3d 923

(N.M. Ct. App. 2016)), attached as Exhibit 3 to the Neckers Supp. Decl. (the "*Snap* Hearing

Transcript").  As explained by counsel for NMSIC:

> [W]hat happened was there was an intervening event between those prior declarations or certifications or whatever one wants to call them and the one that was filed in this case.  That intervening fact was a decision by the intermediate appellate court in the State of New Mexico which focused on this interrelationship which I've just described with respect to two statutes that overlap to a certain extent.
>
> After that decision, **both the Attorney General's Office and the SIC said**: Well, how are we going to do this in the future? And the decision was made that **consistent with that decision, SIC was the one to sign the certificate**.  We agreed with that, and we agreed with it because **if** the attorney general signed it, we would now be accused of not following the statute, number one.  And number two, as a matter of federal law, under the Private Securities Litigation Reform Act, we wouldn't be telling the Court, or arguably we wouldn't be telling the Court, who owned or who had the beneficial interest in the stock.
>
> Now, that's a long-winded way of saying that SIC has a role.  It has filed a declaration.  That declaration is a **hundred percent accurate**. We stand by it.

*Id.* at 10:10 – 11:8.

NMSIC's argument was analyzed by *Snap*.  2019 WL 2223800, at *3 ("The NMSIC stated

that it was relying on a decision of the Court of Appeals of New Mexico, which the NMSIC and

the State interpreted to mean that the [State Investment Officer] (on behalf of the NMSIC) should

7

sign.").[4]  Without taking a position on whether the State Investment Officer or the NMAG was the correct signatory, Judge Wilson concluded that the very *question* regarding NMSIC's proper signatory—as well as the "apparently complex interplay between three somewhat-independent yet interrelated parties" (NMSIC, State Investment Officer, and NMAG)—subjected NMSIC to unique defenses and rendered it unable to satisfy Rule 23's requirements.  *Id.* at *3.  Indeed, the fact "that the NMSIC and the State of New Mexico had to interpret a New Mexico state court opinion for guidance on how to proceed in this case—and furthermore that the case does not provide a clear answer—exposes a possible unique defense that Defendants would likely seek to exploit."  *Id.*  To this end, the court noted that "it seems *highly likely* that the arguments would play a significant role at trial, and that the NMSIC would have to devote class resources to defending itself" and "conclude[d] that the NMSIC does not satisfy the Rule 23 requirements of adequacy and typicality."  *Id.* at *2.

Notwithstanding its representations in *Snap* (which were purported to be "a hundred percent accurate"), NMSIC, without providing any explanation for now ignoring the intermediate New Mexico state court decision, has again reversed course—filing its motion here in NMSIC's name and submitting its PSLRA-required certification with a New Mexico Assistant Attorney General serving as the signatory.  *See* ECF No. 28-2.  Nor does NMSIC explain why the admissions

---

[4]    NMSIC was represented at the *Snap* hearing by outside counsel and a Deputy Attorney General from the NMAG's office.  *See Snap* Hearing Transcript at 4:10-12 ("And with me is Ms. Tania Maestas, deputy attorney general of the State of New Mexico").  At no point did the NMAG's office—or the Deputy Attorney General who addressed the *Snap* court following the above-quoted colloquy—take any issue with counsel's representations regarding NMSIC's standing, the purported impact of the New Mexico appellate decision on how NMSIC's PSLRA certifications should be structured, or the requirement that the State Investment Officer (not the NMAG) "was the one to sign the [PSLRA] certificate."  *See id.* at 27:2-9.

