# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LARRY LABUL, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-02062-VLB |
| Plaintiff, | **CLASS ACTION** |
| vs. | **THE PENSION FUNDS' REPLY TO DEFENDANTS' NOTICE OF RELEVANT INFORMATION CONCERNING THE APPOINTMENT OF LEAD PLAINTIFF AND COUNSEL (ECF NOS. 47, 67)** |
| XPO LOGISTICS, INC., et al., | |
| Defendants. | |

1542254_1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II. ARGUMENT ......................................................................................................2

    A.  Defendants Lack Standing to Respond to the Lead Plaintiff Motions ...........2

    B.  Even If Considered, Defendants' Concern Rings Hollow and Is Not
        a Basis to Deny the Pension Funds' Motion ......................................................5

III. CONCLUSION ..................................................................................................10

1542254_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell v. Ascendant Solutions, Inc.*,
2002 WL 638571 (N.D. Tex. Apr. 17, 2002)...............................................................3

*Bowers v. Tesaro Inc.*,
2018 WL 2089358 (D. Mass. May 4, 2018)................................................................8

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
127 F. Supp. 2d 572 (D.N.J. 2001) ..........................................................................3

*Chahal v. Credit Suisse Grp. AG*,
2018 WL 3093965 (S.D.N.Y. June 21, 2018)...........................................................7

*City of Bristol Pension Fund v. Vertex Pharm.*,
2012 WL 6681907 (D. Mass. Dec. 21, 2012) ...........................................................4

*Dutton v. Harris Stratex Networks, Inc.*,
2009 WL 1598408 (D. Del. June 5, 2009)................................................................3

*Eggleston v. Chicago Journeymen Plumbers'*
*Local Union No. 130, U.A.*,
657 F.2d 890 (7th Cir. 1981).................................................................................4, 9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ....................................................................6, 9, 10

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ..........................................................................3

*Gutman v. Sillerman*,
2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015)..........................................................10

*Hill v. Accentia Biopharmaceuticals, Inc.*,
2013 WL 6283712 (M.D. Fla. Dec. 4, 2013)..............................................................3

*In re Able Labs. Sec. Litig.*,
425 F. Supp. 2d 562 (D.N.J. 2006) ..........................................................................3

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002)..................................................................................3, 6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................3, 11

*In re Cephalon Sec. Litig.*,
1998 U.S. Dist. LEXIS 12321 (E.D. Pa. Aug. 12, 1998) ..........................................3

1542254_1

**Page**

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    288 F.R.D. 26 (S.D.N.Y. Dec. 6, 2012)........................................................... 10

*In re Fannie Mae Sec. Litig.*,
    355 F. Supp. 2d 261 (D.D.C. 2005)................................................................. 6

*In re Herley Indus. Inc.*,
    2010 WL 176869 (E.D. Pa. Jan. 15, 2010)................................................... 3, 4

*In re Lucent Techs. Inc. Sec. Litig.*,
    221 F. Supp. 2d 472 (D.N.J. 2001) ................................................................ 3

*In re Merck & Co., Inc. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) ...................................................................... 3, 4

*In re Milestone Sci. Sec. Litig.*,
    183 F.R.D. 404 (D.N.J. 1998) ........................................................................ 3

*In re Nice Sys. Sec. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) ........................................................................ 3

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) .................................................................... 4

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999) .......................................................................... 3

*In re Surebeam Corp. Sec. Litig.*,
    2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ................................................... 3

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 1:06-cv-11515-WPH (S.D.N.Y. Mar. 21, 2007)...................................... 3

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ........................................................... 3

*Johnson v. Pozen Inc.*,
    2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ................................................. 3

*Levie v. Sears, Roebuck & Co.*,
    496 F. Supp. 2d 944 (N.D. Ill. 2007) ........................................................... 11

*McNamara v. Bre-X Minerals, Ltd.*,
    2003 U.S. Dist. LEXIS 25641 (E.D. Tex. Mar. 31, 2003) ............................. 2

1542254_1

**Page**

*Miller v. Dyadic Int'l, Inc.*,
    2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)...................................................... 11

*Mullins v. AZZ, Inc.*,
    2018 WL 7504312 (N.D. Tex. Aug. 9, 2018)...................................................... 8, 9

*Murphy v. JBS S.A.*,
    2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017) ...................................................... 6, 9

