IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-CV-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A, THE TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND, THE TRUSTEES OF RETIREMENT PLAN FOR OFFICERS, BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A, THE TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN, THE TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC., and THE TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN FOR ACME EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION, JAYSON J. PENN, WILLIAM W. LOVETTE, and FABIO SANDRI,

    Defendants.

---

**WILLIAM W. LOVETTE'S MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

Defendant William W. Lovette respectfully moves to dismiss the Consolidated Amended Class Action Complaint dated May 26, 2021, (ECF No. 54, the "AC") filed by Lead Plaintiff New Mexico State Investment Council ("Plaintiff"), alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The AC fails to state a claim against Mr. Lovette under the heightened pleading standards required by Rule 9(b) of the Federal Rules of Civil Procedure ("FRCP") and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA"). As such, Mr. Lovette moves to dismiss the AC pursuant to FRCP 12(b)(6).

## PRELIMINARY STATEMENT

The AC is virtually devoid of allegations involving Mr. Lovette, rendering the claims against him insufficient to sustain a private cause of action under the Exchange Act. Plaintiff ignores its heightened burden to plead survivable claims against each Defendant on a stand-alone basis and instead relies on group pleading and insinuations that do not suffice. The AC against Mr. Lovette should be dismissed.[1]

With the allegations specific to Mr. Lovette sifted from the AC, as they must be in determining whether Plaintiff pleads a valid claim against him, the AC's inadequacies are laid bare. To support its claims, Plaintiff tries to tie generic public statements made by Mr. Lovette to two pre-2017 conversations involving Mr. Lovette, which Plaintiff speculates related to alleged anticompetitive behavior occurring *before* the class period. In an attempt to mask this

---

[1] On July 13, 2021, all parties telephonically met and conferred pursuant to Judge Moore's Practice Standard IV.N.2.a to resolve the issues identified in this motion, but the parties were unable to resolve the dispute.

deficiency, Plaintiff baldly alleges that Defendants were "legally obligated" to disclose to shareholders that Pilgrim's Pride Corporation's ("Pilgrim's") increase in profitability was "driven by an unsustainable and illegal bid-rigging scheme, not by legitimate, sustainable business practices," such as efficient operations, a broad product portfolio, and strong relationships with key customers. (AC ¶ 9 (emphasis omitted).) But Plaintiff offers *no* support for this conclusion, and such group pleading and speculation do not satisfy Plaintiff's heavy burden to plead that Mr. Lovette *himself* committed an Exchange Act violation. Moreover, Plaintiff does not allege a single fact to suggest that any of Mr. Lovette's affirmative statements about Pilgrim's were actually untrue, let alone that Mr. Lovette knew of the falsity of these statements or the existence of the alleged underlying bid-rigging scheme at the time the statements were made.

Plaintiff's entire proffer against Mr. Lovette is that: (1) he participated in two brief conversations with other alleged co-conspirators over the span of seven years and before the putative class period; (2) he left his corporate roles at Pilgrim's *before* charges were brought against Pilgrim's; (3) he signed routine Sarbanes-Oxley ("SOX") certifications; and (4) he regularly sold some of his shares of Pilgrim's stock as they vested. Without more, these allegations cannot adequately support a colorable violation of either Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, or Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(b). And the allegations do not meet the PSLRA's heightened pleading standard, which requires Plaintiff to establish a "strong inference" of scienter as to Mr. Lovette.

3

To survive dismissal, Plaintiff must plead sufficient facts to support the notion that Mr. Lovette was aware of a bid-rigging scheme that rendered his generic public statements knowingly false and materially misleading to purported class member investors in Pilgrim's at the time he made the statements, including adequate pleading to show his conduct caused their losses. It fails to do so on all fronts. For these reasons, as discussed below, and for the reasons set forth in Defendants Pilgrim's Pride Corporation and Fabio Sandri's Motion to Dismiss Plaintiff's Amended Class Action Complaint and Incorporated Memorandum of Law (the "Pilgrim's Pride Motion"), ECF No. 63, which Mr. Lovette joins and adopts herein,[2] Plaintiff's claims against Mr. Lovette should be dismissed.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Mr. Lovette adopts the Statement of Facts and Procedural History as stated in the Pilgrim's Pride Motion. *See* ECF No. 63, at 4–9.

