IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A,
TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A—PENSION FUND,
TRUSTEES OF RETIREMENT PLAN FOR OFFICERS,
BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A,
TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN,
TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC.,
TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN FOR ACME EMPLOYEES, and
NEW MEXICO STATE INVESTMENT COUNCIL, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION,
JAYSON J. PENN,
WILLIAM W. LOVETTE, and
FABIO SANDRI,

    Defendants.

---

## ORDER

---

This securities class action is before the Court on three Motions to Dismiss. (ECF Nos. 62, 63, 64.) Lead Plaintiff New Mexico State Investment Council filed an omnibus Opposition to the Motions. (ECF No. 67.) Defendants have filed Replies. (ECF Nos. 72, 73, 74.) For the reasons below, the Motions are granted, and all claims in this case are dismissed with prejudice.

## I. BACKGROUND

Lead Plaintiff brings this action against Defendant Pilgrim's Pride Corporation ("Pilgrim's") and three of its officers on behalf of all persons or entities that acquired common stock of the corporation between February 9, 2017, and June 2, 2020. Pilgrim's is one of the nation's leading chicken producers. Since 2011, the three individual Defendants have consecutively served as Pilgrim's president and chief executive officer. The 110-page Consolidated Amended Class Action Complaint (ECF No. 54) asserts claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. In essence, Lead Plaintiff contends that Defendants deceived investors by touting Pilgrim's performance during the class period while continuing to participate in an undisclosed and illegal bid-rigging conspiracy.[1]

In press releases, investor presentations, and public filings with the Securities Exchange Commission ("SEC"), Defendants made numerous statements attributing Pilgrim's performance to, inter alia, "its efficient operations, broad product portfolio and purportedly strong relationships with its key customers." (ECF No. 54 at 3-4, ¶ 5.) For example, a 2016 Form 10-K filed on February 9, 2017, the first day of the class period, described the chicken industry as "highly competitive" and touted Pilgrim's "[l]eading market position in the growing chicken industry," "[b]road product portfolio," "[b]lue chip and diverse customer base across all industry segments," "[r]obust cash flow generation with disciplined capital allocation," and

---

[1] United States District Judge R. Brooke Jackson dismissed similar claims against these Defendants (minus Defendant Penn) because the lead plaintiff there failed to plead the underlying antitrust conspiracy with sufficient particularity. *See Hogan v. Pilgrim's Pride Corp.*, No. 16-cv-02611-RBJ, 2018 WL 1316979, at *9 (D. Colo. Mar. 14, 2018). The claims in this case are on a different footing in light of the subsequent indictments against Defendants Penn and Lovette and Pilgrim's conviction.

"[e]xperienced management team and results-oriented corporate culture." (*Id.* at 51-52, ¶¶ 140, 142.) A 2018 Form 8-K stated:

> Despite some headwinds in feed, labor and logistics, the investments we made over the past few years, together with the recent acquisitions and our capture of operational improvements, helped us to generate consistent results and continued to contribute to the evolution of our portfolio in supporting our vision to become the most respected company in our industry.

(*Id.* at 60, ¶ 170.)

Sampling further from the Complaint, on a February 2017 conference call with analysts and investors, Defendant Lovette stated: "We remain convinced that our Business will have the ability to outperform, given our broad portfolio and presence in all bird categories, as well as strong relationships with key customers." (*Id.* at 54, ¶ 149.) And on an August 2019 conference call, Defendant Penn stated: "Our key customer approach is strategic and creates a basis to further accelerate growth in important categories by providing more customized, high-quality innovative products to give us a clear long-term competitive advantage." (*Id.* at 68, ¶ 194.) He added: "Beyond driving growth, our key customer approach also promotes trust, enhances long-term relationships and strengthens our margin structure." (*Id.*)[2]

Lead Plaintiff asserts that these statements and numerous others were false and misleading because Pilgrim's "purportedly strong results were artificially inflated by Defendants' illegal bid-rigging scheme." (*Id.* at 55, ¶ 137.)

