**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A,
THE TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND,
THE TRUSTEES OF RETIREMENT PLAN FOR OFFICERS,
BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A,
THE TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN,
THE TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC., and
THE TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN FOR ACME EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,

       Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION,
JAYSON J. PENN,
WILLIAM W. LOVETTE, and
FABIO SANDRI,

       Defendants.

---

## LEAD PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

---

4885-1430-6586.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................................1

II.    LEGAL STANDARDS ..........................................................................................................3

III.   ARGUMENT.........................................................................................................................4

      A.    The Newly Discovered Evidence Justifies Altering the Final Judgment ................4

           1.    Lead Plaintiff Diligently Obtained the New Evidence ................................4

           2.    The New Evidence Would Allow Lead Plaintiff to Overcome the Shortcomings of Its Complaint ....................................................................5

      B.    Leave to Amend Should Be Granted .......................................................................9

           1.    The Proposed Amendment Is Not Futile ...................................................10

           2.    There is No Undue Delay or Bad Faith ......................................................13

           3.    Defendants Will Not Be Unduly Prejudiced...............................................14

IV.   CONCLUSION...................................................................................................................15

4885-1430-6586.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ........................................................................................10

*Alpenglow Botanicals, Ltd. Liab. Co. v. United States*,
   894 F.3d 1187 (10th Cir. 2018),
   *cert. denied*, 139 S.Ct. 2745 (2019) .................................................................................3

*Azim v. Tortoise Cap. Advisors, LLC*,
   No. 13-2267-KHV, 2014 WL 707235
   (D. Kan. Feb. 24, 2014) ...................................................................................................10

*Bradley v. Val-Mejias*,
   379 F.3d 892 (10th Cir. 2004) ..........................................................................................10

*Choose Energy, Inc. v. Am. Petroleum Inst.*,
   No. 14-cv-04557-PSG, 2016 WL 1056140
   (N.D. Cal. Mar. 17, 2016).................................................................................................4

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018).............................................................................11

*Donnell v. Taylor*,
   No. 2:09cv00127 TS, 2010 WL 3200239
   (D. Utah Aug. 12, 2010) ..................................................................................................14

*Edizone, L.C. v. Cloud Nine*,
   No. 1:04-CV-117 TS, 2008 WL 1869316
   (D. Utah Apr. 24, 2008)...............................................................................................11, 14

*Eminence Cap., LLC v. Aspeon Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................3

*ERS Oil, LLC v. BP Am. Prod. Co.*,
   No. CIV-13-340-RAW, 2014 WL 465703
   (E.D. Okla. Feb. 5, 2014)...................................................................................................3

*F.D.I.C. v. Arciero*,
   741 F.3d 1111 (10th Cir. 2013) ..........................................................................................4

*Great Lakes Ins., S.E. v. Highland W. LLLP*,
   No. 19-cv-00508-LTB, 2019 WL 11641301
   (D. Colo. Aug. 2, 2019) ...................................................................................................13

- ii -

**Page**

*In re Allergan Generic Drug Pricing Sec. Litig.*,
   No. 16-9449 (KSH) (CLW), 2019 WL 3562134
   (D.N.J. Aug. 6, 2019)......................................................................................................9, 13

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
   No. 1:19-cv-00128-JNP-DBP, 2021 WL 1222290
   (D. Utah Mar. 31, 2021).................................................................................................9, 13

*Lane v. Page*,
   727 F. Supp. 2d 1214 (D.N.M. 2010) ...................................................................................13

*Lapin v. Goldman Sachs Grp., Inc.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006)......................................................................................8

*Littlewood v. Novartis Pharms. Corp.*,
   No. 21-cv-02559-CMA-SKC, 2022 WL 252319
   (D. Colo. Jan. 27, 2022)........................................................................................................14

*Mahurin Constr. Co. v. Granite Re, Inc.*,
   No. 04-2174-CM, 2006 WL 2577424
   (D. Kan. Jan. 18, 2006).........................................................................................................13

*Mellette v. Branch*,
   No. 07-cv-02065-WDM-KMT, 2008 WL 4001044
   (D. Colo. Aug. 6, 2008) ........................................................................................................14

*Minter v. Prime Equip. Co.*,
   451 F.3d 1196 (10th Cir. 2006) ...............................................................................................9

*Omnicare, Inc. v. Labs. Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)...............................................................................................................13

*Peace Officers' Annuity & Ben. Fund of Ga. v. DaVita Inc.*,
   372 F. Supp. 3d 1139 (D. Colo. 2019)......................................................................................8

