**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-CV-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL
464A, THE TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A –
PENSION FUND, THE TRUSTEES OF RETIREMENT PLAN FOR OFFICERS,
BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A,
THE TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN,
THE TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC., and
THE TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN
FOR ACME EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION, JAYSON J. PENN,
WILLIAM W. LOVETTE, and FABIO SANDRI,

        Defendants.

---

**Defendants' Joint Opposition to Plaintiff's Motion to
Alter or Amend Judgment Under Rule 59(e)**

---

**INTRODUCTION**

In its motion, Plaintiff asks this Court to alter its final judgment to allow Plaintiff another

chance to state a securities fraud claim. Plaintiff seeks this "extraordinary" remedy on the basis of

purportedly "new" evidence that two juries already deemed insufficient to establish an antitrust

conspiracy in two separate mistrials. The fundamental problem with Plaintiff's approach—*i.e.*,

using insufficient evidence of an antitrust conspiracy to shore up deficient allegations of the same

antitrust conspiracy in a securities fraud complaint—is self-evident. But even setting that infirmity

aside, Plaintiff's insurmountable obstacle remains Rule 59(e) itself, a remedy reserved for

exceptional circumstances that are not remotely present here.

1

As set forth below, Plaintiff cannot meet the stringent standards in this Circuit for relief from a judgment on the basis of "new evidence" because Plaintiff cannot show that (a) the evidence was unavailable before the Court entered judgment or (b) the evidence would probably produce a different result. Almost all of the supposedly "new" evidence that Plaintiff offers was, in fact, available months before the Court entered final judgment on March 8, 2022. And even if this Court were to consider Plaintiff's new allegations, they are insufficient to cure any (much less all) of the numerous independent deficiencies the Court identified in Plaintiff's prior complaint. Plaintiff's motion thus fails to satisfy the exacting requirements of Rule 59(e), and this Court should reject Plaintiff's last-ditch effort to revive its meritless claims.

## LEGAL STANDARD

Plaintiff attempts to blur the line between a Rule 59(e) motion to alter or amend the judgment and a Rule 15(a) motion to amend the complaint. The record, however, is crystal clear. This Court already entered final judgment, dismissing Plaintiff's case in its entirety with prejudice, ECF No. 75 at 1, and "[d]ismissal with prejudice . . . effectively den[ies]" a plaintiff "any further opportunity to amend," *Wu v. Colo. Reg'l Ctr. Project Solaris LLLP*, 2021 WL 2417143, at *2 (D. Colo. June 14, 2021) (Moore, J.).

When, as here, final judgment has been entered, Rule 15(a)'s liberal standard does not apply, and a plaintiff cannot amend the complaint unless and "until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (citation omitted). Accordingly, Rule 59(e), not Rule 15(a), governs Plaintiff's motion. *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004). "To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be

2

employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." *Tool Box*, 419 F.3d at 1087 (citation omitted). "[E]ven though Rule 15(a) states that leave to amend shall be freely given when justice so requires, this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed." *Id.* (citations omitted). As Plaintiff must meet the stringent requirements of Rule 59(e) before the Court can even consider whether an amendment is proper, "relief will not be available in many instances in which leave to amend would be granted in the prejudgment situation." *Id.* (citation omitted).[1] Plaintiff effectively concedes this point by applying the Rule 59(e) standard in its motion. *See* Mot. 4-9.

Rule 59(e) "is an extraordinary remedy which is used sparingly in order to further the strong public policy interest in finalizing litigation and conserving judicial resources." *Sala v. United States*, 251 F.R.D. 614, 619 (D. Colo. 2008). Courts regard such motions "with disfavor." *Kerber v. Qwest Grp. Life Ins. Plan*, 727 F. Supp. 2d 1076, 1077 (D. Colo. 2010). Thus, a judgment will be set aside only when a party can show: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Moreover, the Tenth Circuit has made clear that Rule 59(e) is not an appropriate vehicle "to revisit issues already

---

[1] Multiple courts within the Tenth Circuit have recognized that, after judgment is entered, a plaintiff must meet the requirements of Rule 59 or 60 before the court can consider granting leave to amend under Rule 15(a). *See, e.g.*, *Nero v. Am. Fam. Mut. Ins. Co.*, 2013 WL 5323147, at *9 (D. Colo. Sept. 23, 2013) ("Given that plaintiff is not entitled to relief from judgment pursuant to Rule 60(b) or Rule 59(e), the Court will not opine on the sufficiency of plaintiff's proposed third amended complaint."); *Webb v. Okla. Dep't of Human Servs.*, 2012 WL 12888556, at *2 (E.D. Okla. May 16, 2012) (similar), *remanded on other grounds with instructions to dismiss without prejudice*, 516 F. App'x 727 (10th Cir. 2013); *Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 2012 WL 1132527, at *23-24 (D.N.M. Mar. 22, 2012) (similar); *In re Sun Healthcare Grp., Inc. Sec. Litig.*, 214 F.R.D. 671, 674-75 (D.N.M. 2003) (similar).

addressed or advance arguments that could have been raised in prior briefing." *Id.* "The court should not grant a Rule 59(e) [motion] if the movant only wants to present new arguments or supporting facts that could have been offered initially." *Sun Healthcare*, 214 F.R.D. at 674.

