# EXHIBIT 9

test test, Penn, test test check check test test March 10, 2022, 8:27 a.m.

THE COURT:  We are back on the record in 20CR152.  The jury is not present.  Mr. Koenig had an issue.  Go ahead.

MR. KOENIG:  I just wanted to discuss the timing of Mr. Brink's testimony.  We requested length of cross and didn't got a response.  So in order to be cautious to make sure that he gets on and off the stand today, we have asked him to arrive at the courthouse at 9:00.  I guess whenever is between one of the crosses if we could put him on, that would be --

THE COURT:  Well, the question is I mean do we really think that the cross-examination of Mr. Bryant is going to go all day?

MR. KOENIG:  Well, I have no idea.  I mean, I asked.

MS. HENRY:  Your Honor, I quick canvas this morning the folks who I know who have just recently looked through what they are doing and we are I think we are looking at maybe an hour.

THE COURT:  Okay.  Mask Ms. Henry too.

MR. KOENIG:  I guess the other thing is we would prefer to call Mr. Lewis first before Mr. Brink, but again --

THE COURT:  Well, it sounds like if you are going to have Mr. Brink here at 9:00 you should call Mr. Brink if he has got the problem.

MR. KOENIG:  Okay, thank you.  How are we doing jury

Q.  It just so happened that you were responding to an e-mail about Sysco, but it had nothing to do with Sysco, correct?

A.  That part of that e-mail, that's correct, yes.  There was two.  There was one where --

Q.  I understand, sir.  As it related to your agreement with US Foods, the work that you were doing with Mr. Stiller, that was just related to US Foods, correct?

A.  That's correct.

Q.  And you testified about these phone calls that you overheard when you were in Mr. Austin's office, right?

A.  Yes.

Q.  And you never told Mr. Lovette about those phone call -- those discussions, correct?

A.  That's correct.

Q.  And you have no personal knowledge that anyone ever told Mr. Lovette about those conversations, correct?

A.  That's correct.

Q.  And you testified about these meetings in Atlanta that were at SMS or Church's or Popeye's, wherever.  You never told Mr. Lovette about those, that discussion, correct?

A.  That's correct.

Q.  And you have no personal knowledge that anybody ever told Mr. Lovette about that, correct?

A.  That's correct.

Q.  And you never heard Mr. Lovette give an instruction to

Robert Bryant - Cross

anyone to coordinate with a competitor regarding a bid or a price, correct?

A.   That's correct.

Q.   And you have no personal knowledge that Mr. Lovette ever told anyone to coordinate with another supplier about a bid or a price, correct?

A.   That's correct.

Q.   And you have no personal knowledge that Mr. Lovette ever agreed with any competitor to raise a price, correct?

A.   That's correct.

Q.   And you have no personal knowledge that Mr. Lovette ever agreed with any competitor to prevent a decrease in a price, correct?

A.   That's correct.

Q.   And you have no personal knowledge that Mr. Lovette ever agreed with any competitor to rig a bid, correct?

A.   That's correct.

        MR. FAGG:  Thank you, sir.  That's all I have.

        Thank you, Your Honor.

        THE COURT:  Thank you, Mr. Fagg.

        Mr. Canty?

                    **CROSS-EXAMINATION**

BY MR. CANTY:

Q.   Good morning, Mr. Bryant.

A.   Good morning.