IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01966-RM-MEH

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 464A,
THE TRUSTEES OF WELFARE AND PENSION FUNDS OF LOCAL 464A – PENSION FUND,
THE TRUSTEES OF RETIREMENT PLAN FOR OFFICERS,
BUSINESS REPRESENTATIVES AND OFFICE EMPLOYEES OF LOCAL 464A,
THE TRUSTEES OF LOCAL 464A FINAST FULL TIME EMPLOYEES PENSION PLAN,
THE TRUSTEES OF LOCAL 464A WELFARE AND PENSION BUILDING INC., and
THE TRUSTEES OF NEW YORK-NEW JERSEY AMALGAMATED PENSION PLAN FOR ACME EMPLOYEES, Individually and on Behalf of All Others Similarly Situated,

      Plaintiffs,

v.

PILGRIM'S PRIDE CORPORATION,
JAYSON J. PENN,
WILLIAM W. LOVETTE, and
FABIO SANDRI,

      Defendants.

---

**LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO ALTER OR AMEND JUDGMENT**

---

4888-8435-5615.v1

Lead Plaintiff New Mexico State Investment Council ("Lead Plaintiff" or "Plaintiff") respectfully submits this reply memorandum in support of Lead Plaintiff's Motion to Alter or Amend Judgment (ECF 77) (the "Motion").[1]

## I.    INTRODUCTION

Lead Plaintiff seeks relief pursuant to Rules 15(a) and 59(e) of the Federal Rules of Civil Procedure from the Final Judgment entered on March 8, 2022, and an order allowing Plaintiff leave to amend its Complaint.  As detailed in the Motion, the basis for Plaintiff's request comes from new evidence recently uncovered during two criminal trials, which allows Plaintiff to address what this Court found to be pleading deficiencies in its MTD Order.  Defendants' joint opposition to the Motion (ECF 78) (the "Opp.") argues that Plaintiff's Motion should be denied for two reasons.  As explained below, neither of Defendants' misguided arguments support denial of Plaintiff's Motion.

Defendants' first argument that the Motion should be denied because the newly discovered evidence supporting it was purportedly available to Plaintiff before the Court entered the Final Judgment fails for two reasons.  First, Defendants concede that the allegations in Plaintiff's proposed amended complaint (the "PSAC") rely on several new facts uncovered during the Second Criminal Trial, which concluded on March 29, 2022 – 21 days *after* the Final Judgment was entered.  *See* Opp. at 8-9.  Contrary to Defendants' assertions, these facts are not duplicative of facts uncovered in the First Criminal Trial, and they form a critical part of the basis for Plaintiff's Motion, as further detailed below.  Second, Defendants' argument disregards the collective nature

---

[1]    Unless otherwise noted, all capitalized terms herein are assigned the same definitions as in the Motion, and all paragraph references ("¶_" and "¶¶_") are to the PSAC.

- 1 -

of the new evidence underlying the PSAC's allegations and the ***ongoing process*** through which that evidence became available to Plaintiff.  *See* Opp. at 5-8.  Unlike the cases relied on by Defendants, the new evidence supporting Plaintiff's Motion was diligently discovered through a continuous series of events that did not conclude until ***after*** the Final Judgment was entered.  As such, the full scope of the new evidence supporting Plaintiff's Motion was ***not*** available prior to the Court's entry of Final Judgment.

Defendants' second argument that Plaintiff's new evidence fails to cure what this Court found to be pleading deficiencies in its MTD Order is also misguided and incorrect.  *See* Opp. at 11-19.  As detailed below and in the Motion, the PSAC's allegations based on newly discovered evidence address each of the concerns raised by the Court's MTD Order.  *See* Motion at 5-9. Defendants' arguments to the contrary misconstrue the nature of Defendants' alleged misrepresentations and the significance of the new evidence set forth in the PSAC.  In addition, they disregard the legal standards applicable to Plaintiff's claims and improperly ask the Court to make factual inferences in Defendants' favor at the pleadings stage.  Accordingly, Defendants' merits-based arguments do not support denial of Plaintiff's Motion, as further detailed below.

## II.    ARGUMENT

"'Grounds for granting a Rule 59(e) motion include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'"  *Burke v. Bigelow*, 792 F. App'x 562, 565 (10th Cir. 2019).  Where the motion is based upon "new evidence previously unavailable," such evidence "must be 'of such a nature as would probably produce a different result.'"  *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1212-13 (10th Cir. 2012).  As detailed in the Motion,

- 2 -

Plaintiff's request to set aside the Final Judgment and amend the Complaint satisfies the requirements of Rule 59(e) because it is based upon new evidence previously unavailable, which cures what this Court found to be pleading deficiencies in its MTD Order.  *See* Motion at 4-9.