8

it made during *Snap* that "if the attorney general signed it, we would now be accused of not following the statute [and] under the Private Securities Litigation Reform Act, we wouldn't be telling the Court, who owned or who had the beneficial interest in the stock," do not apply given that the NMAG signed the certification here. *Compare Snap* Hearing Transcript at 10:22 – 11:3 *with* ECF No. 28-2. Inexplicably, the State Investment Officer is entirely missing from NMSIC's PSLRA certification here. *See id.* The following table summarizes NMSIC's shifting positions:

|  | 2019 Filings in *Snap* | 2020 Filings in *Pilgrim's Pride* | Consistent? |
|---|---|---|---|
| Motion made by: | State of New Mexico on behalf of NMSIC | NMSIC | **No** |
| PSLRA Certification filed in the name of: | State Investment Officer on behalf of NMSIC | NMSIC | **No** |
| PSLRA Certification signed by: | State Investment Officer on behalf of NMSIC | Office of the Attorney General of the State of New Mexico | **No** |

NMSIC's changed and unexplained position only heightens the concerns surrounding NMSIC's standing and statutory authority given its fervent defense of its approach in *Snap*. NMSIC simply cannot retreat to its pre-*Snap* protocols and claim no harm given its explicit representations in *Snap*. Under the PSLRA, it is irrelevant whether NMSIC ultimately was right in *Snap* or whether it is ultimately right now. Class litigation—which relies on the lead plaintiff to advances the interests of thousands of investors—is not intended to be a laboratory to test arguments that are unique to an individual lead plaintiff. If the Court appoints NMSIC Lead Plaintiff, "it seems highly likely" Defendants would challenge NMSIC's standing and authority to bring suit—with the benefit of years of confused and conflicting positions from NMSIC supporting their arguments. *See Snap*, 2019 WL 2223800, at *2. As the *Snap* court recognized, whether

Defendants would succeed is beside the point: the fact that NMSIC is exposed to this potential defense renders it inadequate and atypical to represent the class. *Id.*; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (holding that a plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him"); *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."). "[E]ven ultimately unsuccessful unique defenses may divert attention from the substance of the basic claim, and class members are entitled to be represented by someone unhindered by such distractions." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) (rejecting movant subject to unique defenses). Other courts accord with *Snap* and have, without resolving issues of state law, rejected state entities where their authority is debatable. *See Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008) (rejecting North Carolina entity without addressing conflicting authority under state law).

The risks associated with NMSIC's appointment are not merely academic—they could have devastating results for the class, including the potential dismissal of the litigation and denial of class certification. *See IMAX*, 2009 WL 1905033, at *3 ("Were we to permit it to continue as lead plaintiff, it is possible that [the standing issue] could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal."); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "subject to unique defenses"). Hazards to the class associated with subsequent dismissal or denial of class certification are further

10

amplified by recent Supreme Court authority making clear that statutes of repose for the federal securities laws cannot be tolled and that the pendency of a class action does not toll the statutes of limitations for subsequently filed class actions. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2052 (2017) ("the *American Pipe* tolling rule does not apply to the 3–year [statute of repose]"); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) ("*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations"). Given these statute of repose and statute of limitation risks, members of the class may have only one bite at the apple, and any subsequent termination of this litigation due to NMSIC's standing questions could jeopardize all investors' claims.

### B.    NMSIC Cannot Fix its Certification after the Lead Plaintiff Deadline

If NMSIC has guessed wrong about who, under New Mexico law, is the proper movant or signatory for its motion and certification, respectively, it cannot simply submit a new or corrected filing without violating the PSLRA. As an initial matter, courts throughout the country and within the Tenth Circuit have consistently held that the PSLRA's sixty-day deadline (here, September 4, 2020) is unequivocal and a movant's standing is to be determined at the time of its motion. *See In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 138-39, 142 (S.D.N.Y. 2007) (concluding that a lead plaintiff movant must have standing "at the time of its original lead plaintiff motion" and noting that "courts have strictly construed [the PSLRA] time limitation"); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) (rejecting movant lacking standing at the time of its motion "due to the strict time limits set forth in the PSLRA for filing motions for appointment as lead plaintiff"); *Bard*, 2009 WL 4350780, at *3 (noting PSLRA's 60-day deadline for seeking appointment as lead plaintiff and denying mandamus in case where the district court

11

adopted a "bright line rule requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions are due"). Thus, there is no basis to allow NMSIC to remedy standing issues after the PSLRA's 60-day deadline without jeopardizing the class's claims.