*Netsky v. Capstead Mortg. Corp.*,
    2000 WL 964935 (N.D. Tex. July 12, 2000)....................................................... 3

*Prissert v. Emcore Corp.*,
    2010 WL 7926232 (D.N.M. July 14, 2010)........................................................ 3

*Reimer v. Ambac Fin. Grp., Inc.*,
    2008 WL 2073931 (S.D.N.Y. May 9, 2008) ...................................................... 8

*Teran v. Subaye, Inc.*,
    2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) .................................................. 8

*XPO Logistics Freight, Inc. v. Int'l B'hood of Teamsters*
    No. No. 2018CH000124 (Kendall Cty. Ill. Cir. Ct. Jan. 10, 2019) ......................... 6

*Yates v. Open Joint Stock Co. "Vimpel-Communications,"*
    2005 WL 1018428 (S.D.N.Y. Apr. 29, 2005) ...................................................... 4, 5

**STATUTES, RULES AND REGULATIONS**

**15 U.S.C.**
    §78u-4(a)(3)(B)(i) ......................................................................................... 2
    §78u-4(a)(3)(B)(iii)(II)................................................................................... 2, 6

**Federal Rules of Civil Procedure**
    Rule 12(b)(6) ............................................................................................... 7
    Rule 23 ....................................................................................................... 4, 5, 6

**District of Connecticut Local Civil Rules**
    Rule 7(d) ..................................................................................................... 5

1542254_1

## I.  INTRODUCTION

Despite no clear statutory authority permitting them to do so, defendants have twice urged the Court to deny the Pension Funds' lead plaintiff motion.[1]  *See* ECF Nos. 47, 67.  Their fervent opposition is premised on an Illinois state court lawsuit between XPO Logistics Freight, Inc. (which is not a defendant in this case) and five union defendants (none of which are movants or parties here) alleging entirely unrelated claims to those asserted in this securities case.  *Id.*  Beyond the erroneous conflation of several distinct entities' corporate identities and the failure to specify their actual concern, defendants cite no law for the proposition that the Illinois litigation between distinct parties involving unrelated conduct could ever bear remotely on the Pension Funds' adequacy at the *prima facie* lead plaintiff stage, much less the more demanding class certification stage.

The Pension Funds are multiemployer plans overseen by diverse boards of trustees whose investment advisors purchased XPO Logistics, Inc. stock during the Class Period.  As their public websites state, the Pension Funds' beneficiaries do not even work in the same industry as XPO or XPO Logistics Freight, let alone in the same geographic region – they work in New York in the construction sector, motion picture and television industry, and are parking garage attendants.  The Pension Funds do not have any known business relationships with XPO or XPO Logistics Freight.  Neither XPO entity contributes to any of the Pension Funds.  None of the Pension Funds are parties to the Illinois lawsuit.  None of the Pension Funds are

---

[1]  The Pension Funds are the Local #817 IBT Pension Fund, Local 272 Labor-Management Pension Fund, and Local 282 Pension Trust Fund and Local 282 Welfare Trust Fund.  All emphasis is added and all citations are omitted unless otherwise noted.

- 1 -

subsidiaries of any of the defendants in that case.[2]  Quite simply, the Pension Funds are not implicated in the Illinois case at all.

While the facts and law are missing from defendants' attempt to select their opponent, their goal is quite transparent: defendants do not want the Pension Funds to be the lead plaintiff or Robbins Geller Rudman & Dowd LLP to be lead counsel. Yet, "[i]t is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class and represent its interests, so that the defendant can seek new class counsel who will more readily compromise the claims of the class." *McNamara v. Bre-X Minerals, Ltd.*, 2003 U.S. Dist. LEXIS 25641, at *52 (E.D. Tex. Mar. 31, 2003).  The Court should decline defendants' attempt to dislodge the Pension Funds as the presumptive lead plaintiff, both for lack of standing and on the merits.

II.      ARGUMENT

A.      Defendants Lack Standing to Respond to the Lead Plaintiff Motions

The PSLRA states that, in appointing a lead plaintiff, "the court shall consider any motion made by a purported class member," and that the most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class." 15 U.S.C. §78u-4(a)(3)(B)(i) & (iii)(II).[3]  Defendants "obviously do not belong to the putative class, and the majority of Courts have found that defendants do not have standing to challenge the adequacy of lead plaintiff applicants."  *In re Warner Chilcott Ltd. Sec. Litig.*, No. 1:06-cv-11515-WPH, ECF No. 26 at 3 (S.D.N.Y.