## ARGUMENT

Plaintiff fails to plead adequately that Mr. Lovette made material misrepresentations, that Plaintiff's loss was causally connected to any of Mr. Lovette's alleged misrepresentations, or that Mr. Lovette was involved in a scheme to defraud as explained in Argument Sections I, III, and IV of the Pilgrim's Pride Motion. In addition to those failures, Plaintiff fails to meet the PSLRA's tall standard for pleading that Mr. Lovette acted with the requisite scienter.

### I. THE PSLRA IMPOSES A HEAVY PLEADING BURDEN ON PLAINTIFF.

---

[2] On July 16, 2021, the Court granted Mr. Lovette's motion to incorporate by reference the Pilgrim's Pride Motion. *See* ECF No. 60.

A plaintiff alleging securities fraud must satisfy the heightened pleading requirements of FRCP 9(b) and the PSLRA. *See Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020). FRCP 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiff also must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2)(A).

In the Tenth Circuit, a plaintiff must establish that "the defendant acted with scienter, that is, with the intent to defraud or recklessness." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1200 (10th Cir. 2012) (emphasis omitted) (internal quotation marks and citation omitted). "Intentional misconduct is easily identified since it encompasses deliberate illegal behavior." *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001). Recklessness "is a particularly high standard, something closer to a state of mind approximating actual intent." *Zagg*, 797 F.3d at 1206 (internal quotation marks and citations omitted). A court will draw a "strong inference" of scienter "only if, based on plaintiff's allegations, 'a reasonable person would deem the inference of scienter cogent ***and at least as compelling as any opposing inference*** one could draw from the facts alleged.'" *In re Level 3 Commc'ns Sec. Litig.*, 667 F.3d 1331, 1343 (10th Cir. 2012) (emphasis added) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). In the context of a securities fraud case, "allegations of negligence or even gross negligence fall 'below the high threshold for liability under Section 10(b) of the Exchange Act.'" *Smallen*, 950 F.3d at 1305 (quoting *Dronsejko v. Thornton*, 632 F.3d 658, 668 (10th Cir. 2011)).

## II. PLAINTIFF HAS NOT ALLEGED WITH PARTICULARITY THAT MR. LOVETTE MADE ANY ACTIONABLE MISREPRESENTATIONS OR OMISSIONS.

For the reasons stated in Argument Section I of the Pilgrim's Pride Motion, *see* ECF No. 63, at 11–15, the AC fails to allege any actionable misrepresentation or omission made by Mr. Lovette in his capacity as Pilgrim's CEO. Moreover, even setting aside the clear timing disconnect between Plaintiff's allegations of Mr. Lovette's wrongdoing and the commencement of the putative class period, *see infra* Section III, the alleged misstatements attributed to Mr. Lovette simply do not rise to the level of material misstatements upon which a securities case can be built. Most notably, Plaintiff fails to allege any particularized facts showing that Mr. Lovette's statements about the success of Pilgrim's operations, its strategic acquisitions, effective management, and relationships with key customers were ***contradicted*** by contemporaneous evidence. *See SEB Asset Mgmt. S.A. v. W. Union Co.*, No. 13-cv-03325-MSK-MJW, 2015 U.S. Dist. LEXIS 131387, at *13–14 (D. Colo. Sep. 29, 2015) (dismissing claims where complaint failed to allege particularized facts showing how purported misrepresentations were misleading). For example, the AC does not contain a single allegation that Mr. Lovette ever addressed any alleged bid-rigging scheme or commented on the merits of the publicly disclosed antitrust litigation that was pending. Indeed, the statements made by Mr. Lovette in earnings calls and SEC filings regarding Pilgrim's performance and competitive edge, *see, e.g.*, AC ¶ 153, 159, 163, 165, are the exact types of "vague statements of corporate optimism" that the Tenth Circuit finds are "incapable of objective verification" and thus cannot stand as a basis for a Section 10(b) violation. *See Grossman v. Novell, Inc.,* 120 F.3d 1112, 1122 (10th Cir. 1997); *Level 3*, 667 F.3d at 1340.