---

[2] Another source of alleged materially false statements is Pilgrim's Code of Conduct and Ethics, published during the class period and stating, inter alia, that "Pilgrim's is committed to a policy of lawful competition based on the merits of our products and services." (ECF No. 54 at 46, ¶ 126.) Yet another source of alleged materially false statements is the individual Defendants' Sarbanes-Oxley ("SOX") certifications affirming that certain filings by Pilgrim's did not contain any omissions or false statements of material fact. (*Id.* at 75-76, ¶¶ 215-18.)

On June 3, 2020, the day after the class period ends, the Department of Justice ("DOJ") filed an indictment against Defendant Penn and others for criminal antitrust violations stemming from their alleged involvement in a conspiracy involving Pilgrim's and several other large broiler producers to fix prices and rig bids for broiler chickens. According to the indictment, the scheme began at least as early as 2012 and continued through at least early 2017. Pilgrim's stock price fell by 12.4 percent on that news.

On October 6, 2020, the DOJ filed a superseding indictment naming additional defendants, including Defendant Lovette, and extending the period of the alleged bid-rigging scheme through at least 2019. A week later, the DOJ filed separate criminal charges against Pilgrim's, which later pleaded guilty to participating "through 2017" in a conspiracy to suppress competition by rigging bids and fixing prices for broiler chicken products. (ECF No. 63-12 at 5.) Pilgrim's agreed to pay a criminal fine of about $108 million. (*Id.* at 8.) Proceedings on the criminal charges against Defendants Penn and Lovette (and other alleged conspirators) are ongoing.

## II. LEGAL STANDARDS

Under § 10(b) of the 1934 Act, it is unlawful "[t]o use or employ in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). SEC Rule 10b-5 prohibits "mak[ing] any untrue statement of material fact" or "omit[ting] to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To establish a violation of under § 10(b) and Rule 10b-5, a plaintiff must prove:

4

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012).

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended the 1934 Act, "a heightened pleading standard applies to the first and third of these elements." *Id.*; *see also Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Exacting pleading requirements are among the control measures Congress included in the PSLRA."). Thus, "[i]n order to overcome a motion to dismiss, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Level 3 Commc'ns*, 667 F.3d at 1333.

> In deciding whether the factual allegations support a reasonable belief that fraud occurred, courts should evaluate the facts alleged as a whole, evaluating the level of detail, number, and coherence and plausibility of the allegations; whether the allegations are specific enough to be verified or refuted by a defendant without requiring the complaint to disclose how the plaintiff learned of such facts or experts to prove such facts at trial; whether the sources of the facts are disclosed and the reliability of those sources; and any other facts that might affect how strongly the facts alleged support a reasonable belief that the defendant's statements were false or misleading.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1102-03 (10th Cir. 2003).

### III.   ANALYSIS

Defendants, collectively, argue the Complaint insufficiently pleads at least three of the elements of a securities fraud claim: falsity, scienter, and loss causation.  The Court finds the

failure to plead falsity is dispositive and therefore need not address Defendants' arguments regarding the other elements.

### A. Sufficiency of Allegations Regarding Causation

To begin with, nearly all the alleged conduct in the Complaint related to the bid-rigging scheme precedes the class period, much of it by years. (*See* ECF No. 54 at 23-43, ¶¶ 70-116.) Although Lead Plaintiff argues that Defendants Penn's and Lovette's indictments and their "personal involvement in the bid-rigging scheme unequivocally establish that they had direct knowledge of the concealed facts that rendered Defendants' Class Period statements materially false and misleading" (ECF No. 67 at 33), Defendant Penn's latest alleged involvement in the scheme was in March 2015, and Defendant Lovette's was in May 2016. Moreover, the Complaint lacks particularized allegations connecting their specific conduct to any specific statements made during the class period.