*Rosi v. Aclaris Therapeutics, Inc.*,
   No. 19-cv-7118, 2021 WL 1177505
   (S.D.N.Y. Mar. 29, 2021) ......................................................................................................12

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
   No. 18-cv-02104-DME-NYW, 2020 WL 1627353
   (D. Colo. Mar. 16, 2020).........................................................................................................9

4885-1430-6586.v1

**Page**

*United States of America v. Jason McGuire et al.*,
No. 1:21-cr-00246-DDD (D. Colo. July 28, 2001)..................................................................2

*United States of America v. Jayson Penn*,
No. 20-cr-00152-PAB (D. Colo) ...........................................................................................2

*United States v. Gordon*,
710 F.3d 1124 (10th Cir. 2013) ...........................................................................................11

*Wilkerson v. Shinseki*,
606 F.3d 1256 (10th Cir. 2010) .............................................................................................3

*Wu v. Colo. Reg'l Ctr. Project Solaris LLP*,
No. 19-cv-02443-RM-STV, 2021 WL 3549427
(D. Colo. Aug. 11, 2021) .......................................................................................................3

*Youngers v. Mgmt. & Training Corp.*,
No. 20-cv-00465-WJ-JHR, 2021 WL 5881998
(D.N.M. Dec. 13, 2021) ........................................................................................................14

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77z-1 ...............................................................................................................1, 3, 15

Federal Rules of Civil Procedure
Rule 7.1(a).........................................................................................................................1
Rule10b-5.........................................................................................................................10
Rule 15 ..........................................................................................................................9, 14
Rule 15(a)........................................................................................................................1, 3
Rule15(a)(2) ........................................................................................................................3
Rule 59(e).....................................................................................................................1, 3, 4

17 C.F.R.
§240.10b-5 ........................................................................................................................10

4885-1430-6586.v1

Pursuant to Rules 15(a) and 59(e) of the Federal Rules of Civil Procedure, Lead Plaintiff New Mexico State Investment Council ("Lead Plaintiff") hereby moves this Court for an order altering or amending the Final Judgment entered on March 8, 2022 (ECF No. 76) ("Final Judgment") and allowing Lead Plaintiff leave to amend the Complaint, and respectfully submits this memorandum of law in support of its motion.[1]

## I.     INTRODUCTION

On March 8, 2022, this Court issued an Order granting Defendants' motions to dismiss the Complaint with prejudice (ECF No. 75) (the "MTD Order"), which was followed by the Final Judgment, thereby terminating the case.[2]  The sole basis for the Court's MTD Order was its finding that Lead Plaintiff had failed to adequately allege falsity under the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  MTD Order at 6.  This conclusion was based largely upon the Court's findings that much of the conduct related to the illegal bid-rigging scheme alleged in the Complaint (the "bid-rigging scheme") preceded the Class Period and that Lead Plaintiff had failed to show that the bid-rigging scheme had "a significant impact on

---

[1]     References to "Complaint" are to Lead Plaintiff's Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 54).  A copy of Lead Plaintiff's [Proposed] Consolidated Second Amended Complaint for Violations of the Federal Securities Laws (the "PSAC") is attached as Exhibit A to the Declaration of Nathan R. Lindell in Support of Lead Plaintiff's Motion to Alter or Amend Judgment (the "Lindell Decl."), filed concurrently herewith. Attached as Exhibit B to the Lindell Decl. is a redline showing the changes between the Complaint and the PSAC.

[2]     References to "Defendants" are to Pilgrim's Pride Corporation ("Pilgrim's" or the "Company"), William W. Lovette ("Lovette"), Jayson J. Penn ("Penn"), and Fabio Sandri ("Sandri").  Pursuant to District of Colorado Local Civil Rule 7.1(a), on March 31, 2022, counsel for Lead Plaintiff conferred with counsel for all Defendants regarding the present motion, but the parties were unable to reach agreement regarding the relief requested herein, which is opposed by all Defendants.

- 1 -

Pilgrim's bottom line" during the Class Period.  *See id.* at 6-8.[3]  In addition, the Court found that "the bulk, if not all, of the statements relied upon in the Complaint are not actionable because they constitute vague statements of corporate optimism that are incapable of objective verification."  *Id.* at 8-10.  Lastly, the Court found that Defendants did not have "a duty to disclose [their] bid-rigging scheme 'in order to prevent their statements to investors from being misleading.'"  *Id.* at 10-11.[4]