### ARGUMENT

Plaintiff moves to alter the judgment exclusively on the ground that Plaintiff has discovered what it incorrectly labels "new evidence," which purportedly supports the allegations in its Proposed Second Amended Complaint ("PSAC"). Mot. 2.[2] To show that this information warrants reconsideration under Rule 59(e), Plaintiff must establish that (1) the evidence was unavailable before this Court entered judgment, ***and*** (2) the additional allegations based on this evidence would "probably produce a different result" (*i.e.*, the Court would have denied Defendants' motions to dismiss because of the additional allegations). *See Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012) ("[W]e have required the aggrieved party to demonstrate how newly discovered evidence warranted relief from dismissal." (citation omitted)). Plaintiff's motion fails on both counts. The purportedly "new" evidence in the PSAC was available to Plaintiff and reviewed by Plaintiff's counsel before the Court entered final judgment, and, even if considered, this evidence fails to cure the myriad deficiencies the Court identified in the First Amended Complaint ("FAC").

### I.    Plaintiff's Purportedly "New" Evidence Was Available Before Entry of Judgment

Plaintiff fails to establish that it has discovered new evidence previously unavailable when the Court entered judgment. "New evidence previously unavailable" is: "(1) evidence arising after

---

[2] Plaintiff does not argue that there was any intervening change in controlling law or that amendment is necessary to correct "clear error" or prevent "manifest injustice." *See* Mot. 4.

the initial ruling (in which event the party's diligence in seeking the evidence is obviously not a consideration) or (2) evidence available but not discovered at the time of the initial ruling (in which event the moving party must show it diligently sought the evidence earlier)." *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1102 (10th Cir. 2006); *see also Petrie v. GoSmith, Inc.*, 2020 WL 376502, at *3 (D. Colo. Jan. 23, 2020) ("When reviewing motions for reconsideration based on new evidence, courts in the Tenth Circuit focus on whether the 'new evidence' was previously accessible, disclosable, or available.").

The "date of the [court's order] is the date that is critical to the new evidence analysis." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 101 (10th Cir. 2012). Thus, Plaintiff must show that either (i) the information became available after the Court's March 8, 2022 Order and Final Judgment dismissing the case, ECF Nos. 75, 76, or (ii) the information was available but not discovered earlier, and Plaintiff diligently sought it to no avail. Plaintiff establishes neither. Indeed, Plaintiff's motion demonstrates that the evidence was not only available to Plaintiff before entry of judgment, but Plaintiff had, in fact, affirmatively reviewed the evidence months before the Court's ruling but elected not to raise it with the Court at that juncture. Mot. 4-5.

### A. Substantially All of the "New" Evidence Is from Documents or Testimony Available Months Before the Judgment

Plaintiff identifies four categories of supposedly "new" evidence that it claims "would produce a different result." Mot. 5. Specifically, Plaintiff claims it has added factual allegations showing that: (1) additional bid-rigging occurred during the class period; (2) Messrs. Penn and Lovette were involved in bid-rigging at that time; (3) the bid-rigging impacted Pilgrim's financial performance; and (4) Pilgrim's relationship with KFC was "damaged." *Id*. at 5-9. But the factual allegations pertaining to these four categories were all available *months* before the Court entered

judgment. Plaintiff borrows the allegations from: (1) the February 23, 2021 Plea Agreement (available over a year before the Court's judgment and over three months before Plaintiff filed the FAC);[3] (2) the July 28, 2021 *McGuire* Indictment (available over seven months before judgment);[4] and (3) the First Trial, which concluded on December 16, 2021 (available nearly three months before judgment).[5] In fact, the PSAC itself clearly states that "testimony in the *First Criminal Trial* confirmed and shed more light on Defendants' illegal bid-rigging scheme by revealing additional details regarding" the key categories of new allegations. PSAC ¶ 166 (emphasis added).