### A.    The Motion is Based Upon "New Evidence Previously Unavailable"

Defendants argue that Lead Plaintiff's Motion should be denied because *"[a]lmost all"* of the newly discovered evidence underlying the PSAC's allegations was available before the Court entered the Final Judgment on March 8, 2022.  *See* Opp. at 2; *see also id.* at 4-10.  This argument fails for two reasons.

*First*, Defendants concede that the PSAC's allegations rely on several new facts uncovered during the Second Criminal Trial, which concluded on March 29, 2022 – ***21 days after the Final Judgment was entered***.  *See* Opp. at 8-9; *see also* ¶7 (citing specific testimony from the Second Criminal Trial), ¶11 (describing testimony from both Criminal Trials regarding Pilgrim's "damaged" relationship with KFC), ¶13 (describing testimony from both Criminal Trials regarding the financial impact of Defendants' bid-rigging scheme), ¶87 (describing impact of testimony from both Criminal Trials), ¶144 (citing specific testimony from the Second Criminal Trial regarding Pilgrim's contract for KFC's 2018-2020 broiler supply), ¶167 (describing impact of testimony from Second Criminal Trial), ¶265 (citing specific testimony from the Second Criminal Trial regarding Penn's awareness of and direct involvement in Pilgrim's sales operations), ¶268 (citing specific testimony from Second Criminal Trial regarding Lovette's awareness of and direct involvement in Pilgrim's sales operations).  These allegations unquestionably establish that the Motion is based upon "evidence arising after the [Final Judgment]." *Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1102 (10th Cir. 2006).

- 3 -

Defendants attempt to downplay this fact by claiming that "most, if not all, of the testimony [from the Second Criminal Trial] is duplicative of testimony from the First Trial."  Opp. at 8-9. But that is incorrect.  As alleged in the PSAC, the Second Criminal Trial shed light on Penn's and Lovette's involvement in the bid-rigging scheme and revealed critical details regarding: (1) Defendants' Class Period bid-rigging conduct; (2) the negative impact Defendants' bid-rigging scheme had on Pilgrim's key customer relationships; and (3) the material impact that the bid-rigging scheme had on Pilgrim's Class Period financial performance.  ¶167.  Among other things, the PSAC relies on specific testimony from the Second Criminal Trial for its detailed allegations that: (1) "'[Pilgrim's] strategy was to get KFC done first and then go after the rest of the QSR business like Popeye's, Church's, . . . Bojangles, the rest of that book of business'"; (2) the price increases for the other fast food retailers "'were similar to the KFC so in that 15 to 20-cent price range'"; (3) Penn and Lovette attended "'monthly sales meetings where [the participants] reviewed [Pilgrim's] results and plans going forward'"; and (4) Defendants' bid-rigging conduct in early-2017, in fact, led to the signing of a contract with KFC that did not expire until "'the beginning of 2021.'"  *See* ¶¶7, 144.  These detailed facts from the Second Criminal Trial form a critical part of the basis for Plaintiff's Motion by directly addressing concerns raised by the Court's MTD Order. *See* Motion at 5-8.

*Second*, Defendants' argument that evidence from the First Criminal Trial cannot support Plaintiff's request for relief from the Final Judgment disregards the collective nature of the evidence underlying the PSAC's allegations, and the ongoing process through which that evidence became available to Plaintiff.  *See* Opp. at 5-8.  Unlike the cases cited by Defendants, the new evidence supporting Plaintiff's Motion was diligently discovered through a legal proceeding that

- 4 -

4888-8435-5615.v1

was ***ongoing*** at the time the Final Judgment was entered.  As noted in the Motion, the First Criminal Trial ended in a mistrial on December 16, 2021.  Six days later, on December 22, 2021, Judge Brimmer scheduled the Second Criminal Trial for February 22, 2022.  *See United States v. Jayson Penn et al.*, No. 1:20-cr-00152-PAB (D. Colo), ECF 925.  As such, it would have been premature and judicially inefficient for Plaintiff to move to amend the Complaint at that time, given the strong likelihood that additional relevant evidence would soon be uncovered, requiring further amendments – a likelihood that indeed came to fruition, as evidenced by the PSAC's allegations concerning new material facts uncovered during the Second Criminal Trial, which concluded on March 29, 2022.  *See, e.g.*, ¶¶7, 144, 167, 265, 268.  Because the full scope of new evidence underlying the PSAC's allegations was revealed through an ongoing process that did not conclude until 21 days ***after*** the Final Judgment, Defendants' argument that the new evidence supporting Plaintiff's Motion was available prior to the Court's entry of Final Judgment is without merit.[2]