Moreover, any effort by NMSIC to revise its certification would give rise to additional unique defenses regarding the propriety of such efforts. *See SLM*, 258 F.R.D. at 116 ("Even if this Court held that the [movant could] cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty requires this Court to proceed with caution."); *IMAX*, 2009 WL 1905033, at *3 ("irrespective of whether the assignments of claim cure [the lead plaintiff's] deficient Article III standing, [the lead plaintiff] now faces unique legal issues that other class members do not"). "One can easily imagine the inefficiencies that would result if" NMSIC "is ultimately unable to" perfect standing. *Bard*, 2009 WL 4350780, at *3.

NMSIC's exposure to unique defenses are of its own making and any explanation it provides on reply seeking to distance itself from its representations in *Snap* "would put district courts in the precarious position of having to select a lead plaintiff without knowing whether that plaintiff even has standing to sue." *Id.* There is no reason to distract the prosecution of the class's claims in order to provide NMSIC an opportunity to defend these issues, at considerable risk to all investors, "where there is another movant"—Local 464A—that is also a sophisticated institutional investor asserting a similarly large financial interest, is adequate and typical in all respects, and is not subject to any unique defenses. *Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011); *see also IMAX*, 2009 WL 1905033, at *3 ("There seems little reason for us to subject the class members to such a risk.").

12

### C.      Local 464A Should Be Appointed Lead Plaintiff

If NMSIC is removed from consideration, Local 464A is the only remaining movant and satisfies each of the PSLRA's requirements.   With losses of approximately $1,158,326 in connection with its Class Period purchases of Pilgrim's Pride securities on a LIFO basis, *see* ECF No. 29-3, Local 464A suffered substantial losses, ensuring its interest in vigorously pursuing claims against Defendants.   Additionally, as demonstrated in its opening brief and PSLRA certification, *see* ECF Nos. 29 & 29-2, Local 464A also readily meets the applicable adequacy and typicality requirements under Rule 23.   Indeed, having filed the only complaint in this case, Local 464A has affirmatively demonstrated its commitment and ability to zealously prosecute this litigation for the benefit of the class and, unlike NMSIC, is not subject to any unique defenses. Because there is no "proof" undermining Local 464A's typicality and adequacy, Local 464A should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption).

## III.    CONCLUSION

For the reasons stated herein, Local 464A respectfully requests that the Court: (1) appoint Local 464A as Lead Plaintiff: (2) approve Local 464A's selection of Kessler Topaz as Lead Counsel for the class; and (3) grant such other relief as the Court may deem just and proper.

DATED:  September 25, 2020

Respectfully submitted,

*s/ Joel S. Neckers*
Joel S. Neckers
Nora Ali
**WHEELER TRIGG O'DONNELL LLP**
370 17th Street
Suite 4500
Denver, CO 80202
Telephone: (303) 244-1966
Facsimile: (303) 244-1879
Email: neckers@wtotrial.com
Email: ali@wtotrial.com

*Local Counsel for United Food and Commercial Workers International Union Local 464A, the Trustees of Welfare and Pension Funds of Local 464A – Pension Fund, the Trustees of Retirement Plan for Officers, Business Representatives and Office Employees of Local 464A, the Trustees of Local 464A Finast Full Time Employees Pension Plan, the Trustees of Local 464A Welfare and Pension Building Inc., and the Trustees of New York-New Jersey Amalgamated Pension Plan for ACME Employees*

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: namjed@ktmc.com
Email: dcheck@ktmc.com
Email: rdegnan@ktmc.com
Email: ksauder@ktmc.com

14

*Counsel for United Food and Commercial Workers International Union Local 464A, the Trustees of Welfare and Pension Funds of Local 464A – Pension Fund, the Trustees of Retirement Plan for Officers, Business Representatives and Office Employees of Local 464A, the Trustees of Local 464A Finast Full Time Employees Pension Plan, the Trustees of Local 464A Welfare and Pension Building Inc., and the Trustees of New York-New Jersey Amalgamated Pension Plan for ACME Employees, and Proposed Lead Counsel for the Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Joel S. Neckers*
Joel S. Neckers

16