---

[2]   *See* Exhibits 1-3 to the Declaration of Christopher M. Barrett in Support of the Pension Funds' Reply to Defendants' Notice of Relevant Information Concerning the Appointment of Lead Plaintiff and Counsel ("Barrett Reply Decl."), submitted concurrently herewith.

[3]   Defendants simultaneously acknowledge and ignore the statute.  *See* ECF No. 47 at 3.

1542254_1

Mar. 21, 2007) (Barrett Reply Decl., Ex. 4).[4]  As such, "the court should not permit or consider any arguments by defendants."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (the PSLRA "is quite specific on this point, providing that the presumption 'may be rebutted *only* upon proof *by a member of the purported plaintiff class*'") (emphasis in original).[5]

Even if defendants were statutorily entitled to be heard now, it almost goes without saying that "defendants have no incentive to protect the best interests of a purported plaintiff class in opposing or supporting a plaintiff's designation as lead plaintiff."  *City of Bristol Pension Fund v. Vertex Pharm.*, 2012 WL 6681907, at *4 (D. Mass. Dec. 21, 2012).  Thus, "[p]recluding arguments from a party whose interests

---

[4]  *See also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements."); *Hill v. Accentia Biopharmaceuticals, Inc.*, 2013 WL 6283712, at *1 (M.D. Fla. Dec. 4, 2013) (finding defendants lack standing to weigh in at lead plaintiff stage); *Prissert v. Emcore Corp.*, 2010 WL 7926232, at *3 (D.N.M. July 14, 2010) (same); *In re Herley Indus. Inc.*, 2010 WL 176869, at *2 (E.D. Pa. Jan. 15, 2010) (same); *Dutton v. Harris Stratex Networks, Inc.*, 2009 WL 1598408, at *1 n.2 (D. Del. June 5, 2009) (same); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 568 (D.N.J. 2006) (same); *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *8 n.5 (S.D. Cal. Jan. 5, 2004) (same); *Bell v. Ascendant Solutions, Inc.*, 2002 WL 638571, at *2 (N.D. Tex. Apr. 17, 2002) (same); *In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 486 n.18 (D.N.J. 2001) (same); *Netsky v. Capstead Mortg. Corp.*, 2000 WL 964935, at *7 (N.D. Tex. July 12, 2000) (same); *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 409-10 (S.D. Tex. 2000) (same); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999) (same); *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 218 (D.N.J. 1999) (same); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998) (same); *In re Cephalon Sec. Litig.*, 1998 U.S. Dist. LEXIS 12321, at *17 (E.D. Pa. Aug. 12, 1998) (same); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 550 (N.D. Tex. 1997) (same).

[5]  A handful of courts have indicated that, while defendants lack standing, "the court may still consider *sua sponte* the issues argued" by defendants.  *Johnson v. Pozen Inc.*, 2008 WL 474334, at *1 n.2 (M.D.N.C. Feb. 15, 2008).  There is no reason to do so here because another competing movant has opposed the Pension Funds' motion, ensuring that the Court has the benefit of an adversarial process.  Nor have defendants complained that the PSLRA's procedural requirements were not met, which is the other reason courts have been willing to entertain defendants' objections.  *See, e.g., In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (defendants may challenge procedural defects); *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 575 (D.N.J. 2001) (defendants may object to form of notice published).

are diametrically opposed to those of the class is logical at the beginning of litigation, when there is little danger of prejudice to the defendant based on the selection of a particular lead plaintiff."  *Herley*, 2010 WL 176869, at *2; *Merck*, 432 F.3d at 267 (reiterating that "weight of authority falls against" defendants' "ability to challenge lead plaintiff selection" and holding a ban on defendants' interference in the appointment of a lead plaintiff "makes sense because defendants will rarely have the best interests of the class at heart"); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981) ("[w]hen it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house").