Plaintiff does not plead a material misrepresentation made by Mr. Lovette that is cognizable under Section 10(b), warranting dismissal.

### III.   THE AC FAILS TO ALLEGE PARTICULARIZED FACTS SUPPORTING A STRONG INFERENCE THAT MR. LOVETTE ACTED WITH SCIENTER.

Plaintiff also does not adequately plead scienter in its allegations against Mr. Lovette.  To establish scienter, Plaintiff must allege that Mr. Lovette knew about the bid-rigging and its material impact on Pilgrim's success at the time he made the alleged misrepresentations, and that Mr. Lovette intentionally or recklessly chose to withhold this information from investors. *See In re Weinstein*, 757 F.3d 1110, 1113 (10th Cir. 2014).  Plaintiff does neither. Instead, Plaintiff simply relies on Pilgrim's isolated anticompetitive conduct from 2012–2017 and a litany of conclusory allegations that statements in Pilgrim's SEC filings and related public statements by Mr. Lovette were "materially false and misleading" because Mr. Lovette omitted that Pilgrim's was allegedly "exposed . . . to substantial criminal penalties and reputational harm." (*See, e.g.*, AC ¶¶ 140–86.) Fatally absent from the AC is a cogent explanation as to how a scheme that took place from 2012 through early 2017 renders forward-looking statements made from February 2017 through June 2020 false.  Such pleading is insufficient in the Tenth Circuit to survive dismissal.

Read in the light most favorable to Plaintiff, the sole support that Mr. Lovette's alleged involvement in anticompetitive conduct somehow tied in with his public statements is that he participated in two isolated conversations, taking place nearly two years apart, nearly three years prior to the putative class period.  (AC ¶¶ 98, 112.)  Given the threadbare nature of its specific allegations, Plaintiff resorts to throwing theories against the wall in hopes of surviving dismissal. But Plaintiff's remaining allegations that Mr. Lovette retired in 2019 (*Id.* ¶ 246); signed SOX certificates as required of him due to his corporate role (*Id.* ¶ 247); and routinely sold shares of

7

Pilgrim's stock as they vested throughout the putative class period (*Id.* ¶ 115) fail to give rise to the "strong inference" of scienter required by the PSLRA, and replicate the very pattern of pleading that the Tenth Circuit routinely dismisses.

### A. <u>Mr. Lovette's Participation in Two Conversations Prior to the Class Period Do Not Support a Strong Inference of Scienter.</u>

Far from plausibly alleging that Mr. Lovette knew of, participated in, and covered up the alleged bid-rigging scheme when he made statements during the putative class period, the AC does not contain a single allegation establishing that Mr. Lovette's knew of alleged bid-rigging when the statements at issue in this case were made. The allegations in the AC evidence Plaintiff's attempt to convert a discrete violation of antitrust laws by Pilgrim's ***prior*** to the putative class period into a claim for securities fraud in the years following the violation. Pilgrim's anticompetitive conduct ***before*** the putative class period is insufficient to establish that Mr. Lovette knew his public statements ***during*** the class period were false when made. *See Smallen*, 950 F.3d at 1314 (pre-class period statement "fails to support the inference [an executive] knew about or consciously disregarded ongoing legal violations during the Class Period"); *accord Emps. Ret. Sys. v. Embraer S.A.*, No. 16 Civ. 6277-RMB, 2018 U.S. Dist. LEXIS 56895, at \*14 (S.D.N.Y. Mar. 30, 2018) ("[P]re-class period allegations of misconduct are insufficient where 'there is scant else from which to infer that this was the company's practice at any pertinent time.'" (quoting *Cats v. Prot. One, Inc.*, Nos. CV 99-3755 DT (Rcx), CV 99-3798 DT (RCx), CV 99-4147 DT (RCx), CV 99-5534 DT (RCx), 2001 U.S. Dist. LEXIS 25726, at \*15 (C.D. Cal. June 4, 2001))). Indeed, the AC contains only two alleged interactions between Mr. Lovette and supposed co-conspirators, both of which occurred before the putative class period, to support the notion that Mr. Lovette ever knew about alleged big-rigging: (1) a fifteen-minute phone call in 2014 between Mr. Lovette and