Beyond the alleged involvement of these Defendants, the Complaint also alleges some involvement by Pilgrim's employees that occurred in 2017. (*See* ECF No. 54 at 42-45, ¶¶ 113-123.) However, the Complaint does not identify any contracts resulting from this conduct or otherwise explain how such conduct rendered any particular statements made during the class period false or misleading. And although Pilgrim's plea agreement states that its participation continued through 2017, the agreement identifies only one affected contract extending into 2017. (*See* ECF No. 54 at 81, ¶ 231.) Under these circumstances, the Court finds Lead Plaintiff has not met its high burden under the PSLRA to state *with particularity* a factual basis for its belief that the bid-rigging scheme significantly contributed to Pilgrim's success during the class period such that its statements attributing its success to other factors were materially false or misleading.

### B.  Sufficiency of Allegations Regarding Financial Impact

Lead Plaintiff's allegations are also insufficient because the Complaint does not contain particularized facts that establish a central premise of Lead Plaintiff's fraud claims—that Pilgrim's "success was driven by Defendants' illegal bid-rigging scheme." (ECF No. 67 at 15.) The Complaint provides ample factual assertions gleaned from Pilgrim's plea agreement and the indictments that support the existence of an antitrust conspiracy, but Lead Plaintiff has not shown that the bid-rigging scheme had such a significant impact on Pilgrim's bottom line that it could be credited with turning around the company following its filing for bankruptcy in 2008 or with driving its success during the class period. (*See id.* at 11.)  Indeed, Lead Plaintiff makes almost no attempt to quantify the financial impact of the scheme.  The allegation that Pilgrim's profits fell from almost $457 million in 2019 to about $95 million in 2020 (*see* ECF No. 54 at 47-48, ¶ 130) merely identifies a correlation.  But to establish causation, Lead Plaintiff needed to present particularized allegations connecting the bid-rigging scheme and Pilgrim's bottom line. It has failed to do so.

The insufficiency of the allegations in the Complaint is blatant given Defendants' assertion that between 2012 and 2017, its net sales totaled approximately $54.5 billion. (*See* ECF No. 63 at 5.)  Meanwhile, according to Pilgrim's plea agreement, the "volume of affected commerce" implicated by its anticompetitive conduct was $361,190,000. (ECF No. 63-12 at 9.)  Defendants correctly point out that the Complaint lacks "any particularized allegations as to how the anticompetitive conduct described in [Pilgrim's plea agreement and the indictments] actually impacted Pilgrim's business or financial results in a manner that would have rendered Pilgrim's statements relating thereto false." (ECF No. 63 at 13.)  In other words,

7

Lead Plaintiff's allegations are insufficient to establish that the bid-rigging scheme was a material source of Pilgrim's "success" during the class period or that it "artificially inflated" the price of Pilgrim's stock. (ECF No. 67 at 12, 15.) The absence of particularized allegations that Pilgrim's business results were attributable to the bid-rigging scheme, Lead Plaintiff faces another insurmountable hurdle to proving that the statements or omissions it relies upon were materially false or misleading. Thus, the lack of particularized allegations pertaining to the actual impact of the bid-rigging scheme provides another basis for dismissing the claims in this case.

### C.  Sufficiency of Allegations Regarding False or Misleading Statements

Defendants are also entitled to dismissal of the claims against them because Lead Plaintiff has not identified statements that are materially false or misleading.

"A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997). However, "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are too general to cause a reasonable investor to rely upon them." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014). "Statements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements[] or are generalized statements of optimism that are not capable of objective verification." *Grossman*, 120 F.3d at 1119. Such "[v]ague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." *Id.*; *see also id.* at 1119-20 (listing examples).