Lead Plaintiff, however, has recently discovered new evidence that allows it to cure the deficiencies identified by the Court's MTD Order.  Specifically, on October 25, 2021 and February 22, 2022, respectively, the United States Department of Justice ("DOJ") commenced two separate criminal trials (the "Criminal Trials") against multiple broiler industry executives, including defendants Penn and Lovette, regarding the same bid-rigging scheme alleged in the Complaint.  *See United States of America v. Jayson Penn*, No. 20-cr-00152-PAB (D. Colo).  Among other things, the testimony elicited in the Criminal Trials detailed: (1) multiple instances of bid-rigging conduct involving Pilgrim's executives during the Class Period; (2) multiple Class Period contracts with Pilgrim's largest customers that were affected by the bid-rigging scheme; (3) how the scheme impacted Pilgrim's financial performance during the Class Period; and (4) how the bid-rigging scheme significantly damaged Pilgrim's critical relationships with its key customers during the Class Period.[5]

---

[3]    The "Class Period," as defined in both the Complaint and the PSAC, is February 9, 2017 through June 2, 2020, inclusive.  Complaint, ¶1; PSAC, ¶1.

[4]    Unless otherwise noted, citations are omitted and emphasis is added throughout.

[5]    Lead Plaintiff's new allegations are also based in small part on an indictment against four additional Pilgrim's executives: Indictment, *United States of America v. Jason McGuire et al.*, No. 1:21-cr-00246-DDD (D. Colo. July 28, 2001) (ECF No. 1) (the "McGuire Indictment").

- 2 -

4885-1430-6586.v1

Based on this newly discovered evidence, Lead Plaintiff respectfully requests that the Court grant Lead Plaintiff's motion to alter or amend the Final Judgment and allow Lead Plaintiff leave to amend the Complaint to include the newly discovered evidence, as set forth in the PSAC.

## II.     LEGAL STANDARDS

"Rule 59(e) of the Federal Rules of Civil Procedure allows a district court to alter or amend a judgment." *Wu v. Colo. Reg'l Ctr. Project Solaris LLP*, No. 19-cv-02443-RM-STV, 2021 WL 3549427, at *2 (D. Colo. Aug. 11, 2021); *see also* Fed. R. Civ. P. 59(e). Appropriate grounds for altering or amending a judgment "'include: (1) an intervening change in the controlling law; (2) new evidence previously unavailable; and (3) the need to correct clear error or prevent manifest injustice.'" *See Alpenglow Botanicals, Ltd. Liab. Co. v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018), *cert. denied*, 139 S.Ct. 2745 (2019).

Rule 15(a) requires that "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[J]ustice generally requires the court to give the plaintiff leave to amend at least once." *ERS Oil, LLC v. BP Am. Prod. Co.*, No. CIV-13-340-RAW, 2014 WL 465703, at *2 (E.D. Okla. Feb. 5, 2014). Adherence to this liberal standard is "especially important in the context of the PSLRA," which imposes heightened standards for pleading securities fraud. *Eminence Cap., LLC v. Aspeon Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Id.* Therefore, a denial of leave to amend is justified "'only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010).

- 3 -

## III.    ARGUMENT

### A.    The Newly Discovered Evidence Justifies Altering the Final Judgment

New evidence justifies altering or amending a judgment under Rule 59(e) when: (1) the plaintiff was diligent in discovering the new evidence; and (2) the new evidence is "'of such a nature [that it] would probably produce a different result.'" *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1117 (10th Cir. 2013). Both requirements are met here. As detailed below, Lead Plaintiff was diligent in discovering the new evidence, which would probably produce a different result, because "[w]ith specific evidence now before the court, [Lead Plaintiff] can overcome the shortcomings of its operative complaint." *Choose Energy, Inc. v. Am. Petroleum Inst.*, No. 14-cv-04557-PSG, 2016 WL 1056140, at *2 (N.D. Cal. Mar. 17, 2016).

### 1.    Lead Plaintiff Diligently Obtained the New Evidence

As discussed above, the new evidence here consists primarily of testimony provided in the two Criminal Trials. The first criminal trial took place from October 25, 2021 to December 16, 2021 (the "First Criminal Trial"). The court in the First Criminal Trial declared a mistrial on December 16, 2021, after 29 trial days. Shortly thereafter, the DOJ expressed its intention to re-try all of the criminal defendants, including Penn and Lovette. The second trial began on February 22, 2022 and concluded on March 29, 2022, after 22 trial days (the "Second Criminal Trial"). On March 29, 2022, the court declared another mistrial.