*Class Period Bid-Rigging*. Plaintiff attempts to establish that bid-rigging took place during the class period based on testimony regarding negotiations of a 2018-2020 KFC contract and efforts to raise prices for US Foods. Mot. 5-6. But the PSAC begins its discussion of these negotiations by emphasizing that Robert Bryant, a low-level Pilgrim's employee, "testified" about the KFC negotiations "*in the First Criminal Trial*." PSAC ¶ 136 (emphasis added). And almost all of the testimony about KFC and US Foods that follows in the PSAC is quoted directly from the First Trial. *Compare id.* ¶¶ 136-44 (discussing February 2017 KFC bid), *with* Ex. 2, Nov. 1, 2021 Tr. 80:8-101:23, 119:10-121:11, 142:6-143:1 (testimony about February 2017 KFC bid); *compare* PSAC ¶¶ 145-46 (discussing US Foods negotiations), *with* Ex. 2, Nov. 1, 2021 Tr. 140:10-147:4, 150:16-151:24, 152:25-153:11 (testimony about US Foods negotiations).

---

[3] ECF No. 63-12 (Plea Agreement, *United States v. Pilgrim's Pride Corp.*, 20-CR-00330-RM (D. Colo. Feb. 23, 2021) ("Plea Agreement")). The Plea Agreement was made public on February 23, 2021.

[4] Ex. 1 (Indictment, *United States v. McGuire*, No. 1:21-CR-00246-DDD (D. Colo. July 28, 2021) ("*McGuire* Indictment")). The *McGuire* Indictment was made public on July 28, 2021. All references to "Ex." refer to Exhibits to the accompanying Declaration of Caroline H. Zalka.

[5] *United States v. Penn*, No. 1:20-CR-00152-PAB (D. Colo.).

*Class Period Involvement of Pilgrim's Executives.* Plaintiff's efforts to establish that Messrs. Penn and Lovette were involved in bid-rigging during the class period are likewise based on testimony elicited almost entirely during the First Trial. *See* Mot. 6. According to the PSAC, "the *First Criminal Trial testimony makes clear* that, even when Lovette was not directly involved in the communications with competitors, he was aware that Pilgrim's was illegally rigging bids." PSAC ¶ 268 (emphasis added). The PSAC also discusses testimony about Messrs. Penn and Lovette that is drawn directly from the First Trial. *Compare id.* ¶¶ 265, 268 (discussing Bryant's testimony about retrieving competitor pricing and the chain of authority), *with* Ex. 2, Nov. 1, 2021 Tr. 120:12-13 (Bryant testimony that supervisor "expected me to have" "competitor pricing information"), *and id.* at 9:14-10:9 (Bryant testimony regarding the chain of authority).

*Financial Impact*. Plaintiff further contends that the PSAC contains "new" evidence about Pilgrim's negotiations with KFC purportedly establishing that "the bid-rigging scheme had a significant impact on Pilgrim's bottom line during the Class Period." Mot. 6 (citation omitted). Yet, as the PSAC repeatedly acknowledges, the testimony Plaintiff relies upon was almost exclusively from "the *First Criminal Trial*." PSAC ¶¶ 108, 115, 129, 136, 144 (emphasis added); *compare id.* ¶¶ 13, 108-30, 136-44 (discussing negotiations with KFC for the 2015-2017 and 2018-2020 contracts), *with* Ex. 2, Nov. 1, 2021 Tr. 19:18-20:17, 34:16-36:19, 44:11-47:8, 80:8-101:23, 119:10-121:11, 142:6-143:15, 157:15-159:19, 161:12-163:12, 177:1-178:8 (testimony regarding KFC negotiations and pricing strategy), *and* Ex. 3, Nov. 3, 2021 Tr. 67:5-68:7, 72:10-73:17 (similar), *and* Ex. 4, Nov. 2, 2021 Tr. 205:15-208:11 (testimony estimating a $60 million increase in price for the 2015-2017 KFC contract). Plaintiff also borrows allegations from the *McGuire* Indictment—which was available in July 2021 before Plaintiff even filed its opposition to

7

Defendants' motions to dismiss on September 1, 2021—to assert that other customers received a similar price increase. *Compare* PSAC ¶¶ 5, 129, 259 ("Everybody is getting that price increase."), *with* Ex. 1 ¶ 107 (same). That evidence was plainly available before judgment.

*Key Customer Relationships*. Plaintiff also seeks to establish that the bid-rigging "damaged" Defendants' relationship with KFC by citing Mr. Bryant's testimony that one of KFC's negotiators threatened to "beat [Pilgrim's negotiators] down with a hammer or a baseball bat." Mot. 8, 12; PSAC ¶¶ 11, 142, 178, 183, 187. But again, the PSAC acknowledges that this testimony was offered "*during both* Criminal Trials," including the first one that concluded in December 2021. PSAC ¶ 11 (emphasis added); *see* Ex. 2, Nov. 1, 2021 Tr. 119:5-8 ("[KFC's negotiator] said that he was going to beat us down with a hammer or a baseball bat . . . .").