### B.    The New Evidence Addresses the Deficiencies Identified by the Court

As detailed in the Motion, the new evidence set forth in the PSAC allows Plaintiff to cure what this Court found to be pleading deficiencies in its MTD Order.  *See* Motion at 5-9. Defendants' arguments to the contrary each fail.  *See* Opp. at 11-19.

---

[2]    Taken to its logical conclusion, Defendants' argument would require a party in Plaintiff's position to move to amend its complaint following each day of an ongoing trial in which new evidence was revealed in order to eliminate the risk of being precluded from submitting such evidence by the entry of a judgment at any point during the trial.  Common sense and the interests of judicial economy clearly militate against any position that would produce such an outcome.

- 5 -

### 1. The New Evidence Supports Plaintiff's Allegation that the Bid-Rigging Scheme Had a Material Impact on Pilgrim's Financial Performance During the Class Period

As detailed in the Motion, the PSAC's new evidence plausibly supports Plaintiff's allegation that the bid-rigging scheme had a material impact on Pilgrim's financial performance during the Class Period, rendering Defendants' statements attributing Pilgrim's success *solely* to legitimate practices materially false and misleading. *See* Motion at 6-8; *see also* ¶¶12-14, 175-76, 190-91, 203-06, 211-16, 218-219, 223-24. Specifically, the new evidence: (1) clarifies that bid-rigging conduct alleged in the Complaint as pertaining to a contract for KFC's 2015 broiler products, in fact concerned a contract that covered KFC's broiler supply for 2015 through 2017 (¶¶108-130); (2) quantifies the specific impact of the bid-rigging conduct on this *single contract* as an increase in value of approximately $20 million per year (¶129); (3) clarifies that bid-rigging conduct alleged in the Complaint as pertaining to negotiations for a contract for KFC's 2018 broiler products, in fact concerned a contract that ultimately was signed and covered KFC's broiler supply for 2018 through 2020 (¶¶136-144); (4) establishes that Defendants engaged in bid-rigging activity in April 2017 that resulted in higher prices for boneless breast meat that Pilgrim's supplied to US Foods (¶¶144-146); and (5) confirms that the KFC and US Foods *examples* were part of a broader bid-rigging scheme to increase broiler prices for *all* of Pilgrim's fast food customers "in that 15 to 20-cent price range" (¶¶5, 7, 108, 129, 259). *See also* Motion at 6-8.

When these allegations are accepted as true and construed in the light most favorable to Plaintiff, as they must be at the pleadings stage, they plausibly establish that Defendants' bid-rigging scheme had a material impact on Pilgrim's financial performance during the Class Period, which is sufficient to render Defendants' statements attributing Pilgrim's success *solely* to

- 6 -

legitimate practices materially false and misleading. *See, e.g.*, *Peace Officers' Annuity & Ben. Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1153 (D. Colo. 2019) ("Plaintiffs have adequately pled that Defendants made false or misleading statements regarding [an illegal practice] and attributing [defendant's] success to other factors."); *Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 1177505, at \*16 (S.D.N.Y. Mar. 29, 2021) ("courts have sustained [allegations] where a company reports positive sales results without disclosing that those results were due, *even if in part*, to bribery, antitrust violations, or some other illegal conduct").[3]

Defendants' arguments to the contrary each fail. *See* Opp. at 11-14. First, Defendants' assertion that the PSAC's allegations regarding the $20 million annual increase in value for the KFC contract were "already part of the $361 million in affected sales" previously addressed by the Court misses the point. *See* Opp. at 12. Although the Complaint previously referenced the Plea Agreement's statement that "Pilgrim's affected sales of broiler chicken products totaled at least $361 million," it did not allege details regarding specific *increases* in contract value that were directly attributable to the bid-rigging scheme. *See* Complaint, ¶134. Based on Plaintiff's newly discovered evidence, the PSAC alleges that Defendants' bid-rigging conduct directly increased the value of one specific Class Period contract by approximately $20 million per year, while further alleging that this contract was just one example of the many contracts implicated by Pilgrim's

---

[3]   *Accord Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 808 (S.D.N.Y. 2018) ("a company's statements become actionable if the company attributes its success to a particular cause without also disclosing the unlawful activity that contributed to that success"); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 368 (E.D.N.Y. 2013) (finding falsity adequately pled based on allegations concerning Defendants' failure to disclose that any portion of the company's reported revenue and profits were derived from Medicare fraud).