Defendants' concerns are also premature.  "An investor who seeks to be appointed as lead plaintiff only needs to make a preliminary showing that it satisfies the requirements of Fed.R.Civ.P. 23."  *Yates v. Open Joint Stock Co. "Vimpel-Communications,"* 2005 WL 1018428, at *2 (S.D.N.Y. Apr. 29, 2005).[6]  "Indeed, 'a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'" *Id.* (alterations in original).  More importantly, "[i]f the attorneys for the other class members shared defendants' concern that appointing [the Pension Funds] as lead plaintiff would jeopardize this case, they would have opposed [the Pension Funds']

---

[6]    The lead plaintiff and class representative requirements differ.  First, "having the largest financial interest in the action is only a factor for appointment as lead plaintiff and not as class representative."  *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135 n.9 (S.D.N.Y. 2007).  Second, "courts have concluded that although lead plaintiffs must meet the requirements of Rule 23, '[t]he Rule 23 analysis for purposes of appointing a lead plaintiff is significantly less detailed than the Rule otherwise requires.'" *Id.* Defendants concede "that this is not the right time to debate whether any of the proposed lead plaintiff applicants satisfy the requirements of Rule 23."  *See* ECF No. 47 at 1.

- 4 -

1542254_1

motion" on the same basis; they did not. *Id.*; *see also* ECF No. 60 (opposing Pension Fund's motion on other grounds).[7]

Because defendants will have their bite at the proverbial apple at class certification, and another member of the putative class has opposed the Pension Funds' motion (albeit on a different basis), there is no reason to deviate from the statute by considering defendants' response now. *Yates*, 2005 WL 1018428, at *2.

### B. Even If Considered, Defendants' Concern Rings Hollow and Is Not a Basis to Deny the Pension Funds' Motion

Defendants contend there is a "significant issue" hampering the Pension Funds' motion because the International Brotherhood of Teamsters ("IBT") is the Pension Funds' "parent organization" and the IBT and an XPO affiliate (but not XPO or the Individual Defendants) are engaged in litigation concerning efforts to unionize an XPO affiliate facility in Illinois and, therefore, it is "paradoxical" that the Pension Funds would have purchased XPO stock and must have ulterior motives in seeking to serve as lead plaintiff in this case. ECF No. 47 at 2-7.[8] Unable to state what those purportedly sinister intentions are, or define how or why they would be disqualifying under the PSLRA (or even Rule 23), defendants instead boast they "are not required

---

[7] The Pension Funds' reply to that opposition brief will be filed on March 19, 2019 pursuant to L. Civ. R. 7(d).

[8] Defendants' portrayal of the facts at issue in *XPO Logistics Freight, Inc. v. Int'l B'hood of Teamsters* is hardly objective. *See* ECF No. 47 at 2-5. For example, a recent motion filed in that case requests an order imposing sanctions against XPO Logistics Freight, Inc. for filing "false complaint allegations, false interrogatory and document responses" and non-compliance with a court order compelling attendance at a deposition. *See* Barrett Reply Decl., Ex. 5 at 1. It appears that while XPO's complaint seeks damages for an alleged trespass, XPO has admitted it suffered no damages, did not lose any revenue at all, and has admitted its claimed damages were false. *Id.* at 4-9. While that motion remains pending, it is a reminder that XPO's allegations are just that, and there are always two sides to every lawsuit (as defendants here will no doubt seek to emphasize to this Court).

- 5 -

1542254_1

to *prove* any unique defenses to defeat adequacy . . . [t]he fact that such defenses are available is enough." *See* ECF No. 47 at 6 (emphasis in original).

On the contrary, it is well-settled that the fact that "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient." *Cavanaugh*, 306 F.3d at 729 n.2. "Rather, the statute provides that the presumption 'may be rebutted only upon *proof* . . . that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23." *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)). Stated differently, "'exacting proof' is needed to rebut the presumption"; "[c]onclusory assertions and mere speculation will not suffice." *Murphy v. JBS S.A.*, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017).[9] Defendants' conclusory notice does not even begin to meet this standard.

Equally problematic, the IBT is not the parent organization of any of the Pension Funds (ECF No. 47 at 2); each Pension Fund is a singular entity, "a multiemployer pension plan," with no parent and no subsidiaries. ECF No. 35-4 at ¶¶2-4. Defendants' assertion that the "Pension Funds . . . are concededly 'local affiliates of the [IBT]'" is equally false. ECF No. 47 at 4 (citing ECF No. 35-4 at ¶¶2-4). What the Pension Funds' Joint Declaration actually says is the *unions*, "Local 817, Local 272, and Local 282 are local affiliates of the [IBT]." ECF No. 35-4 at ¶2. The Pension Funds are distinct entities from the local unions, and from the IBT. Consequently, there is no factual basis for defendants' opposition. *See Chahal v.*

---

[9]    *See also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff."); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (finding that challenger "offer[ed] no proof that OPERS/STRS involvement in the Freddie Mac action would create conflicts, let alone adequately articulate how those alleged conflicts would diminish OPERS/STRS capacity to fairly and adequately represent the class" and contentions were "too speculative and hypothetical to rebut the presumption").