8

a Vice President at Pilgrim's with no content or description (AC ¶ 98); and (2) a 2016 e-mail from a Koch employee related to a customer's request to extend payment terms for certain lines of credit. (*Id.* ¶ 112.) As a threshold matter, because the 2014 phone call occurred six years before Plaintiff filed its AC, any claims premised on that allegation are barred under the applicable five-year statute of repose. 28 U.S.C. § 1658(b)(2); *see Hogan v. Pilgrim's Pride Corp.*, No. 16-cv-02611-RBJ, 2021 U.S. Dist. LEXIS 74317, at *20 (D. Colo. Apr. 16, 2021) (finding continuing fraud exception does not toll statute of repose and barring claims for misrepresentations made more than five years before operative complaint was filed); *Althaus v. Broderick*, No. 15-cv-00164-JNP, 2016 U.S. Dist. LEXIS 96243, at *12 (D. Utah July 22, 2016) (same).

Setting aside the timing defect, the two events that Plaintiff contends establish Mr. Lovette's alleged involvement/knowledge of bid-rigging are insufficient to meet the PSLRA's heightened standards to plead a valid claim here. Specifically, Plaintiff alleges that in August 2014, Mr. Lovette had a fifteen-minute phone call with Roger Austin, a Vice President at Pilgrim's, on the same day that the alleged co-conspirators were discussing whether to lower prices on a certain bid. (AC ¶ 98.) The AC's silence as to the substance of that call renders it ineffectual in establishing scienter. When evaluating whether a plaintiff properly has pleaded scienter, a circumstantial call without more fails to meet the Tenth Circuit's requirement that a plaintiff plead exacting allegations regarding the underlying wrong. In *Sorkin LLC v. Fischer Imaging Corp.*, No. 03-cv-00631-RPM, 2005 U.S. Dist. LEXIS 19934, at *22 (D. Colo. June 21, 2005), the court found that the plaintiffs' "allegations . . . describing meetings where there were discussions about how to accelerate sales[] are also too general to support an inference of scienter." *Id.* This is because "[w]ithout specific facts about who was present and what information was presented, there

9

is no way to determine whether the matters discussed involved [the alleged misrepresentations]." *Id.* Similarly here, the AC alleges no information about what Austin and Mr. Lovette discussed.

Next, Plaintiff alleges that nearly two years after the undescribed phone call with Austin, Mr. Lovette received an email from a Koch employee related to a customer's apparent request to extend the payment terms of certain lines of credit. (AC ¶ 112.) Plaintiff does not allege that Mr. Lovette agreed with anyone as to how Pilgrim's would respond to that request, much less that any discussions regarding a credit term—not prices—was in any way related to an eight-year bid-rigging scheme or chicken pricing. (*Id.*) Indeed, Plaintiff specifically alleges that Mr. Lovette did not initiate the exchange and does not allege that Mr. Lovette's non-public representations to a business competitor were acted upon. (*Id.* (alleging Koch employee initiated conversation).) An isolated business communication that Plaintiff fails to connect to the pre-class period anticompetitive conduct or forward looking statements is insufficient to create the inference that Mr. Lovette had the requisite scienter to sustain the claims against him.