8

Here, Pilgrim's generally attributed its financial results during the class period to a variety of factors, including its leading market position in the chicken industry, broad product portfolio, and strong customer relationships. The Court finds that the bulk, if not all, of the statements relied upon in the Complaint are not actionable because they constitute vague statements of corporate optimism that are incapable of objective verification. (ECF No. 63 at 15.) Lead Plaintiff's reliance such statements is misplaced because they amount to little more than generalized statements about factors that, broadly speaking, contributed to Pilgrim's bottom line. *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1189 (10th Cir. 2003) (finding press release reporting "broad market acceptance" and sales "fueled by customer demand" too general to satisfy PSLRA pleading requirements).

First, such statements are not capable of objective verification. For instance, the fact that some of Pilgrim's employees participated in a bid-rigging scheme through 2017, and possibly longer, does not amount to a particularized showing that "disproves" statements by its senior officials throughout the class period that it had strong relationships with its customers or that its business approach promoted trust and long-term relationships. And the fact that Pilgrim's previously engaged in some anticompetitive conduct is not necessarily incompatible with the statements describing the chicken industry as competitive. Moreover, to the extent the examples cited in the Complaint are statements of opinion, Lead Plaintiff must plead facts showing that Defendants did not actually hold the stated opinions. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015) (noting that expressions of opinion explicitly affirm the fact that the speaker holds the stated belief). Accordingly, the Court

finds the Complaint lacks particularized allegations that show Defendants' subjective statements were demonstrably false or that their opinion statements were not actually held.

Second, reasonable investors simply do not rely on generic expressions of optimism associated with a corporation's "efficient operations," "strong relationships with its key customers," "results-oriented corporate culture," or collective "vision." "These are the kinds of rosy affirmations commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague [and] lacking in specificity that no reasonable investor could find them important." *Level 3 Commc'ns*, 667 F.3d at 1340 (quotation omitted). The Court finds the statements relied upon here are not materially distinguishable from phrases and statements courts have found to be non-actionable puffery. *See id.* (citing *Grossman*, 120 F.3d at 1118; *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 944 (6th Cir. 2009); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1110 (9th Cir. 2010)). Thus, the lack of actionable statements provides another basis for granting Defendants' Motions.

### D.      Sufficiency of Allegations Regarding Duty to Disclose

Finally, the Court rejects Lead Plaintiff's contention that Defendants had a duty to disclose its bid-rigging scheme "in order to prevent their statements to investors from being misleading." (ECF No. 67 at 12.)

Absent a duty to disclose, silence cannot serve as the basis for liability on a securities fraud claim. *See Grossman*, 120 F.3d at 1125. The Court finds persuasive Defendants' citation to *UBS*, 752 F.3d at 184, in the present context. There, citing other authority from the United States Court of Appeals for the Second Circuit, the court stated that "disclosure is not a rite of

confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *Id.* (quotations omitted). Imposing such a requirement would allow plaintiffs to bring securities fraud lawsuits merely by piggybacking on allegations raised in antitrust cases. *See Hogan*, 2018 WL 1316979, at *7 n.4 (disapproving of such a notion). The fact that Pilgrim's has pleaded guilty to allegations against it does not change the calculus in this case, because, as explained above, the conduct that forms the basis of Pilgrim's conviction is insufficiently tied to any statements or omissions made during the class period, and the statements relied on are too vague and indefinite to give rise to a duty to disclose.

    **D.**    **Sufficiency of Allegations Regarding Section 20(a) Claim**

Lead Plaintiff's failure to state a claim under § 10(b) precludes its ability to state a claim under § 20(a). *See Smallen v. The Western Union Co.*, 950 F.3d 1297, 1315 (10th Cir. 2020).

**IV.**    **CONCLUSION**

Therefore, Defendants' Motions to Dismiss (ECF Nos. 62, 63, 64) are GRANTED, and the Clerk is directed to CLOSE this case.

DATED this 8th day of March, 2022.

                                                                      BY THE COURT:

                                                                        RAYMOND P. MOORE
                                                                        United States District Judge