Throughout the course of the First Criminal Trial, Lead Plaintiff requested and reviewed the transcripts for each new day of criminal testimony. When the First Criminal Trial ended in a mistrial, and the court reset the dates for the Second Criminal Trial, Lead Plaintiff routinely checked the criminal docket for updates before the Second Criminal Trial began. Once the Second Criminal

- 4 -

Trial began, Lead Plaintiff again requested the trial transcripts. In total, Lead Plaintiff diligently requested – and reviewed – trial testimony spanning a total of 51 days from the two Criminal Trials. The Second Criminal Trial concluded on March 29, 2022 – just seven days before the filing of this motion. Accordingly, Lead Plaintiff acted diligently by reviewing the transcripts from both Criminal Trials; identifying relevant evidence to cure the findings in the MTD Order; using that information to draft the PSAC; and filing this motion a mere seven days after the Second Criminal Trial concluded.

### 2.    The New Evidence Would Allow Lead Plaintiff to Overcome the Shortcomings of Its Complaint

Allowing Lead Plaintiff to amend the Complaint to include the newly discovered evidence would produce a different result because it would cure the deficiencies identified in the MTD Order.

*First*, the newly discovered evidence addresses the MTD Order's finding that much of the bid-rigging conduct alleged in the Complaint occurred prior the Class Period. MTD Order at 6. In the Complaint, the only bid-rigging conduct alleged to have taken place during the Class Period concerned Popeye's 2018-2019 8-piece COB (chicken-on-bone) supply. *See* Complaint, ¶¶117-123. The PSAC, however, alleges multiple instances of Class Period big-rigging activity. *See, e.g.*, PSAC, ¶¶136-153, 257. For example, based on evidence uncovered from the Criminal Trial transcripts, the PSAC alleges that Defendants' bid-rigging conduct in connection with Pilgrim's contract for KFC Corporation's ("KFC") 2018-2020 broiler supply continued into the Class Period. *Id.*, ¶¶143-144. Specifically, Pilgrim's submitted its initial bid in the first week of February 2017, and further negotiations ensued. *Id.*, ¶143. When KFC asked the co-conspirators for additional price concessions in mid-February 2017, one Pilgrim's employee – who at the time reported to Penn, who reported to Lovette – instructed fellow Pilgrim's employee Roger Austin to "tell the industry that we [are] going to hold," meaning Pilgrim's was "not going to concede on price, . . . [they] were

- 5 -

going to hold with [their] original bid submission." *Id*. The PSAC also alleges that Pilgrim's conspired with another competitor, Mar-Jac Poultry ("Mar-Jac"), to raise prices for US Foods' supply of boneless breast meat in April 2017, in addition to conspiring with competitors in August-September 2017 during negotiations for Popeye's 2018-2019 chicken supply. *Id*., ¶¶143-145.

*Second*, the new evidence addresses concerns expressed in the Court's MTD Order by confirming the involvement of defendants Penn and Lovette in Class Period bid-rigging activity. *See* MTD Order at 6. In particular, the PSAC cites testimony from a Pilgrim's executive that his boss expected him to obtain competitor pricing information before submitting Pilgrim's bids. PSAC, ¶265. At the time, this Pilgrim's executive's boss reported to defendant Penn, who reported to defendant Lovette. *Id.* Further, while the Complaint alleged that defendant Penn was involved in bid-rigging conduct that took place in 2014, it did not allege a direct connection between such conduct and Pilgrim's financial performance during the Class Period. *See* Complaint, ¶¶89-107. The Criminal Trial testimony confirmed, however, that this conduct was directly related to a contract for KFC's broiler supply *through 2017*. PSAC, ¶¶108-130. The Criminal Trial testimony also confirmed that Penn and Lovette were intimately involved in broiler sales strategy. As Bryant testified at the Second Criminal Trial, he met with Penn and Lovette "*monthly*" to "review[] our results and plans going forward." PSAC, ¶265, 268. Accordingly, the PSAC clarifies that Penn and Lovette were involved in and aware of bid-rigging conduct that directly impacted Pilgrim's financial performance during the Class Period.

*Third*, the new evidence addresses the MTD Order's finding that the Complaint failed to show that the bid-rigging scheme had "a significant impact on Pilgrim's bottom line" during the Class Period. MTD Order at 7-8. Based on the Criminal Trial testimony, the PSAC alleges that

- 6 -

4885-1430-6586.v1

Defendants' bid-rigging scheme affected multiple key customer contracts that directly impacted Pilgrim's financial performance during the Class Period. For example, as noted above, the PSAC clarifies that bid-rigging conduct alleged in the Complaint as pertaining to a contract for KFC's 2015 broiler products, in fact concerned a contract that covered KFC's broiler supply for 2015 through 2017. PSAC, ¶¶108-130. According to testimony from the Criminal Trials, Defendants' bid-rigging conduct increased the value of this specific contract by roughly $20 million per year, resulting in a ***$60 million increase for one contract***. *Id.*, ¶13. In addition, while the Complaint alleged that Pilgrim's rigged bids for KFC's 2018 broiler supply, the new evidence from the Criminal Trials makes clear that this contract was, in fact, for KFC's broiler supply from 2018 through 2020. *Id.*, ¶¶136-144. As such, the PSAC alleges that Defendants' bid-rigging scheme had a material impact on Pilgrim's contracts with KFC – Pilgrim's "largest customer, anchor customer" – from ***2014 through 2020***. *Id.*, ¶¶108-130, 136-144.