In short, by Plaintiff's own account, the factual bases offered to cure the FAC's pleading deficiencies were available long before the Court entered judgment, and thus fail to satisfy Rule 59(e) under controlling Tenth Circuit law.

### B. The Testimony at the Second Trial Was Merely Cumulative

Plaintiff attempts to sidestep this incurable problem by asserting that the Second Trial somehow "shed additional light on" and "revealed additional details" about the conspiracy, PSAC ¶ 167, but the reality is that the Second Trial was effectively a rinse-and-repeat of the First Trial. It did not add any real substance beyond what was already available to Plaintiff. The PSAC identifies a few pieces of testimony from the Second Trial—all from Mr. Bryant—but most, if not all, of the testimony is duplicative of testimony from the First Trial. Indeed, during the Second Trial, Mr. Bryant testified that: (a) Pilgrim's sales strategy in 2014 (years before the class period) was to negotiate the KFC contract first, *id.* ¶ 7; (b) other fast-food retailers agreed to "similar"

prices in 2014 (again, years before the class period), *id.*; (c) Messrs. Bryant, Penn, and Lovette had "monthly sales meetings," *id.*; (d) Pilgrim's signed a 2018-2020 contract with KFC, *id.* ¶ 144; and (e) Mr. Bryant was "uncomfortable" asking other employees to retrieve competitors' pricing information, *id.* ¶ 265. Nearly all of this testimony was elicited during the First Trial as well. *See* Ex. 4, Nov. 2, 2021 Tr. 192:8-194:8 ("We wanted to get KFC done first" in 2014); *id.* at 205:12-208:21 (discussing "similar" prices for other fast-food retailers in 2014); Ex. 5, Nov. 4, 2021 Tr. 1566:22-1567:11, 1568:24-1569:2 (Pilgrim's signed the 2018-2020 contract with KFC); Ex. 2, Nov. 1, 2021 Tr. 115:21-116:15 (Bryant "regretted sending [an] e-mail" asking others to retrieve competitor pricing). And as discussed below, the conclusions Plaintiff draws from Mr. Bryant's monthly meetings with management are contradicted by his own testimony. *See infra* Section II.C. At most, the testimony is "merely cumulative" of other testimony that was already available, and is not enough to move the needle on a Rule 59(e) motion. *See Cheavens v. Pub. Serv. Corp. of Colo.*, 2016 WL 8469747, at *3 (D. Colo. Oct. 4, 2016).

### C.  *Plaintiff Reviewed the "New" Evidence Months Before the Judgment*

Plaintiff concedes the key element of its Rule 59(e) motion by admitting that the purportedly "new" evidence was available long before the Court's judgment *and* that Plaintiff's counsel reviewed the testimony in real time while Defendants' motions to dismiss were pending. Indeed, Plaintiff's counsel "requested and reviewed" the trial transcripts each day "[t]hroughout the course of the First Criminal Trial," which "took place from October 25, 2021 to December 16, 2021," and it "again requested the trial transcripts" once the Second Trial began on February 22, 2022. Mot. 4-5. Moreover, both the Plea Agreement and the *McGuire* Indictment, which the PSAC identifies as sources for its "new" allegations, PSAC ¶ 82 n.3, were available to Plaintiff *before it*

9

*filed its opposition* to Defendants' motions to dismiss. Yet Plaintiff did not seek leave to amend its complaint to incorporate additional information from those sources. Plaintiff's access to, and review of, the factual bases underpinning all of the new allegations in the PSAC before this Court entered judgment dooms its motion under controlling Tenth Circuit precedent. *See Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 611 (10th Cir. 2012) ("[I]f the evidence was available at the time . . . judgment was granted, [the movant must show] that counsel made a diligent *yet unsuccessful* attempt to discover the evidence." (emphasis added) (citation omitted)); *see also Cheavens*, 2016 WL 8469747, at *4 ("[b]ecause Plaintiff admits he had this evidence before the judgment was entered, it is not newly discovered evidence" under Rule 59(e)); *Schembri v. Transp. Sec. Admin.*, 2021 WL 6134667, at *1 (D. Kan. Dec. 29, 2021) (same).

Further, it is irrelevant that the evidence from the First Trial became available after the motions to dismiss were fully briefed because Plaintiff had ample opportunity to seek leave to amend before the Court's judgment, but apparently made a tactical decision to stand on its existing pleading. "Courts have refused to allow a post-judgment amendment when, as here, the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave." *Tool Box*, 419 F.3d at 1088; *accord Team Sys. Int'l, LLC v. Haozous*, 2015 WL 7736651, at *4 (W.D. Okla. Nov. 30, 2015) (denying motion to amend because "Plaintiff did not request—either in its brief opposing dismissal or by a properly filed motion—to amend its pleading to cure any deficiency found by the Court or to supply any factual allegations necessary to state a plausible claim" and arguments "could have been advanced before judgment"). Nothing prevented Plaintiff from seeking to amend while the motions to dismiss were pending.