- 7 -

broader bid-rigging scheme, which sought to raise broiler prices for *all* of its fast food customers. ¶¶5, 7, 108, 129, 259.

Defendants' additional argument that the PSAC's allegations are insufficient to plead falsity because they fail "to quantify the impact" of the bid-rigging scheme on any other Class Period contracts misapprehends Plaintiff's burden at the pleadings stage. *See* Opp. at 13. At this stage, Plaintiff need only allege enough particularized facts, accepted as true and construed in the light most favorable to Plaintiff, to render Defendants' statements materially false and misleading. *See In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp. 3d 987, 1001-1003 (D. Colo. 2016). Although the PSAC does not precisely quantify the full impact of Defendants' bid-rigging scheme – which would require access to internal information solely within Defendants' possession – the PSAC plausibly alleges, based on the newly discovered evidence described above, that the bid-rigging scheme had a material impact on Pilgrim's financial performance during the Class Period, which is sufficient to render Defendants' statements materially false and misleading, as numerous courts have found.

In *Gentiva*, for example, the plaintiff alleged that defendants made materially false and misleading statements based on their "fail[ure] to disclose that a portion – any portion – of the company's reported revenue and profits were derived from Medicare fraud." 932 F. Supp. 2d at 368. Unlike the PSAC's allegations here, the *Gentiva* plaintiffs made "no factual allegations regarding how the financial figures were artificially inflated or the monetary consequences of doing so." *Id.* The court, however, found that "while the complaint does not specify the exact percentage of the revenue and profits that was a misstatement because it was earned solely as a result of alleged Medicare fraud, this is not of importance." *Id.* The court went on to find that it

- 8 -

had "no doubt that information relating to Gentiva's purported [illegal scheme], ***even if only accounting for a small percentage of Gentiva's actual profits***, was not [immaterial because] . . . [i]t is plausible that a reasonable investor would view this information significant to an investment decision under the circumstances, ***regardless of the financial consequences***." *Id.* As a result, the *Gentiva* court held that the plaintiff "sufficiently pleaded with particularity the material misstatements or omissions by the Defendants." *Id.*; *see also, e.g.*, *Rosi*, 2021 WL 1177505, at *16; *Rio Tinto*, 332 F. Supp. 3d at 808. As detailed above and in Plaintiff's Motion, the PSAC's particularized allegations regarding the impact of Defendants' bid-rigging scheme on Pilgrim's Class Period financial performance are significantly more detailed than those upheld by the *Gentiva* court, and are thus sufficient to plead falsity at this stage.

### 2. The New Evidence Establishes that the Alleged Misstatements Were Not Mere Puffery or Inactionable Opinion Statements

The Motion also describes in detail how the newly discovered evidence set forth in the PSAC confirms that Defendants' alleged misrepresentations were not mere puffery or inactionable opinion statements. *See* Motion at 8-9. Defendants argue that this evidence "is irrelevant because, as the Court held, Defendants' statements about customer relationships were too vague to be capable of verification, and thus, reasonable investors would not rely on them." *See* Opp. at 15. As detailed in the Motion, however, the newly discovered evidence alleged in the PSAC clearly "'disproves' statements by [Pilgrim's] senior officials throughout the [C]lass [P]eriod that it had strong relationships with its customers or that its business approach promoted trust and long-term relationships." *See* MTD Order at 9; *see also* Motion at 8-9. As such, the PSAC directly addresses the Court's concern that "such statements are not capable of objective verification." MTD Order at 9.

4888-8435-5615.v1

Defendants' additional argument that the PSAC's new evidence fails to set forth "particularized allegations . . . showing the 'opinion statements were not actually held' by the speakers" also misses the mark. *See* Opp. at 15-16. When accepted as true, and viewed *in their entirety*, the PSAC's allegations concerning Defendants' long-running scheme to collude with Pilgrim's competitors in order to *deceive* Pilgrim's largest and most important customers into paying higher prices for the Company's products, *combined* with the PSAC's detailed allegations concerning the "'damage[]'" such conduct did to Pilgrim's relationship with its "anchor customer," KFC, which led KFC's lead negotiator to threaten that "'he was going to beat [Pilgrim's] down with a hammer or a baseball bat,'" are sufficient to plausibly allege that it was not possible for Defendants to actually hold the opinion that their "'***key customer approach . . . promotes trust*** [and] enhances long-term relationships.'" *See* ¶¶3-16, 108, 142, 227-228, 233-234; *see also Omnicare, Inc. v. Labs. Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). In addition, the above concealed facts regarding Pilgrim's collusive scheme and the damage it caused to Pilgrim's relationship with its anchor customer directly "conflict with what a reasonable investor would take from" Defendants' statements that their "key customer approach . . . promotes trust [and] enhances long-term relationships," thus providing an additional basis for those statements to be actionable under *Omnicare*. *See* 575 U.S. at 188-89; *see also* ¶¶3-16, 227-228, 233-234.