1542254_1

*Credit Suisse Grp. AG*, 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (holding that "any conflict of interest must be grounded in fact to rebut the presumption of the most adequate lead plaintiff" and rejecting "improbable if-you-give-a-mouse-a-cookie hypothetical about a future series of events [that] is far too attenuated to rebut the statutory presumption").

Even ignoring all these impediments, defendants also failed to articulate what the Pension Funds could possibly hope to do by serving as lead plaintiff in this case that might further the IBT's goal to unionize an XPO affiliate in Illinois. Speculative fears aside, the claims and relief available are set forth in the Securities Exchange Act of 1934, the complaint is subject to the PSLRA's heightened pleading standards, defendants can challenge any complaint pursuant to Rule 12(b)(6), and defendants will have an opportunity to oppose class certification. The Court is also required to follow the statute and binding precedent in ensuring all requirements are met. It would be absurd to suggest that a distinct litigation in a different court involving distinct parties that are not before this Court – on both the plaintiff and defense side – could constitute a legitimate issue for the Pension Funds in this case.[10]

---

[10] *See Bowers v. Tesaro Inc.*, 2018 WL 2089358, at *2-*3 (D. Mass. May 4, 2018) (rejecting competing movant's contention that presumptive lead plaintiff was inadequate because he was "an employee of a competitor and occasional business partner of Defendant Tesaro, [and] Defendants will argue that he is pursuing this case to uncover Tesaro's confidential or other business information for the benefit of his employer" because the assertions were "not accompanied by any proof as required by the PSLRA"); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *8 (S.D.N.Y. Sept. 16, 2011) (rejecting attempt to rebut presumption based on "baseless conjecture" that movant "might ultimately sacrifice the interests of the class in order to use his role as lead plaintiff to establish a beneficial precedent for China Cablecom"); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (rejecting contention that public pension funds "'will be more inclined to settle this action for less'" because Ambac, the securities fraud defendant, also "'insures numerous municipal bonds that have been issued by municipalities . . . that are connected to different members of the U.S. Public Pension Funds'" because "Inter-Local glosses over the critical fact that the U.S. Public Pension Funds are distinct from the bond issuers that employ their contributors" and the conflict of interest was not "shown").

- 7 -

Similar to defendants' purportedly "relevant information" here, a competing movant in *Mullins v. AZZ, Inc.*, 2018 WL 7504312 (N.D. Tex. Aug. 9, 2018), contended that a multiemployer pension fund was "'compromised by a serious conflict of interest that will prevent it from acting as a true fiduciary for the class,'" because "'several IBEW 353 sister funds' have business relationships with two subsidiaries of AZZ." *Id.* at *2. But like defendants here, the *Mullins* challenger "wholly fail[ed] to demonstrate that *the Plan*, as opposed to the local *union*, suffers from these alleged conflicts." *Id.* (emphasis added and in original). Moreover, the court found that "it is clear from the declaration of Marnie Niemi Hood, executive administrator of the Plan, that the Plan 'and IBEW Local 353 (the union) are separate legal entities,' that neither of them 'has any known "business relationship" with AZZ Inc. or its subsidiaries,' and that the Plan 'does not have any contract with IBEW Local 257 or IBEW Local 303.'" *Id.*; *see also Murphy*, 2017 WL 4480751, at *6 (rejecting attempt to rebut presumption where the proof offered, "the news articles do not paint the damning portrait of GWI Enterprise that Mac Phail Trust and Kreuser suggest" because "neither Saraiva's accusations nor the regulatory violation relates to the actual entity applying to be a lead plaintiff"); *Foley*, 272 F.R.D. at 133 ("the notion that the relationship between the conglomerate with an ownership stake in Danica and Transocean demonstrates a conflict is belied by Danica's role in this lawsuit, its motion to be named lead plaintiff, and its sworn certification that it will adequately and aggressively lead the class").