Plaintiff's two allegations of specific misconduct, one of which is purely speculative and extends beyond the statute of repose and the other of which specifically does not relate to chicken pricing or bid-rigging at all, demonstrate that an inference of scienter based on this conduct is ***not*** "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Level 3*, 667 F.3d at 1343. In fact, looking at the totality of the allegations in the AC and the dearth of allegations relating to Mr. Lovette, the far more compelling inference is that Mr. Lovette had no knowledge of the bid-rigging scheme and, unremarkably, sporadically communicated about routine business matters with lower-level employees at Pilgrim's and others in the industry.

### B. <u>Mr. Lovette's Retirement More Than One Year Before Charges Against Pilgrim's Were Announced Was Not Suspicious.</u>

Plaintiff's second basis for establishing scienter is a single, conclusory allegation that Mr. Lovette was "let go" under "suspicious" circumstances in March 2019, more than a year before the criminal indictment was unsealed (AC ¶ 246)—even though Plaintiff elsewhere acknowledges that Mr. Lovette transitioned out of the President and CEO role into an advisory position (*Id.* ¶ 14). The Court should disregard this allegation as deficient on its face, as other Tenth Circuit courts have done in similar circumstances. *See In re Overstock Sec. Litig.*, No. 2:19-CV-709-DAK-DAO, 2020 U.S. Dist. LEXIS 179388, at *29 (D. Utah Sep. 28, 2020) (noting "Plaintiff never addresses why [Defendant] resigned and its statement that his departure was suspicious is not based on any supporting facts. These facts are not sufficient to plead scienter."); *see also Sorkin*, 2005 U.S. Dist. LEXIS 19934, at *23 ("Bald assertions and legal conclusions do not meet the pleading requirements of Rules 9(b) and 12(b)(6), or the requirements of the PSLRA.").

Additionally, public documents contradict Plaintiff's self-serving recasting of events.[3] The 2018 Proxy filed by Pilgrim's notes that Mr. Lovette retired from his position after eight years of service as CEO and remained employed as an advisor to Pilgrim's. *See* Ex. A (2018 Proxy) at 36.[4] Indeed, contrary to Plaintiff's self-serving characterization of Mr. Lovette's retirement as "suspicious", Pilgrim's 2019 Proxy lays out the details of Mr. Lovette's transition to a senior advisor, including that Mr. Lovette received a "Transition Employment and Separation

---

[3] On a motion to dismiss, the Court can take judicial notice of public SEC filings. *See Emps.' Ret. Sys. of R.I v. Williams Cos.*, 889 F.3d 1153, 1158 (10th Cir. 2018) (noting it is not unusual to consider public documents filed with the SEC in securities cases).

[4] All references to "Ex." refer to Exhibits to the accompanying Declaration of John A. Fagg, Jr.

11

Agreement" which detailed Mr. Lovette's compensation during the years following his resignation as CEO and his employment as a senior advisor until 2020.  *See* Ex. B (2019 Proxy), at 26–27. Mr. Lovette's amicable and transparent transition out of his role as President and CEO is in no way suggestive of scienter.

### C. Mr. Lovette's Routine Execution of SOX Certifications Does Not Constitute Securities Fraud.

Plaintiff next alleges, again without any particularized facts in support, that Mr. Lovette signed "false and misleading" SOX Certifications.  (*See* AC ¶ 249.)  The Tenth Circuit has found the mere presence of SOX certificates unpersuasive because they are not accompanied by "particularized facts to support an inference that [an individual defendant] knew [his] sworn SOX statements were false at the time they were made."  *Zagg*, 797 F.3d at 1205; *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1116 (10th Cir. 2015).  Where, as here, a plaintiff only makes a threadbare showing of conclusory allegations related to the fact that a defendant ***knew at the time*** that his sworn SOX statements were false, such bare allegations are wholly unpersuasive, "add[] nothing substantial to the scienter calculus," *Gold*, 776 F.3d at 1116, and "at most, . . . support an inference of negligence."  *Zagg*, 797 F.3d at 1205.