The newly discovered evidence also confirms that Pilgrim's plan was to extract similar price increases for ***all*** of the fast food retailers it supplied. *Id*., ¶¶5, 108, 129, 259. As alleged in the PSAC, a Pilgrim's executive who reported directly to Penn – who reported to Lovette – stated: "Got [KFC] and [another key customer]. Rest still to come. ***Everybody is getting that price increase***." *Id.*, ¶¶5, 129, 259. Consistent with this allegation, new evidence alleged in the PSAC also shows that Defendants engaged in bid-rigging activity in April 2017 that resulted in higher prices for boneless breast meat that it supplied to US Foods. *Id.*, ¶¶145-146. The above allegations clearly establish that the bid-rigging scheme had a material impact on Pilgrim's financial performance during the Class Period, rendering Defendants' statements attributing Pilgrim's success ***solely*** to legitimate practices materially false and misleading. *See, e.g.*, *id.*, ¶¶12-14, 175-176, 190-191, 203-

- 7 -

206, 211-216, 218-219, 223-224; *see also Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) ("'if [a defendant] puts the topic of the cause of its financial success at issue, then it is "obligated to disclose information concerning the source of its success, since reasonable investors would find that such information would significantly alter the mix of available information"'"); *Peace Officers' Annuity & Ben. Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1153 (D. Colo. 2019) ("Plaintiffs have adequately pled that Defendants made false or misleading statements regarding [an illegal practice] and attributing [defendant's] success to other factors.").

***Finally***, the new evidence alleged in the PSAC confirms that Defendants' alleged misrepresentations were not mere puffery or inactionable opinion statements, and that Defendants were required to disclose the bid-rigging scheme "'in order to prevent their statements to investors from being misleading.'" *See* MTD Order at 8-11. Specifically, the Court's MTD Order found that Lead Plaintiff's allegations concerning Pilgrim's bid-rigging scheme did not "'disprove[]' statements by its senior officials throughout the [C]lass [P]eriod that it had strong relationships with its customers or that its business approach promoted trust and long-term relationships." *Id.* at 9. Such statements are clearly disproved, however, by the PSAC's allegations based on the newly discovered evidence. In particular, the PSAC cites testimony that, in 2017, "***the relationship with KFC was damaged***" as a direct result of Defendants' bid-rigging scheme. PSAC, ¶¶11, 136. Indeed, KFC's lead negotiator told Pilgrim's during negotiations for KFC's 2018-2020 contract that "he was going to ***beat [them] down with a hammer or a baseball bat*** . . . in price and take loads [of business] from [them]." *Id.*, ¶¶11, 142, 183, 187. As such, the PSAC clearly alleges that Defendants' statements regarding their "key customer approach" – which purportedly "promote[d] trust [and] enhance[d]

- 8 -

long-term relationships" (*id.*, ¶¶227-228, 233-234, 240-241, 246-247) – were "demonstrably false [and] that their opinion statements were not actually held."  MTD Order at 10.[6]

### B.    Leave to Amend Should Be Granted

"The purpose of [Rule 15] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  Accordingly, leave to amend should be "freely" granted unless defendants can show "that [p]laintiffs' proposed amendment is sought in bad faith, that it is futile, or that it would cause substantial prejudice, undue delay, or injustice."  *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2020 WL 1627353, at \*4 (D. Colo. Mar. 16, 2020).  Here, Lead Plaintiff's proposed amendment would not be futile, and there is no basis for a finding of bad faith, undue delay, or substantial prejudice.  Thus, Lead Plaintiff should be granted to leave to amend.