10

In short, Plaintiff's new allegations are based on evidence its counsel reviewed months before the Court's judgment. Plaintiff thus cannot meet the stringent standards for relief under Rule 59(e), and is not entitled to even seek leave to amend the complaint.

## II.    The "New" Evidence in Plaintiff's Proposed Amendment Would Not Cure the FAC's Glaring Deficiencies or Produce a Different Result

Even if the testimony from the First Trial, the Plea Agreement, or the *McGuire* Indictment could be considered "new" evidence—and they plainly cannot—none of it justifies altering the final judgment because Plaintiff has failed to show that the "purportedly new evidence would produce a different result." *Devon*, 693 F.3d at 1213. The Court dismissed Plaintiff's claims based on four alternative and largely independent grounds: (a) Plaintiff failed to allege particularized facts establishing the "central premise" of its case, namely that Pilgrim's "success was driven by Defendants' illegal bid-rigging scheme"; (b) most—if not all—of the challenged statements Plaintiff allegedly relied on are not actionable as a matter of law; (c) Pilgrim's involvement in the antitrust conspiracy, even if adequately pleaded, was insufficiently tied to the challenged statements and thus did not render any of the statements false or misleading; and (d) Defendants had no duty to disclose uncharged, unadjudicated wrongdoing. ECF No. 75 at 6, 7, 9-11. Plaintiff's purportedly "new" evidence does nothing to cure any of these deficiencies.

### A.    *Plaintiff Still Fails to Plead Particularized Facts Supporting Its Claims that Bid-Rigging Significantly Impacted Pilgrim's Financial Results*

Plaintiff's new allegations fail to support the "central premise" of Plaintiff's securities law claims—that Pilgrim's "success was driven by Defendants' illegal bid-rigging." *See id.* at 7. In dismissing the FAC, the Court correctly held that "Plaintiff has not shown that the bid-rigging scheme had such a significant impact on Pilgrim's bottom line that it could be credited with turning

11

around the company following its filing for bankruptcy in 2008 or with driving its success during the class period." *Id.* As the Court noted, "Plaintiff makes almost no attempt to quantify the financial impact of the scheme." *Id*. Plaintiff's motion does not identify any clear error in the Court's conclusion that Plaintiff was required to plead particularized allegations of financial impact to state a securities claim, nor does it point to any intervening change in controlling law. Rather, Plaintiff merely contends that the PSAC now meets that requirement. It does not.

The PSAC fails to quantify the effects of *any* additional anticompetitive conduct. While Plaintiff highlights supposedly "new" evidence that "Defendants' bid-rigging conduct increased the value of [the 2015-2017 KFC contract] by roughly $20 million per year, resulting in a $60 million increase for one contract," Mot. 7, *this is not a new theory*, much less one that remedies the deficiencies in Plaintiff's claim. The $60 million increase in the 2015-2017 KFC contract— the *only* purportedly "new" impact of the bid-rigging scheme quantified in the PSAC—was already part of the $361 million in affected sales that the Court previously held was "insufficient to establish that the bid-rigging scheme was a material source of Pilgrim's 'success' during the class period or that it 'artificially inflated' the price of Pilgrim's stock." ECF No. 75 at 7-8.[6] The Court properly found this $361 million in affected sales immaterial because it was dwarfed by Pilgrim's net sales of "approximately $54.5 billion" between 2012 and 2017. ECF No. 75 at 7. And Plaintiff's new allegations indicate that approximately $40 million of those affected sales occurred

---

[6] The Plea Agreement lists three contracts that totaled at least $361 million: "(1) defendant's contract for the supply to KFC of dark meat and wings in 2013; (2) defendant's contract for the supply to KFC of dark meat in 2014; and (3) *defendant's contract for the supply to KFC of 8-piece chicken on the bone in 2015 through 2017*." *See* Plea Agreement ¶ 4(c) (emphasis added); *see also* Ex. 4, Nov. 2, 2021 Tr. 205:15-208:11 (estimating a roughly $60 million increase in the 2015-2017 KFC contract price).

before the class period even began in 2017. PSAC ¶ 129 ("KFC price increase for 2015 through 2017 totaled roughly $20 million annually").