### 3.    The New Evidence Addresses the Court's Concern Regarding the "Temporal Disconnect" Between Defendants' Bid-Rigging Scheme and the Alleged Misrepresentations

As detailed in the Motion, the PSAC's new evidence addresses the Court's concern that much of the bid-rigging conduct alleged in the Complaint occurred prior the Class Period. *See* Motion at 5-6. Specifically, the new evidence alleges that Defendants engaged in multiple separate

- 10 -

instances of bid-rigging during the Class Period concerning: (1) Pilgrim's contract for KFC's 2018-2020 broiler supply (¶¶143-144); (2) US Foods' supply of boneless breast meat (¶¶145-146); and (3) Popeye's 2018-2019 chicken supply (¶¶147-153).  As such, Defendants' contention that "Plaintiff's 'new' evidence does nothing to address the disconnect between the timing of the scheme alleged in the PSAC and the alleged misstatements" is incorrect.  *See* Opp. at 17.

Defendants' separate assertion that Plaintiff's claims are somehow undermined by the fact that Defendants' bid-rigging scheme included conduct pre-dating the Class Period is meritless, given the PSAC's express allegations that the scheme continued to impact Pilgrim's financial performance ***throughout the Class Period***.  *See* Opp. at 17; *see also* ¶¶3-16; *see also, e.g., In re CBL & Assocs. Props., Inc. Sec. Litig.*, 2022 WL 1405415, at \*1-\*2, \*6-\*12 (E.D. Tenn. May 3, 2022) (finding material misstatements adequately alleged for class period of July 29, 2014 through March 26, 2019, based on fraudulent scheme concerning business practices that "began in 2005" and "continued through 2016").

Moreover, Defendants' fact-based assertions regarding the involvement of defendants Penn and Lovette in monthly sales meetings are unavailing, as they improperly seek to establish inferences regarding disputed facts in Defendants' favor at the pleadings stage.  *See Molycorp*, 157 F. Supp. at 1001-1003.  Viewing the PSAC's allegations that Penn and Lovette attended "monthly sales meetings where [the participants] 'reviewed [Pilgrim's] results and plans going forward'" in the light most favorable to Plaintiff, along with the PSAC's other allegations concerning Penn's and Lovette's direct involvement in bid-rigging conduct, these facts plausibly allege that Penn and Lovette were aware of the concealed facts that rendered their statements materially false and misleading.  *See* ¶¶261-268; *see also* Motion at 6.

- 11 -

4888-8435-5615.v1

### 4. Defendants Had a Duty to Disclose the Effects of the Bid-Rigging Scheme in Order to Prevent Their Statements to Investors From Being Misleading

Defendants' final argument – that Defendants "had no duty to accuse themselves of wrongdoing" – misconstrues Plaintiff's allegations. *See* Opp. at 19. The PSAC does not allege that Defendants violated "'a duty to disclose uncharged, unadjudicated wrongdoing.'" *See id.* Rather, as detailed above and in the Motion, Plaintiff alleges that Defendants were required to disclose the impact their bid-rigging scheme had on Pilgrim's financial performance and "'key customer approach,'" because it was necessary to do so in order to prevent their statements to investors from being misleading. *See* §§II.B.1-2, *supra*; Motion at 6-9. As numerous courts have held, although it "is true that there is no general duty to disclose illegal conduct, 'a duty to disclose uncharged criminal conduct does arise if it is necessary to ensure that a corporation's statements are not misleading.'" *Strougo v. Barclays PLC*, 312 F.R.D. 307, 319 (S.D.N.Y. 2016), *aff'd but criticized sub nom.*, *Wagner v. Barclays PLC*, 875 F. 3d 79 (2d Cir. 2017); *see also Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 581 (S.D.N.Y. 2016) ("a corporation may be compelled to disclose uncharged wrongdoing if its statements are or become materially misleading in the absence of disclosure"); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469 (S.D.N.Y. 2006) ("Though courts have held that the securities laws do not impose a duty to disclose uncharged criminal conduct, corporations are obligated to disclose facts necessary to ensure that their statements are not misleading."). The PSAC's allegations adequately allege that is the case here.