As in *Mullins*, each of the Pension Funds' representatives have submitted declarations affirming under oath that the multiemployer plans here are distinct legal entities from the local union as well as the IBT. *See* Barrett Reply Decl., Exs. 1-3 at

- 8 -

1542254_1

¶3.  Only half of each of the Pension Funds' boards are union designees; the other half are the employers' designees.  *Id.*  None of the unions with members who are also Pension Fund participants are even part of the Teamsters Joint Council 25, one of the other defendants in the Illinois case.  *Id.* at ¶7.  Each has also affirmed that the Pension Funds "do not have any known business relationship with XPO Logistics, Inc." (the defendant in this case) "or XPO Logistics Freight, Inc." (the plaintiff in the Illinois case) and that "[n]either XPO entity contributes to" the Pension Funds.  *Id.* at ¶4.  Each further affirmed that the Pension Funds' investment managers made the decision to purchase XPO stock on the Pension Funds' behalf.  *Id.* at ¶6.  The Pension Funds' beneficiaries are also in entirely different industries from XPO Logistics (the defendant here) and XPO Logistics Freight (the Illinois plaintiff); the Pension Funds are New York multiemployer plans with participants in the construction sector, motion picture and television industry, and parking garage attendants.  *Id.* at ¶2.

In short, there simply is nothing to indicate that the Pension Funds are involved in the Illinois case (or even could be involved in that case), let alone anything that might rise to the level such that could be disqualifying under the PSLRA's exacting standard.  *See Gutman v. Sillerman*, 2015 WL 13791788, at *7 (S.D.N.Y. Dec. 8, 2015) ("I will not impute the conduct of Guevoura's investment advisor to its client. There is no evidence that Guevoura had anything to do with the matter being investigated by the AFM, which was eventually settled. The AFM matter is irrelevant to the motion before the court."); *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. Dec. 6, 2012) (rejecting "'baseless conjecture' about conflicts based on business relationships" where presumptive

- 9 -

lead plaintiff movant's treasurer was friends with one of defendant corporation's board members, and the board member also owned an investment company that the movant was heavily invested in); *Foley*, 272 F.R.D. at 133 (rejecting speculative argument that presumptive lead plaintiff faced conflict because movant's parent company was 20% owned by a conglomerate that did business with the defendant, which asked court to "assume that [movant] seeks to be lead plaintiff in an attempt to ultimately thwart the class' objectives and ensure that the outcome of the litigation is as least harmful to [defendant] as possible").[11]

There is a reason district courts universally acknowledge that "[a]llegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety." *Cendant*, 264 F.3d at 270. If the PSLRA does not permit a class member to lob a factually infirm and attenuated challenge at the presumptive lead plaintiff (and it plainly does not), the Court should not permit defendants to do so.

Defendants' notice should be disregarded.

III.   **CONCLUSION**

Despite filing two notices with the Court, defendants have no facts or law to support their position. Lacking both, their opposition to the Pension Funds' lead plaintiff motion should be denied.

---

[11]   **Illustrating how difficult it is to actually rebut the presumption, courts have even appointed lead plaintiffs accused of violating securities laws themselves. *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 951 (N.D. Ill. 2007) (appointing day trader who had been sanctioned by the National Association of Securities Dealers for engaging in deceptive stock transactions as lead plaintiff); *Miller v. Dyadic Int'l, Inc.*, 2008 WL 2465286, at \*7 (S.D. Fla. Apr. 18, 2008) (declining to disqualify movant as lead plaintiff over "accusations of insider trading").**

1542254_1

DATED:  March 13, 2019                    Respectfully submitted,


                                          s/ Christopher M. Barrett
                                          CHRISTOPHER M. BARRETT

                                          IZARD, KINDALL & RAABE, LLP
                                          ROBERT A. IZARD (ct01601)
                                          CHRISTOPHER M. BARRETT (ct30151)
                                          29 South Main Street, Suite 305
                                          West Hartford, CT  06107
                                          Telephone:  860/493-6292
                                          860/493-6290 (fax)
                                          rizard@ikrlaw.com
                                          cbarrett@ikrlaw.com

                                          Local Counsel

                                          ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          DANIELLE S. MYERS
                                          JUAN CARLOS SANCHEZ
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          [Proposed] Lead Counsel for [Proposed]
                                          Lead Plaintiff

- 11 -

1542254_1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 13, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Barrett
CHRISTOPHER M. BARRETT (ct 30151)

29 South Main Street, Suite 305
West Hartford, CT  06107
Telephone:  860/493-6292
860/493-6290 (fax)

E-mail:  cbarrett@ikrlaw.com

1542254_1