Ignoring the caselaw and its pleading obligations, Plaintiff invites the court to infer that, because Mr. Lovette was Pilgrim's President and CEO, Mr. Lovette must have known that his statements about Pilgrim's performance were false.  (*See, e.g.*, AC ¶¶ 235–38.)  But, even if the Plaintiff explained how these statements were false (which it failed to do), the Tenth Circuit has "rejected the notion that knowledge may be imputed solely from an individual's position within a company." *Zagg*, 797 F.3d at 1205 (internal quotation marks omitted) (quoting *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 497 (10th Cir. 2014)); *accord Fleming*, 264 F.3d at 1264

12

("[A]llegations that a securities fraud defendant, because of his position within the company, must have known a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate . . . ." (internal quotation marks and citation omitted)).

Plaintiff's allegations related to Mr. Lovette's SOX certifications do not assist Plaintiff in meeting its burden.

### D. Mr. Lovette's Routine Disposition of Vested Stock Before and Throughout the Class Period Is Not Evidence of Motive; Instead, His Stock Sales Actually Rebut An Inference of Scienter.

Finally, Plaintiff points to Mr. Lovette's stock trades as purported evidence of Mr. Lovette's motive to commit fraud. But "[c]ourts should not infer fraudulent intent based only on the fact that some officers sold stock." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1195 (D. Colo. 2004). Rather, "[t]o create a strong inference of scienter, the plaintiff must allege facts showing that the trades were made at times and in quantities that were suspicious." *Sorkin*, 2005 U.S. Dist. LEXIS 19934, at *30. Relevant to this inquiry is:

> (i) whether the alleged trades were "normal and routine" for the insider; (ii) whether profits reaped "were substantial enough in relation to the compensation levels for any of the individual defendants so as to produce a suspicion that they might have had an incentive to commit fraud; and, (iii) whether, in light of the insider's total stock holdings, the sales are unusual or suspicious.

*Id.*

Contrary to Plaintiff's allegations, Mr. Lovette's stock sales during the putative class period were not unusual in timing or scope. The AC cherry-picks dates in support of its allegation that Mr. Lovette and other individual defendants did not sell stock during a two-year period prior to the putative class period. (*See* AC ¶ 244.) In fact, however, Mr. Lovette sold approximately

13

15% of his shares each year from 2014 to 2019, with the sole exception of 2016, which followed a year in which Mr. Lovette did not have new stock options vest.[5] Moreover, public documents filed with the SEC demonstrate that Mr. Lovette received grants of restricted stock which vested throughout his tenure as CEO of Pilgrim's.  *See, e.g.*, Ex. C (2016 Proxy) at 25, 28, 29; Ex. A (2018 Proxy) at 38–39.  Mr. Lovette's publicly filed Form 4s show that he sold moderate portions of his Pilgrim's stock in yearly intervals as the RSUs vested.  For example, SEC reports show the following trades for Mr. Lovette:[6]

- On November 4, 2014, Mr. Lovette sold 24,250 of his 211,000 shares (11.5%). Ex. E (2014 Form 4).
- On February 20, 2015, Mr. Lovette sold 90,690 of his 393,683 shares (23%).  Ex. F (2015 Form 4).
- On February 17, 2017, Mr. Lovette sold 48,310 of his 464,953 shares (10.4%). Ex. G (2017 Form 4)
- On February 27, 2018, Mr. Lovette sold 100,000 of his 678,653 shares (14.7%). Ex. H (2018 Form 4).
- On February 20, 2019, Mr. Lovette sold 86,425 of his 578,653 shares (14.9%). Ex. I (2019 Form 4).