---

[6]    The PSAC's allegations also confirm that these statements were ***not*** "generic expressions of optimism" or "non-actionable puffery."  *See* MTD Order at 10.  As further detailed below, Defendants repeatedly emphasized to investors the critical importance of their key customer relationships, specifically describing their "key customer approach" as a "***clear, long-term, sustainable competitive advantage***" and "***the basis for our strong growth***."  PSAC, ¶¶10, 227, 233, 238, 246.  Given Defendants' explicit emphasis on the importance of their key customer relationships ***when discussing their results with investors***, Defendants' alleged misstatements regarding those relationships cannot be treated as non-actionable puffery.  *See In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-9449 (KSH) (CLW), 2019 WL 3562134, at \*10 (D.N.J. Aug. 6, 2019) (holding that "statements attributing [a] business's revenue, growth, and pricing strategy to legitimate business factors and conditions" when they were in fact due to an illicit price-fixing conspiracy, "fall outside the bounds of mere puffery and are actionable"); *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128-JNP-DBP, 2021 WL 1222290, at \*8 (D. Utah Mar. 31, 2021) ("'statements are not puffery where they are "misrepresentations of existing facts" made even though the speaker "knew that the contrary was true"'").

- 9 -

### 1.     The Proposed Amendment Is Not Futile

"'A proposed amendment is futile if the complaint, as amended, would be subject to

dismissal.'"  *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

> The court will only deny an amendment on the basis of futility when, accepting the
> well-pleaded allegations of the proposed amended complaint as true and construing
> them in the light most favorable to the plaintiff, the court determines that plaintiff has
> not presented "enough facts to state a claim to relief that is plausible on its face."

*Azim v. Tortoise Cap. Advisors, LLC*, No. 13-2267-KHV, 2014 WL 707235, at \*2 (D. Kan. Feb. 24,

2014).

The PSAC is not futile because, as discussed above, the new evidence from the criminal trial

will allow Lead Plaintiff to adequately allege falsity.  "Rule 10b-5 makes it unlawful '[t]o make any

untrue statement of a material fact or to omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not

misleading. . . .'"  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003) (quoting 17

C.F.R. §240.10b-5) (alterations in original).  As the PSAC alleges, Defendants made materially false

and misleading statements during the Class Period about the reasons for Pilgrim's success and the

nature of Pilgrim's relationships with its key customers.

As stated above and in the PSAC, Defendants claimed that their Class Period success was

attributable solely to legitimate, sustainable business factors, while concealing the fact that their

illegal bid-rigging scheme had a material impact on Pilgrim's financial success.  *See, e.g.*, PSAC,

¶¶12-14, 175-176, 190-191, 203-206, 211-216, 218-219, 223-224.  Specifically, the PSAC alleges

that Defendants' undisclosed bid-rigging resulted in "historical" and "disturbing" price increases that

increased Pilgrim's sales to KFC – its largest customer – by at least \$20 million in 2017. *Id.*, ¶¶5-6,

87, 129, 258.  The PSAC also alleges that, in early-2017, Pilgrim's again conspired to rig bids when

- 10 -

negotiating a contract for KFC's 2018-2020 broiler supply. *Id.*, ¶¶136-144, 258. Also during the Class Period, Pilgrim's conspired with a competitor to increase prices on boneless breast meat, which resulted in US Foods – another major customer – paying higher prices for its supply of boneless breast meat beginning in 2017. *Id.*, ¶¶145-146, 258.

In addition, the PSAC pleads facts demonstrating that the *specific examples* of bid-rigging and affected contracts identified in the PSAC were *not* the only instances of bid-rigging and affected contracts throughout the Class Period. *Id.*, ¶¶5, 108, 129, 259. Indeed, the PSAC alleges that the 2015-2017 KFC contract was only one of many contracts implicated by Pilgrim's bid-rigging scheme, which sought to raise broiler prices for *all* of its fast food customers. *Id*. As alleged in the PSAC, after Pilgrim's secured the "historical" KFC price increase, one Pilgrim's employee stated: "*everybody is getting that price increase*." *Id.*, ¶¶129, 259. Further, while Pilgrim's guilty plea mentions at least $361 million in affected sales, it is clear from the PSAC's allegations that those affected sales were for *only one customer*, without regard to the numerous other key customers (*nine* of which are specifically identified in the PSAC) that were affected by the bid-rigging scheme. *See id.*, ¶¶4, 13, 85, 164, 270.

Accordingly, the PSAC's allegations are sufficient, at the pleading stage, to establish that the bid-rigging scheme had a material impact on Pilgrim's financial performance during the Class Period, rendering Defendants' statements attributing Pilgrim's success *solely* to legitimate practices materially false and misleading. *See United States v. Gordon*, 710 F.3d 1124, 1142 (10th Cir. 2013) ("'where a party without a duty *elects* to disclose material facts, he must speak fully and truthfully, and provide complete and non-misleading information'") (emphasis in original); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 808 (S.D.N.Y. 2018) ("a company's statements become actionable if the

- 11 -

4885-1430-6586.v1

company attributes its success to a particular cause without also disclosing the unlawful activity that contributed to that success"); *Rosi v. Aclaris Therapeutics, Inc.*, No. 19-cv-7118, 2021 WL 1177505, at \*16 (S.D.N.Y. Mar. 29, 2021) ("courts have sustained [allegations] where a company reports positive sales results without disclosing that those results were due, ***even if in part***, to bribery, antitrust violations, or some other illegal conduct").

The PSAC's allegations are also sufficient to establish that Defendants' statements about their key customer relationships were materially false and misleading. As alleged in the PSAC, Defendants emphasized the critical importance of their key customer relationships to investors throughout the Class Period, specifically describing their "key customer approach" as a "***clear, long-term, sustainable competitive advantage***" and "***the basis for our strong growth***." PSAC, ¶¶10, 227, 233, 238, 246. In so doing, Defendants repeatedly assured investors that their relationships with their key customers – were "strong," and that Defendants' approach to these relationship "promote[d] trust [and] enhance[d] long-term relationships." *Id.*, ¶¶10, 227, 233, 240, 246. But the PSAC alleges that, unbeknownst to investors, Pilgrim's relationship with KFC – its largest and most important customer – had been so damaged by the bid-rigging scheme that, in 2017, KFC's lead price negotiator threatened to "beat [the Company] down with a hammer or a baseball bat" and take "loads" of business from them. *Id.*, ¶¶11, 142. As such, the PSAC's allegations clearly "'disprove[]' statements by [Pilgrim's] senior officials throughout the [C]lass [P]eriod that it had strong relationships with its customers [and] that its business approach promoted trust and long-term relationships." MTD Order at 9.

These same allegations also show that, to the extent Defendants' alleged misstatements about their key customer relationships and "key customer approach" can be viewed as "statements of

- 12 -

opinion," those purported opinions could not possibly have been "actually held" by Defendants. *See Omnicare, Inc. v. Labs. Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); MTD Order at 9. Moreover, given Defendants' explicit emphasis on the importance of their key customer relationships *when discussing their results with investors*, Defendants' alleged misstatements regarding those relationships cannot be treated as non-actionable puffery. *See Allergan*, 2019 WL 3562134, at *10; *Pluralsight*, 2021 WL 1222290, at *8.

### 2.    There is No Undue Delay or Bad Faith

Undue delay occurs when "a plaintiff was aware of all the information on which the proposed amendment is based before the filing of an earlier complaint." *Lane v. Page*, 727 F. Supp. 2d 1214, 1225-26 (D.N.M. 2010). Courts often hesitate to find bad faith in the absence of undue delay. *See Great Lakes Ins., S.E. v. Highland W. LLLP*, No. 19-cv-00508-LTB, 2019 WL 11641301, at *4 (D. Colo. Aug. 2, 2019) (rejecting defendant's argument that plaintiff sought leave to amend in bad faith because "any delay is not 'undue'"); *see also Mahurin Constr. Co. v. Granite Re, Inc.*, No. 04-2174-CM, 2006 WL 2577424, at *2 (D. Kan. Jan. 18, 2006) (finding no bad faith where plaintiff sought leave to amend soon after learning of new facts, and there was "no indication" the plaintiff was aware of the facts earlier).

Here, Lead Plaintiff has not unduly delayed its request for leave to amend the Complaint. This motion is being filed a mere 28 days after the Complaint was dismissed – and a mere *seven days* after the conclusion of the Second Criminal Trial. Moreover, *none* of the facts Lead Plaintiff seeks to use to amend the Complaint were available when Lead Plaintiff filed the Complaint on May 26, 2021. *See generally*, Complaint. Accordingly, there is no bad faith or undue delay here.

- 13 -

### 3.   Defendants Will Not Be Unduly Prejudiced

An amendment is "typically deemed prejudicial 'only when [it] unfairly affects the defendants "in terms of preparing their defense to the amendment.'''" *Donnell v. Taylor*, No. 2:09cv00127 TS, 2010 WL 3200239, at *3 (D. Utah Aug. 12, 2010). While "[t]here is some marginal prejudice to the opposing parties by allowance of the amendment that is common to defendants in every case . . . . This level of inconvenience to defendants does not restrict the policy behind liberal allowance of timely amendments pursuant to Rule 15." *Mellette v. Branch*, No. 07-cv-02065-WDM-KMT, 2008 WL 4001044, at *9 (D. Colo. Aug. 6, 2008).

Courts in this Circuit have found undue prejudice where "an amendment adds an 'entirely new and different claim arising' out of separate facts," *Youngers v. Mgmt. & Training Corp.*, No. 20-cv-00465-WJ-JHR, 2021 WL 5881998, at *6 (D.N.M. Dec. 13, 2021), and where amendment would cause "additional discovery [or] motion practice." *Edizone, L.C. v. Cloud Nine*, No. 1:04-CV-117 TS, 2008 WL 1869316, at *2 (D. Utah Apr. 24, 2008). Conversely, courts in this district have refused to deny leave to amend based on undue prejudice where a plaintiff seeks an amendment to cure deficiencies identified in a motion to dismiss order and does not seek to change the theory or subject matter of the case. *See Littlewood v. Novartis Pharms. Corp.*, No. 21-cv-02559-CMA-SKC, 2022 WL 252319, at *2 (D. Colo. Jan. 27, 2022) (granting leave to amend because the plaintiff sought to cure deficiencies in her original complaint and did not seek to change the subject matter of her case).

Here, Lead Plaintiff's proposed amendment poses no threat of unduly prejudicing Defendants, as Plaintiff is not seeking to add any new claims or change the theory or subject matter of its case. To the contrary, as detailed above, Lead Plaintiff is seeking to cure the deficiencies

- 14 -

identified in the MTD Order by adding additional facts to support Plaintiff's current theory and claims already presented in the Complaint. Further, as discovery has not yet begun, and discovery is stayed in this case under the PSLRA, allowing an amendment in this case would not subject Defendants to additional or duplicative discovery. Accordingly, Defendants will not be unduly prejudiced if leave to amend is granted.

## IV.    CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully requests the Court grant its motion to alter or amend the Final Judgment and allow Lead Plaintiff leave to amend the Complaint.

DATED: April 5, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
NATHAN R. LINDELL
NICOLE Q. GILLILAND


                s/ NATHAN R. LINDELL
                NATHAN R. LINDELL

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
nlindell@rgrdlaw.com
ngilliland@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

SHUMAN, GLENN & STECKER
RUSTY E. GLENN
600 17th Street, Suite 2800 South
Denver, CO  80202
Telephone:  303/861-3003
303/536-7849 (fax)
rusty@shumanlawfirm.com

*Liaison Counsel for Lead Plaintiff*

- 15 -

4885-1430-6586.v1

OFFICE OF THE NEW MEXICO
   ATTORNEY GENERAL
HECTOR BALDERAS, Attorney General
P. CHOLLA KHOURY, Assistant Attorney General
Director, Consumer and Environmental Protection
Post Office Drawer 1508
Santa Fe, NM  87504-1508
Telephone: 505/490-4052
ckhoury@nmag.gov

*Additional Counsel for Lead Plaintiff*

- 16 -

4885-1430-6586.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 5, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left: 50%;">

s/ NATHAN R. LINDELL
NATHAN R. LINDELL

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  nlindell@rgrdlaw.com

</div>

4885-1430-6586.v1

# Mailing Information for a Case 1:20-cv-01966-RM-MEH United Food and Commercial Workers International Union Local 464A et al v. Pilgrim's Pride Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Naumon Amjed**
  namjed@ktmc.com,rdegnan@ktmc.com,ksauder@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com

- **Seth Alben Aronson**
  saronson@omm.com,mlippincott@omm.com,apletcher@omm.com,seth-aronson-9209@ecf.pacerpro.com,mtubach@omm.com

- **Christopher Patrick Burke**
  cburke@omm.com,christopher-burke-5473@ecf.pacerpro.com

- **Andrew Joseph Cauchi**
  Andrew.Cauchi@weil.com

- **John Anderson Fagg , Jr**
  johnfagg@mvalaw.com,aishaahreed@mvalaw.com,lindamelin@mvalaw.com

- **Nicole Gilliland**
  ngilliland@rgrdlaw.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,nate.lindell@gmail.com,E_File_SD@rgrdlaw.com,AGonzales@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com

- **Tania Christina Matsuoka**
  tania.matsuoka@weil.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Mark A. Nebrig**
  marknebrig@mvalaw.com,kellybowling@mvalaw.com

- **Joel S. Neckers**
  neckers@wtotrial.com,allen@wtotrial.com,mchenry@wtotrial.com

- **Amy S. Park**
  apark@omm.com

- **Nicole E. Schiavo**
  nicoleschiavo@mvalaw.com,janetkoronkiewicz@mvalaw.com

- **Michael Frederick Tubach**
  mtubach@omm.com,michael-tubach-9759@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)