Plaintiff does not even purport to quantify the impact of any of the other allegations in the PSAC, and thus, those allegations suffer from the exact same particularity defects that the Court previously identified. For example, despite asserting that "bid-rigging activity in April 2017 . . . resulted in higher prices for boneless breast meat that [Pilgrim's] supplied to US Food," Mot. 7, Plaintiff makes no attempt to quantify those prices or how they contributed to Pilgrim's overall performance during the class period. *See* PSAC ¶¶ 145-46. So too with the contract for KFC's broiler supply from 2018 through 2020. *Id*. ¶¶ 136-44. Plaintiff nowhere pleads how any of this affected Pilgrim's operating results or was material to the company's operating success, let alone how it could serve as the primary driver of Pilgrim's financial results over a three-year period. Because the PSAC lacks any particularized allegations about the financial impact of these contracts, Plaintiff cannot surmount the "insurmountable hurdle [of] proving that the statements or omissions it relies upon were materially false or misleading." ECF No. 75 at 8.

Further, while Plaintiff suggests that "Pilgrim's plan was to extract similar price increases for all of the fast food retailers it supplied," ECF 77 at 7, the PSAC contains no particularized allegations demonstrating that Pilgrim's followed through with that plan during the class period. Instead, Plaintiff alleges that *only three* of Pilgrim's thousands of customers experienced price increases due to bid-rigging during the class period (and fails to quantify the increases for two of those contracts). PSAC ¶¶ 136-53. To support its theory that bid-rigging affected customers more broadly, Plaintiff relies on a text from a Pilgrim's employee stating: "Got [KFC] and [another key customer]. Rest still to come. *Everybody is getting that price increase*." *Id.* ¶¶ 129, 259 (emphasis

13

in original). But this text message is from September 19, 2014, almost *three years before* the class period began. *See* Ex. 1 ¶ 107. Plaintiff's conclusory (and speculative) allegations thus fall far short of meeting the PSLRA and Rule 9(b)'s particularity requirements for pleading a securities fraud claim. *See* ECF No. 75 at 5.

### B. The Alleged Misstatements Are Not Actionable as a Matter of Law

Consistent with controlling Tenth Circuit authority, the Court also held that "the bulk, if not all," of the challenged statements are not actionable as a matter of law "because they constitute vague statements of corporate optimism that are incapable of objective verification." ECF No. 75 at 9. "[R]easonable investors simply do not rely on generic expressions of optimism associated with a corporation's 'efficient operations,' 'strong relationships with its key customers,' 'results-oriented corporate culture,' or collective 'vision.'" *Id*. at 10. "These are all the kinds of rosy affirmations commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague [and] lacking in specificity that no reasonable investor could find them important." *In re Level 3 Commc'ns, Inc. Sec. Litig*., 667 F.3d 1331, 1340 (10th Cir. 2012). Even setting aside their manifest deficiencies, Plaintiff's purportedly "new" factual allegations concerning an antitrust conspiracy are thus irrelevant—the PSAC does not plead any new or different misstatements. Plaintiff is trying to breathe new life into statements the Court already held cannot give rise to securities fraud liability as a matter of law. Not surprisingly, Plaintiff's efforts on this score fail.

First, Plaintiff's assertion that the alleged misstatements "were *not* generic expressions of optimism or non-actionable puffery," Mot. 9 n.6 (citation omitted), is little more than an effort to re-litigate this Court's prior decision. Plaintiff already raised this very argument in opposing the

14

motions to dismiss, and the Court rejected it as a matter of law. ECF No. 75 at 8-10; *see, e.g.*, ECF No. 67 at 18 (arguing that Defendants' "statements about Pilgrim's purportedly 'strong' customer relationships . . . cannot be dismissed as puffery"). It is axiomatic that Rule 59(e) is not a "vehicle to advance arguments or supporting facts that could have been raised previously." *Wells v. Falk*, 2019 WL 8198091, at *1 (D. Colo. Apr. 25, 2019). Plaintiff is not entitled to re-argue this issue.

Second, Plaintiff's contention that the "new" evidence in the PSAC "clearly disprove[s]" that Pilgrim's had "strong relationships with its customers," Mot. 8, misunderstands the nature of the Court's Order. The Court did not hold that Plaintiff needed to plead more or different facts to "disprove" Pilgrim's statements. Rather, the Court held that such statements *could not* be the basis of securities fraud liability because they are "not capable of objective verification." ECF No. 75 at 9. Plaintiff's additional evidence—that one Pilgrim's employee believed "the relationship with KFC was damaged"—is irrelevant because, as the Court held, Defendants' statements about customer relationships were too vague to be capable of verification, and thus, reasonable investors would not rely on them. *Id.* This flaw in Plaintiff's pleading was not with the number, or nature, of its factual allegations, but rather with the contents of the statements it challenged—a flaw that Plaintiff does not even try to remedy in the PSAC.

Finally, Plaintiff's argument that its "new evidence . . . confirms that Defendants' alleged misrepresentations were not . . . inactionable opinion statements," Mot. 8, fails for similar reasons. Even if Plaintiff could revisit this finding—a legal challenge that is not permissible under Rule 59(e)—Plaintiff points to no particularized allegations in the PSAC showing the "opinion statements were not actually held" by the speakers. ECF No. 75 at 9-10; *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186, 188-89 (2015). The

only "new" evidence Plaintiff offers to undercut Defendants' opinions that Pilgrim's had "strong relationships" with its customers is the subjective opinion of a low-level Pilgrim's employee who, years after the fact, stated that Pilgrim's relationship with a *single customer*, KFC, had been "a little bit" damaged and was "not good," PSAC ¶ 136; Ex. 2, Nov. 1, 2021 Tr. 88:14-17, and that a negotiation *before the class period* became contentious when KFC's lead negotiator threatened to "beat [Pilgrim's] down with a hammer or a baseball bat . . . in price and take loads [of business] from [them]," PSAC ¶¶ 141-42; Ex. 2, Nov. 1, 2021 Tr. 119:6-18.

Such evidence does not show that Pilgrim's lacked strong relationships with its customers more broadly, that the overall KFC relationship was impaired, that Pilgrim's senior executives were even aware of the purported "damage" to the KFC relationship, or that Defendants did not honestly believe that their relationships with customers were "strong." *See Omnicare*, 575 U.S. at 190 (one negative opinion offered by a junior member of a corporation need not be disclosed). To the contrary, as KFC negotiator Rich Eddington testified, such negotiations were hardly out of the ordinary: "KFC had . . . always taken the hammer to suppliers," KFC "wasn't overly surprised" by the terms of the 2015-2017 contract, and "as painful as it was . . . [Eddington] honestly believe[d] that [the 2015-2017 contract] stabilized the landscape of [chicken-on-bone prices] for the years that followed." Ex. 6, Mar. 15, 2022 Tr. 105:16-106:18. Furthermore, the PSAC *acknowledges* that KFC executed a new contract despite this supposed threat, undercutting Plaintiff's notion of some long-term significant damage to the relationship. PSAC ¶ 144.

### C. Plaintiff's "New" Allegations Fail to Cure the Temporal Disconnect Between the Bid-Rigging and the Alleged Misstatements

Separately fatal to Plaintiff's motion, the purportedly "new" evidence also fails to suggest that any of Defendants' statements were false during the class period. As this Court previously

held, "nearly all" of the conduct alleged in the FAC "precedes the class period, much of it by years"; the individual defendants' "alleged involvement in the scheme" occurred before the class period; and the allegation that some Pilgrim's employees engaged in bid-rigging during the class period does not explain "how such conduct rendered any particular statements made during the class period false or misleading." *Id.* at 6. Plaintiff's "new" evidence does nothing to address the disconnect between the timing of the scheme alleged in the PSAC and the alleged misstatements. Simply put, "Plaintiff has not demonstrated that the evidence [it] gained access to in [the last several months] was not merely cumulative," *Cheavens*, 2016 WL 8469747, at *3, or that the evidence "would probably produce a different result," *Devon*, 693 F.3d at 1213 (citation omitted).

The allegations in the PSAC *still* chronicle events almost entirely predating the class period and *still* fail to demonstrate the falsity of any of Defendants' statements. *See* PSAC ¶¶ 89-135. Plaintiff's most oft-quoted snippets of trial testimony—that KFC's lead negotiator told a low-level Pilgrim's employee in January 2017 that he was going to "beat [them] down with a hammer or a baseball bat" and that another Pilgrim's employee internally stated in September 2014 that "[e]verybody is getting [a] price increase"—both involve conduct that occurred *before the class period* began on February 9, 2017. *See* Ex. 2, Nov. 1, 2021 Tr. 117:6-119:18 (describing January 2017 meeting with KFC); Ex. 1 ¶ 107 (quoting September 2014 conversation). Moreover, even if KFC's negotiator threatened a Pilgrim's employee (who is not alleged to have made any of the challenged statements or communicated the threat to any senior official), that does not show that Pilgrim's key customer relationships were damaged on a wider scale, much less disprove Pilgrim's public statements that it had strong relationships with customers generally. *See supra* Section II.B. And while Plaintiff insists that "nine" customers "specifically identified in the PSAC" were

17

"affected by the bid-rigging scheme," Mot. 11, Plaintiff does not allege that *six of the nine* were affected during the class period at all. *See* PSAC ¶ 85 (listing nine "restaurants, grocers, and food distributors," but detailing no class period conduct affecting six of nine). Thus, despite the Court's holding that pre-class period conduct is generally irrelevant to Plaintiff's claims, Plaintiff continues to reach back to prior misconduct and advances innuendo rather than particularized pleadings.

Plaintiff takes a similar approach in its allegations against the individual defendants. In its motion, Plaintiff asserts that Messrs. Penn and Lovette were "involved in and aware of bid-rigging conduct that directly impacted Pilgrim's financial performance during the Class Period" because Mr. Bryant testified that "he met with Penn and Lovette 'monthly' to 'review[] our results and plans going forward.'" Mot. 6. But Pilgrim's sales meetings were large affairs involving 20-30 people from all of Pilgrim's business units. *See* Ex. 7, Mar. 9, 2022 Tr. 151:1-152:5. And Plaintiff conspicuously omits from its PSAC and fails to mention in its motion that *Mr. Bryant actually said the exact opposite of what Plaintiff suggests*—he testified that he had *no knowledge* of Mr. Penn's or Mr. Lovette's involvement in or awareness of any price fixing. *See* Ex. 4, Nov. 2, 2021 Tr. 372:14-373:9; Ex. 8, Mar. 8, 2022 Tr. 182:25-183:4; Ex. 7, Mar. 9, 2022 Tr. 145:1-16; Ex. 9, Mar. 10, 2022 Tr. 19:12-20:17.

Finally, Plaintiff's additional detail about two class period contracts that low-level Pilgrim's employees negotiated (with KFC and US Foods) does nothing to save its claims. PSAC ¶¶ 136-46. As the Court already concluded, Plaintiff's claim that "some of Pilgrim's employees participated in a bid-rigging scheme through 2017, and possibly longer, does not amount to a particularized showing that 'disproves' statements by its senior officials throughout the class

period." ECF No. 75 at 9. Plaintiff does nothing to explain *why* information about low-level employees' negotiations of two more contracts with two more customers (among thousands) warrants a different outcome than before. The result is that the PSAC continues to suffer from the same disconnect between the bid-rigging conduct, the vast majority of which preceded the class period by years, and the statements Pilgrim's senior officials made during the class period.

### D.  Defendants Had No Duty to Accuse Themselves of Wrongdoing

As the Court previously held, Defendants had no "duty to disclose [the] bid-rigging scheme in order to prevent their statements to investors from being misleading." *Id.* at 10 (citation omitted). "[D]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (citations omitted). Plaintiff does not challenge this aspect of the Court's ruling, and any such challenge would be meritless because, as set forth above, a Rule 59(e) motion is not the proper vehicle for challenging a court's legal conclusions on an issue previously addressed by the parties. *See* ECF No. 67 at 12 (Plaintiff arguing that "[d]efendants were required to disclose their illegal scheme"). And Pilgrim's plea agreement "does not change the calculus in this case, because, as explained above, the [anticompetitive] conduct . . . is insufficiently tied to any statements or omissions made during the class period, and the statements relied on are too vague and indefinite to give rise to a duty to disclose." ECF No. 75 at 11. Plaintiff does not offer any new theory that justifies revisiting this holding.

In short, the purportedly "new" evidence that Plaintiff offered in the PSAC cures none of the fundamental deficiencies in the FAC. Thus, Plaintiff has failed to establish that the "new"

evidence would probably produce a different result under Rule 59(e).[7]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion to alter or amend the judgment under Rule 59(e) and deny Plaintiff leave to amend the complaint.

Dated: April 26, 2022

Respectfully submitted,

/s/ Caroline H. Zalka

**Caitlin C. McHugh**
LEWIS ROCA ROTHGERBER CHRISTIE LLP
1200 17th Street, Suite 3000
Denver, CO 80202
Telephone: (303) 628-9588
cmchugh@lrrc.com

**Caroline H. Zalka**
**Seth Goodchild**
**Andrew J. Cauchi**
**Tania C. Matsuoka**
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
caroline.zalka@weil.com

*Attorneys for Pilgrim's Pride Corporation and Fabio Sandri*

/s/ John A. Fagg, Jr.

**John A. Fagg, Jr.**
**Mark A. Nebrig**
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
johnfagg@mvalaw.com

*Attorneys for Defendant William W. Lovette*

/s/ Seth Aronson

**Seth Aronson**
**Amy S. Park**
**Christopher P. Burke**
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
saronson@omm.com

*Attorneys for Defendant Jayson Penn*

---

[7] For these same reasons, even if the more liberal standard of Rule 15(a) were to apply (it does not), amendment would nevertheless be futile under that standard because Plaintiff's new allegations do not cure the pleading deficiencies in the FAC. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." (citation omitted)).

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record of such filing.

/s/ Caroline H. Zalka
Caroline H. Zalka