## III.   CONCLUSION

For the reasons set forth above and in the Motion, Lead Plaintiff respectfully requests that the Court grant Lead Plaintiff's Motion to Alter or Amend Judgment and allow Plaintiff leave to amend the Complaint.[4]

DATED:  May 10, 2022                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        NATHAN R. LINDELL
                                        NICOLE Q. GILLILAND


                                        s/ NATHAN R. LINDELL
                                        NATHAN R. LINDELL

                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        nlindell@rgrdlaw.com
                                        ngilliland@rgrdlaw.com

                                        *Lead Counsel for Lead Plaintiff*

                                        SHUMAN, GLENN & STECKER
                                        RUSTY E. GLENN
                                        600 17th Street, Suite 2800 South
                                        Denver, CO  80202
                                        Telephone:  303/861-3003
                                        303/536-7849 (fax)
                                        rusty@shumanlawfirm.com

                                        *Liaison Counsel for Lead Plaintiff*

---

[4]   Defendants do not make any separate arguments in support of their opposition to Plaintiff's request for leave to amend pursuant to Rule 15(a).  *See* Opp. at 20 n.7.  Accordingly, to the extent the Court finds relief from the Final Judgment to be warranted under Rule 59(e), Plaintiff's request for leave to amend should be granted for the reasons set forth in the Motion.  *See* Motion at 9-15.

- 13 -

4888-8435-5615.v1

OFFICE OF THE NEW MEXICO
  ATTORNEY GENERAL
HECTOR BALDERAS, Attorney General
P. CHOLLA KHOURY, Assistant Attorney
General
Director, Consumer and Environmental Protection
Post Office Drawer 1508
Santa Fe, NM  87504-1508
Telephone: 505/490-4052
ckhoury@nmag.gov

*Additional Counsel for Lead Plaintiff*

- 14 -

4888-8435-5615.v1

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 10, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ NATHAN R. LINDELL
NATHAN R. LINDELL

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  nlindell@rgrdlaw.com

4888-8435-5615.v1

# Mailing Information for a Case 1:20-cv-01966-RM-MEH United Food and Commercial Workers International Union Local 464A et al v. Pilgrim's Pride Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Naumon Amjed**
  namjed@ktmc.com,rdegnan@ktmc.com,ksauder@ktmc.com,hpaffas@ktmc.com,iyeates@ktmc.com

- **Seth Alben Aronson**
  saronson@omm.com,mlippincott@omm.com,apletcher@omm.com,seth-aronson-9209@ecf.pacerpro.com,mtubach@omm.com

- **Christopher Patrick Burke**
  cburke@omm.com,christopher-burke-5473@ecf.pacerpro.com

- **Andrew Joseph Cauchi**
  Andrew.Cauchi@weil.com

- **John Anderson Fagg , Jr**
  johnfagg@mvalaw.com,aishaahreed@mvalaw.com,lindamelin@mvalaw.com

- **Nicole Gilliland**
  ngilliland@rgrdlaw.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **Seth Goodchild**
  seth.goodchild@weil.com,mco.ecf@weil.com,seth-weil-4005@ecf.pacerpro.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,nate.lindell@gmail.com,E_File_SD@rgrdlaw.com,AGonzales@rgrdlaw.com,CReis@ecf.courtdrive.com,creis@rgrdlaw.com,bengfelt@rgrdlaw.

- **Tania Christina Matsuoka**
  tania.matsuoka@weil.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Mark A. Nebrig**
  marknebrig@mvalaw.com,kellybowling@mvalaw.com

- **Joel S. Neckers**
  neckers@wtotrial.com,allen@wtotrial.com,bratcher@wtotrial.com,ventola@wtotrial.com

- **Amy S. Park**
  apark@omm.com

- **Nicole E. Schiavo**
  nicoleschiavo@mvalaw.com,janetkoronkiewicz@mvalaw.com

- **Michael Frederick Tubach**
  mtubach@omm.com,michael-tubach-9759@ecf.pacerpro.com

- **Caroline Hickey Zalka**
  caroline.zalka@weil.com,mco.ecf@weil.com,caroline-zalka-7810@ecf.pacerpro.com,nymao@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)