Crucial to the analysis, Mr. Lovette *increased* his aggregate holdings during the putative class period.  At the beginning of the putative class period, Mr. Lovette held 464,953 shares of common stock.  In Mr. Lovette's most recent SEC disclosure, he held 504,974 shares of common stock—representing a 8.6% increase from February 2017.  *See* Ex. J (March 2020 Form 5).  Rather than suggesting Mr. Lovette engaged in misconduct, "[t]hese factors militate against an inference

---

[5] Between December 2014 and December 2016, Lovette did not have any RSU's vest.  *See* Ex. D at 29–30 (2014 Proxy); Ex. C at 30 (2016 Proxy).  As such, the fact that Lovette did not sell any shares of stock in 2016 is consistent with his trading activity before and during the class period.
[6] *See* SEC, Insider Trading Report for William W. Lovette, *available at* https://sec.report/CIK/0001340956/Insider-Trades.  For the Court's convenience, the Form 4 for each trade is attached as an exhibit to the Fagg Declaration.

14

of scienter." *Smallen*, 950 F.3d at 1310–11; *see Level 3*, 667 F.3d at 1346–47 (noting that increased holdings weakens an inference of scienter); *see also Ronconi v. Larkin*, 253 F.3d 423, 435–36 (9th Cir. 2001) (finding sales of 10% and 17% of stock option holdings were not unusual).[7] Thus, not only does Mr. Lovette's trading not support *any* inference that Mr. Lovette acted with fraudulent intent, his trading rebuts such an inference.

## IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION OR SCHEME LIABILITY AS TO MR. LOVETTE.

For the reasons stated in Argument Section III of the Pilgrim's Pride Motion, *see* ECF No. 63, at 19–23, Plaintiff does not plead any causal connection between the alleged misrepresentations and its economic loss. Nor does Plaintiff plead the existence of scheme liability for the reasons stated in Argument Section IV of the Pilgrim's Pride Motion, further justifying dismissal. *See id.* at 23–24.

## V. PLAINTIFF'S SECTION 20(A) COUNT FAILS TO STATE A CLAIM.

Because Plaintiff has failed to plead an underlying claim for securities fraud against Pilgrim's, its control person claim against Mr. Lovette under Section 20(a) of the Exchange Act must also be dismissed. *Smallen*, 950 F.3d at 1315 (citing *Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1107 (10th Cir. 2003)).

---

[7] Even were the Court to find that Mr. Lovette's trades were suspicious, they are not, on their own, sufficient to support an inference of scienter. *Smallen*, 950 F.3d at 1310 ("While suspicious insider stock trading is evidence of motive and weighs in favor of inferring fraudulent intent, the amount of profit realized through executive stock sales, standing alone, is insufficient to support an inference of scienter."); *see also Level 3*, 667 F.3d at 1346–47.

## CONCLUSION

The allegations in the AC against Mr. Lovette are scant, untimely, and fall well short of the heightened standard required to plead a valid securities claim against Mr. Lovette. Plaintiff fails to allege facts to meet its burden to establish a strong inference that Mr. Lovette acted with scienter under these heightened pleading standards. For the reasons stated herein and in the Pilgrim's Pride Motion, the claims against Mr. Lovette should be dismissed.

Respectfully submitted this 19th day of July, 2021.

        *s/ John A. Fagg, Jr.*
        John A. Fagg, Jr.
        Mark A. Nebrig
        Nicole E. Schiavo
        MOORE & VAN ALLEN PLLC
        100 North Tryon Street, Suite 4700
        Charlotte, NC 28202
        (704) 331-1000
        johnfagg@mvalaw.com
        marknebrig@mvalaw.com
        nicoleschiavo@mvalaw.com

        *Attorneys for Defendant William W. Lovette*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July 2021, I electronically filed the foregoing WILLIAM W. LOVETTE'S MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED AMENDED CLASS ACTION COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr